**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Jerry Flanagan (SBN: 271272)
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874
harvey@consumerwatchdog.org
jerry@consumerwatchdog.org

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs and the Classes*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON AND MARY FELLER, and GEORGE AND MARGARET ZACHARIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL**<br><br>1.   Breach of Contract<br>2.   Breach of the Implied Covenant of Good Faith and Fair Dealing<br>3.   Breach of Duty of Good Faith and Fair Dealing<br>4.   Injunctive and Restitutionary Relief pursuant to Cal. Bus. & Prof. Code §17200, *et seq.*<br>5.   Declaratory Relief<br>6.   Preliminary and Permanent Injunctive Relief<br>**7.**   Elder Abuse pursuant to Cal. Wel. & Inst. Code §15657.5, *et seq.* |

---

**CLASS ACTION COMPLAINT**

Plaintiffs, by and through the undersigned attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant Transamerica Life Insurance Company. Plaintiffs allege the following on information and belief, except as to those allegations that pertain to the named Plaintiffs, which are alleged on personal knowledge.

### NATURE OF THE ACTION

1.     In the late 1980s and early 1990s, Transamerica sold universal life insurance policies under which it agreed to credit interest on policyholders' accounts at a guaranteed rate of no less than 5.5% annually and similar policies with other guaranteed rates. Plaintiffs bought such policies so that they and their families would be protected as they entered their senior years. Yet Transamerica in August 2015 suddenly, unilaterally and massively increased the monthly deductions withdrawn from Plaintiffs' accumulation accounts by 38%, falsely stating that the increase was permitted by the terms of their policies. However, Transamerica's true reasons for the premium increase were to subsidize its cost of meeting its interest guarantee, to recoup past losses on the policies and on its investment portfolio, and to make the policies more profitable by inducing policy terminations by those policyholders who could not afford the increase.

2.     Plaintiffs in this action seek damages and equitable relief to reverse Transamerica's massive increase in the monthly deduction withdrawn from their accounts each month, which has injured Plaintiffs and which, if allowed to proceed, will cause irreparable injury to Plaintiffs and other members of the putative Classes (collectively, the "Class Members"). As further described below, Transamerica's sudden and unilateral increase in the premiums required to keep these policies in force constitutes a breach of its express and implied obligations under the policies, a violation of the unlawful and unfair prongs of California's Unfair Competition Law ("UCL"), and a violation of California's Elder Abuse Statutes.

CLASS ACTION COMPLAINT

## THE PARTIES

3.     Plaintiffs Gordon Feller and Mary Feller (collectively, "Feller") are husband and wife, and at all times herein mentioned, were citizens of the State of California. On or about September 13, 1989, Transamerica Occidental Life Insurance Company from its Los Angeles office issued to Feller an adjustable universal life insurance policy (Policy No. 9229114) with a face amount of $500,000.

4.     Plaintiffs George N. Zacharia and Margaret Zacharia (collectively, "Zacharia") are husband and wife, and at all times herein mentioned were citizens of the State of California.  On or about December 20, 1990, Transamerica Occidental Life Insurance Company from its Los Angeles office issued an adjustable universal life insurance policy (Policy No. 92332828) with a face amount of $250,000, which was subsequently transferred into a revocable *inter vivos* trust over which Zacharia, as the settlor, holds the power to revoke. Zacharia retains full ownership and control over the policy under California law.

5.     Defendant Transamerica Life Insurance Company ("TLIC") is a corporation organized under Iowa law, with its principal place of business at 4333 Edgewood Road NE, Cedar Rapids, Iowa, 52499.  TLIC is thus a citizen of Iowa.

6.     Transamerica Occidental Life Insurance Company ("TOLIC") was in 1989 and 1990 a corporation organized under California law, with its Home Office and principal place of business at 1150 S. Olive Street, Los Angeles, California, 90015.

7.     On or about October 1, 2008, TOLIC was merged into TLIC, making TLIC its successor-in-interest. TOLIC and TLIC are herein collectively referred to as "Transamerica."

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the parties to this action. The four named Plaintiffs are residents of California, Transamerica transacts business in

California, and many thousands of the Class Members are resident citizens of California.

9.    Jurisdiction over Transamerica is also proper because it has purposely availed itself of the privilege of conducting business activities in California and because it currently maintains systematic and continuous business contacts with this State.

10.    Venue is proper in this District under 28 U.S.C. § 1391 because Transamerica maintains substantial operations in this District; many thousands of Class Members either reside or did business with Transamerica in this District; Transamerica engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and Transamerica entered into transactions and received substantial profits from policyholders who reside in this District.

11.    This Court has subject matter jurisdiction based on diversity of citizenship. Plaintiffs allege subject matter jurisdiction based on the Class Action Fairness Act, 28 U.S.C. §1332(d).

## FACTUAL ALLEGATIONS

### The Standardized Policy Terms

12.    Plaintiffs bring this class action on behalf of themselves and other owners and former owners of certain universal life insurance policies issued and administered by Transamerica (the "Policies").[1] The Policies use  standardized, materially uniform language with respect to the policy provisions at issue in this action.

---

[1] The Policies include the so-called "TransMax" policies issued to Plaintiffs, as well as all other policies issued by Transamerica that share comparable terms and for which Transamerica has unilaterally increased monthly deductions since August 1, 2015. A specimen copy of the standardized Policy contract, as issued to Zacharia, is attached as Exhibit "A."

CLASS ACTION COMPLAINT

13.     Under the uniform provisions of the Policies, an "accumulation account" is established for each Policy, into which the Policyholder's premium payment(s) are deposited. The accumulation account earns interest at a guaranteed interest rate specified in the Policy. Certain of the  Policies provide that Transamerica will pay guaranteed interest at the rate of 4%, and that the accumulation value on any policy anniversary will never be less than as if 5.5% interest was credited annually from the issue date. Others contain similar interest rate guarantees.

14.     At the end of each policy month, Transamerica withdraws an amount ("Monthly Deduction") from the Policy's accumulation account. The Monthly Deduction is equal to the following: (a) the application of a "Monthly Deduction Rate" to the difference between the death benefit and the accumulation value at the beginning of the year; and (b) the monthly deduction for any policy riders; and (c) a policy fee.

15.     The Monthly Deduction Rate is by far the most important component of the Monthly Deduction charge.  Even small changes in the Monthly Deduction Rate can produce a dramatic increase in the dollar amount of the Monthly Deduction charged by Transamerica. The higher the Monthly Deduction Rate, the greater the premiums required to maintain a positive balance in the accumulation account and avoid a lapse of the Policy.

16.     Under the Policies, Transamerica determines the Monthly Deduction Rates for each policy year at the beginning of that policy year, using the insured's age as of that policy year.  The guaranteed Monthly Deduction Rate for non-smokers is premised on a "cost of insurance" ("COI") portion or component, which is in turn based on projections of life span established by the 1980 CSO Mortality Tables.   The guaranteed Monthly Deduction Rate for smokers is premised on the same COI rates, plus an added "expense" portion or component.

17.     Under the Policies, Transamerica's discretion to set or increase the

Monthly Deduction Rates is therefore constrained by the Tables of Guaranteed Monthly Deduction Rates and the attained age of the insured under the Policy.

18.     Furthermore, the Policies do not expressly authorize Transamerica to do any of the following:

- Set or increase the Monthly Deduction Rates in whatever amount or by whatever method it determines;

- Set or increase Monthly Deduction Rates to recoup past losses on the Policies due to the failure of credited interest, policy lapse rates or other assumptions Transamerica made when originally pricing the Policies;

- Set or increase Monthly Deduction Rates to recoup losses on the Policies due to diminished returns on Transamerica's general investment portfolio; and

- Set or increase Monthly Deduction Rates in order to negate or offset Transamerica's obligation to pay credited interest to the Policies at the minimum guaranteed rates.

19.     Moreover, a reasonable Policyholder would construe the standardized Policy language to mean that the Monthly Deduction Rate, premised as it is on the purported "cost of insurance" based on the 1980 CSO Mortality Tables, would not change except for an adverse change in the underlying mortality rates. As reflected in every subsequent version of the CSO Mortality Tables, mortality rates have only improved in the years since the Policies were issued from 1987 and 1998.

20.     In addition, a reasonable Policyholder would construe (a) the Policies' provisions governing the payment of interest on the accumulation account (subject to their unique and specific guarantees under the Policy), and (b) the Policies' provisions governing the Monthly Deduction based on Transamerica's COI (subject to their unique and specific guarantees under the Policies), as operating independently of one another, precluding Transamerica

5
CLASS ACTION COMPLAINT

from offsetting or subsidizing its credited interest obligations with increases in the Monthly Deduction Rate.

21.    In the alternative, the Policies are at a minimum ambiguous with respect to whether Transamerica can increase the Monthly Deduction for any reason other than an adverse change in mortality rates. As a result, any ambiguity in this respect must be construed against Transamerica and in favor of the Policyholder.

### Transamerica Has Consistently Represented Unchanged Current Expectations Regarding Future COI

22.    The Monthly Deduction Rate, which Transamerica set at a level less than the Guaranteed Monthly Deduction Rate, is considered a "nonguaranteed element" of the Policy. Insurance companies and their actuaries are required to file with their state regulators answers to interrogatories every year as to whether their "anticipated experience factors underlying any nonguaranteed elements [are] different from current experience."

23.    In Transamerica's Statement of Nonguaranteed Elements, as of December 31, 2014, Transamerica expressed no indication of any need to increase the Monthly Deduction Rates due to any adverse change in mortality rates. (*See* Exhibit "B".)

24.    Indeed, for each year of the past four years, Transamerica consistently reported to regulators that the anticipated experience factors underlying its nonguaranteed elements were no different than from current experience. (*See* Statement of Nonguaranteed Elements as of December 31, 2013 (attached as Exhibit "C"); Statement of Nonguaranteed Elements as of December 31, 2012 (attached as Exhibit "D"); Statement of Nonguaranteed Elements as of December 31, 2011 (attached as Exhibit "E").)

25.    Moreover, for each of the past five years, Transamerica has engaged in a series of captive reinsurance transactions premised on representations to

regulators and the public that it has retained reserves that are more than sufficient to cover its liabilities, including future COI.  Through such "shadow insurance" transactions, Transamerica has purported to transfer the risks associated with the Policies to its wholly owned captive reinsurance affiliate, thereby claiming a "reserve credit" or release of the purportedly redundant reserves into its reported surplus, which it then used to pay dividends to its parent company.

26.    For example, in 2010, Transamerica reported that it had taken reserve credits as a result of reinsurance transactions with affiliated reinsurance companies totalling approximately $30 billion, based on representations that Transamerica had made ample provision to cover the liabilities relating to those policies, including the future COI associated with its universal life policies. During 2010, Transamerica and other affiliated insurance operating companies up-streamed dividends to their ultimate parent holding company, AEGON NV, totalling $2.3 billion.

### Transamerica's Massive Monthly Deduction Rate Increase

27.    On June 8, 2015, Transamerica suddenly announced that it was going to unilaterally increase the Monthly Deduction under the Policies, based on a massive increase in the Monthly Deduction Rate ("the MD Rate Increase").

28.    Transamerica notified the Policyholders of the MD Rate Increase through a form letter. (*See* Exhibits "F" & "G".)  In that notice letter Transamerica purported to explain "What's Changing and Why." To give the appearance that it was acting on the limited grounds authorized by the Policies, Transamerica represented that it was increasing the Monthly Deduction Rates "based on our current expectations regarding future costs of providing … coverage [for the Policies]."

29.    Transamerica thus acknowledged the limited grounds upon which the Policies permit a MD Rate Increase, and accordingly represented that the MD Rate Increase was premised on an adverse change in the COI portion of the

Monthly Deduction Rate.

30.   Transamerica did not give any other explanation for the MD Rate Increase in the notice letter, and certainly did not suggest that it had the unfettered discretion to increase the Monthly Deduction Rate in whatever amount or by whatever method it determined.

31.   Transamerica began imposing the MD Rate Increase on Policies with an anniversary date of August 1, 2015, at levels of nearly 40% or more.

32.   Pursuant to the MD Rate Increase, Transamerica increased the amount taken from Plaintiffs' accumulation accounts upon their respective Policy's anniversary dates. For example, beginning September 13, 2015, the Fellers suffered an approximately 38% increase in their Monthly Deduction Rates, raising the Monthly Deduction from approximately $1,500 to more than $2,000 in order to maintain the same death benefit for their Policy. The Zacharias similarly suffered an approximately 38% increase in the Monthly Deduction that Transamerica took from their accumulation account beginning December 20, 2015, after the Zacharias reached their 65th birthday.

33.   Plaintiffs and Class Members are now required to pay much higher Monthly Deductions to maintain the same level of coverage under the Policies, such that their Policies will become cost-prohibitive if the MD Rate Increase is not enjoined.  Unless stopped, Transamerica will induce, through its unlawful MD Rate Increase, widespread terminations – known as "shock lapses" – on Policies for which Plaintiffs and Class Members have duly paid the Monthly Deduction for decades.

### The True Reasons for the MD Rate Increase

34.   The sudden and dramatic MD Rate Increase is not in truth based on adverse changes in the "cost of providing coverage" as Transamerica represented in the notice letter to the Policyholders, but rather on Transamerica's desire to avoid its contractual obligation to meet the high interest crediting rates it promised

under the Policies.

35.    As explained above, insurance company actuaries are required to closely monitor and report on cost of insurance trends affecting non-guaranteed elements of its insurance policies.   Material deviations between current and expected future expectations as to COI do not occur overnight; they are gradual trends for which actuaries can and do make incremental adjustments.

36.    As alleged above, in its annual interrogatory answers to its regulators Transamerica did not report any such adverse changes in its current expectations regarding future costs of insurance.  The true reasons for the sudden and massive RD Rate Increase lay elsewhere.

37.    First, since 2007 interest rates have gradually declined to historic lows, adversely impacting insurers given the interest crediting guarantees in the policies.  In the late 1980s, the 10-year Treasury rate was around 9%. The trend of the 10-year Treasury was steadily downward throughout the 1990s, remaining at or above 5% until the post-2001 recession period when it pierced the 4% level for some months. Between 2003 and 2008 it fluctuated generally between 4% and 5%. Since mid-2008, however, the 10-year Treasury has been under 4%, hitting a low of 1.65% in 2012.

38.    In April 2012, for example, the Center for Insurance Policy & Research ("CIRP") branch of the National Association of Insurance Commissioners published a report describing the effect on insurers of what was, even then, a prolonged period of low level interest rates. (*See* Exhibit "H".) The CIRP Report warned:

> Life insurance companies face considerable interest rate risk given their investments in fixed-income securities and their unique liabilities. For life insurance companies, their assets and liabilities are heavily exposed to interest rate movements. Interest rate risk can materialize in various ways, impacting life insurers' earnings, capital and reserves, liquidity and competitiveness. Moreover, the impact of

a low interest rate environment depends on the level and type of guarantees offered. Much of the business currently on life insurers' books could be vulnerable to a sustained low interest rate environment ….

Life insurers typically derive their profits from the spread between their portfolio earnings and what they credit as interest on insurance policies. During times of persistent low interest rates, life insurers' income from investments might be insufficient to meet contractually guaranteed obligations to policyholders which cannot be lowered. ***

In a low interest rate environment, it is challenging to find relatively low-risk, high-yield, long-duration assets to match annuities that guarantee a minimum annual return (e.g., 4%). For many policies, low interest rates mean that some mismatch with assets is likely. For example, older fixed income insurance products that guarantee rates of around 6%—closely matching or conceivably even surpassing current investment portfolio yields—are likely to put a strain on life insurers as a result of spread compression or possibly negative interest margins.

CIPR Report, at 2-3.

39.     Unfortunately, the low interest rate environment has only persisted since 2012, exacerbating the spread compression and thus, as indicated by the CIPR, undermining the profitability of policies with "guarantee rates around 6%."

40.     Transamerica's investment returns have thus been very low since the beginning of the Great Recession, and are nowhere near the returns needed to support continued interest credit to the Policies' accumulation account at the guaranteed 5.5% effective rate. Through the MD Rate Increase, Transamerica seeks to offset or subsidize its credited interest guarantees through dramatically increased Monthly Deductions taken from the Policyholders' accumulation accounts.

41.     The MD Rate Increase is also motivated by Transamerica's desire to make the Policies collectively more profitable by inducing more of them to lapse. When Transamerica priced and sold the Policies, it made a conscious decision to

10
CLASS ACTION COMPLAINT

establish a Monthly Deduction Rate schedule that was designed to generate high profits in early durations followed by potential losses in later durations (known as "lapse-supported pricing").[2]  After years of pocketing those profits, Transamerica now seeks to impose the draconian MD Rate Increase to recoup the losses resulting from the way it priced   the rate schedule it now seeks to jettison, even though its mortality experience has only *improved* over the years.

42.   Transamerica's stated reason in the notice letters for the MD Rate Increase was false.  As one industry commentator has put it, Transamerica is "trying to claim that mortality charges are the culprit even though you would have to be snoozing pretty heavily not to know that people are living way longer than they were 15 to 20 years ago."[3]

43.   Because non-guaranteed elements such as the MD Rate are required to reflect expectations of *future* experience, Transamerica is precluded from re-determining those elements to recoup past losses. To do so would violate the actuarial standards of practice and code of professional ethics.

44.   Moreover, Transamerica knows, and fully expects, that the massive MD Rate Increase will cause thousands of Class Members to surrender their Policies and cause thousands of other Policies to lapse as the highly increased Monthly Deduction charges quickly exhaust the funds in the Policies'

---

[2] Plaintiffs make this historical reference only to illustrate Transamerica's current motivation for the MD Rate Increase. To be abundantly clear, Plaintiffs in this action allege no claim premised on conduct prior to the sale of the Policies; Plaintiffs' claims are instead exclusively premised on Transamerica's actions in imposing the MD Rate Increase beginning in August 2015.

[3] Ed Hinerman, *Transamerica Life Drops a Big One in the Punch Bowl!*, Hinerman Group, http://www.hinermangroup.com/blog/insurance/transamerica-life-drops-a-big-one-in-the-punch-bowl (last checked February 28, 2016).

accumulation accounts.

45.    In short, through the sudden and massive MD Rate Increase, Transamerica is attempting to avoid its obligation to credit the guaranteed interest rates under the Policies, to recoup past losses and to shed the Policies by making the premiums to maintain them cost-prohibitive for the Policyholders – thereby frustrating the Policyholders' ability to receive their contractual benefits under the Policies.

46.    The Class Members hit hardest by Transamerica's unconscionable business practice are elderly Policyholders who have dutifully paid premiums for 20 years or more based on the expectation that in their twilight years the Policies would provide protection for their families. Due to age-related underwriting considerations, life insurance protection for these elderly policyholders is now either unavailable or prohibitively expensive; thus Transamerica's actions have stripped Plaintiffs and the Class of any future life insurance protection.

47.    Transamerica's attempt to deprive Plaintiffs and the Class Members of the primary benefit of their Policies – paid for through years of contributions to the accumulation account – violates Transamerica's express and implied obligations under the Policies, amounts to "unlawful" and "unfair" conduct under the UCL, and (in the case of the Zacharias and other Policyholders aged 65 or older) statutory elder abuse.

48.    Plaintiffs therefore respectfully seek immediate necessary and appropriate legal and equitable relief to reverse the MD Rate Increase. Unless Transamerica is enjoined, the Policyholders will be irreparably damaged and Transamerica will succeed with its plan to cause mass cancellations of the Policies – leaving tens of thousands of Policyholders without coverage based on an unlawful, unfair and abusive MD Rate increase.

49.    Accordingly, Plaintiffs seek damages, declaratory relief and injunctive relief requiring Transamerica to (i) reverse the unlawful increase in

Monthly Deductions charged on the Policies, and (ii) reinstate all Policies that were surrendered or lapsed as a result of the MD Rate Increase.

## **CLASS ACTION ALLEGATIONS**

50.     This action is brought by Plaintiffs individually and on behalf of the five subclasses described below (the "Classes") pursuant to Rule 23, subdivisions (a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

51.     Plaintiffs seek certification of the following subclasses:

**a.     California Subclass I:  Current Policyholders**

All California residents who own an in-force Policy for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

**b.     California Subclass II: Surrendered Policyholders**

All California residents who previously owned and seek to reinstate a Policy: (i) for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, resulted or threatened to result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date; and (ii) that terminated after that date.

**c.     California Subclass III:  Senior Policyholders**

All California residents who were 65 years old or older and owned a Policy for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

**d.     National Subclass I:  Current Policyholders**

All persons, other than California residents, who own a Policy for

CLASS ACTION COMPLAINT

which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

**e.     National Subclass II:  Surrendered Policyholders**

All persons, other than California residents, who previously owned and seek to reinstate a Policy: (i) for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, resulted or threatened to result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date; and (ii) that terminated after that date.

52.     There are thousands of members of each of the Subclasses described in the foregoing Paragraph 44. Accordingly, the Class consists of thousands of consumers of life insurance and is thus so numerous that joinder of all members is impracticable.  The identities and addresses of the members of these Subclasses can be readily ascertained from business records maintained by Transamerica.

53.     The claims asserted by Plaintiffs are typical of the claims of the Class Members.

54.     Plaintiffs are willing and prepared to serve the Court and the proposed Class in a representative capacity. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests that are adverse to, or which materially and irreconcilably conflict with, the interests of the other members of the Class.

55.     The self-interests of Plaintiffs are co-extensive with and not antagonistic to those of absent Class members. Plaintiffs will undertake to represent and protect the interests of absent Class members.

56.     Plaintiff has engaged the services of counsel indicated below who are experienced in complex class litigation and life insurance matters, will adequately

14

prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiff and absent Class members.

### Rule 23 (b)(2)

57.    This action is appropriate as a class action pursuant to Rule 23 (b)(2). Plaintiffs seek injunctive relief and corresponding declaratory relief for the each of the Classes.  Transamerica has acted in a manner generally applicable to each member of the entire Classes by imposing the MD Rate Increase on all Policies owned by Class Members.

58.    Transamerica's wrongful actions in unlawfully increasing the Monthly Deduction on the Policies, if not enjoined, will subject Plaintiff and Class Members to enormous continuing future harm and will cause irreparable injuries to such Policyholders, who are compelled to surrender valuable life insurance policies with no economically viable option for alternative life insurance. The adverse financial impact of Transamerica's unlawful actions is continuing and, unless preliminarily and permanently enjoined, will continue to irreparably injure Plaintiffs and the Class Members.

### Rule 23 (b)(3)

59.    This action also is appropriate as a class action pursuant to Rule 23 (b)(3) of the Federal Rules of Civil Procedure.

60.    Common questions of law and fact predominate over any individualized questions. Common legal and factual questions include the following:

 a. Whether Transamerica's actions in hugely and suddenly increasing the Monthly Deductions on the Policies through the MD Rate Increase are authorized under the terms of the Policies;

 b. Whether Transamerica breached its contractual obligations owing to Plaintiffs and Class Members;

 c. Whether Transamerica breached its implied duty of good faith and

15
CLASS ACTION COMPLAINT

1   fair dealing owed to Plaintiffs and the Class Members;

2   d.   Whether Transamerica has engaged in unfair or unlawful business
3        practices in its dealings with Plaintiffs and the Class Members;

4   e.   Whether Transamerica has engaged in the financial abuse of elders,
5        within the meaning of California's Elder Abuse Statute;

6   f.   Whether Plaintiffs and the Class Members have been damaged, and if
7        so, are eligible for and entitled to compensatory and punitive
8        damages;

9   g.   Whether Plaintiffs and the Class Members are entitled to declaratory
10       relief; and

11  h.   Whether Plaintiffs and the Class Members are entitled to preliminary
12       and permanent injunctive relief, or other equitable relief, against
13       Transamerica.

14       61.   A class action is superior to other available methods for the fair and
15  efficient adjudication of this controversy, for at least the following reasons:

16  a.   Given the age of the Class Members, many of whom are elderly and
17       have limited resources, the complexity of the issues involved in this
18       action and the expense of litigating the claims, few, if any, Class
19       Members could afford to seek legal redress individually for the
20       wrongs that Transamerica has committed against them, and absent
21       Class Members have no substantial interest in individually
22       controlling the prosecution of individual actions;

23  b.   Once Transamerica's liability has been adjudicated respecting the
24       MD Rate Increase, claims of all Class Members can be determined
25       by the Court;

26  c.   This action will insure an orderly and expeditious administration of
27       the class claims and foster economies of time, effort and expense, and
28       ensure uniformity of decisions and compliance by Transamerica with

1        the Policies;

2        d.      Without a class action, many Class Members would continue to
3                suffer injury, and Transamerica's violations of law will continue
4                without redress while Transamerica continues to reap and retain the
5                substantial proceeds and reductions in its future liabilities derived
6                from its wrongful conduct; and

7        e.      This action does not present any undue difficulties that would impede
8                its management by the Court as a class action.

9        62.     A class action is thus superior to other available means for the fair
10   and efficient adjudication of this controversy. The injuries suffered by individual
11   Class members are, while important to them, relatively small compared to the
12   burden and expense of individual prosecution of the complex and extensive
13   litigation needed to address Transamerica's conduct. Individualized litigation
14   presents a potential for inconsistent or contradictory judgments. By contrast, a
15   class action presents far fewer management difficulties; allows the hearing of
16   claims that might otherwise go unaddressed; and provides the benefits of single
17   adjudication, economies of scale, and comprehensive supervision by a single
18   court.

19                          **FIRST CAUSE OF ACTION**

20                      *(Breach of Contract – All Classes)*

21       63.     Plaintiffs refer to the prior paragraphs of this Complaint and
22   incorporate those paragraphs as though set forth in full in this cause of action.

23       64.     The Policies are valid, enforceable contracts between Plaintiffs and
24   the Class Members and Transamerica.

25       65.     At all relevant times, Plaintiffs and the Class Members have paid
26   premiums to Transamerica through Monthly Deduction charges under the Policies
27   as established at the inception of the Policies and have otherwise performed all
28   their obligations under the Policies.

66.   As alleged above, Transamerica owed duties and obligations to Plaintiffs and the Class Members under the Policies, including, but not limited to, refraining from imposing Monthly Deduction charges except as authorized under the terms of the Policies.

67.   Transamerica materially breached the terms and provisions of the Policies by increasing the Monthly Deductions effective August 1, 2015, through the MD Rate Increase, for reasons not permitted by the Policies; that is, in order to reduce its credited interest obligations to Plaintiffs and the Class and to recoup past losses, by dramatically depleting the Policyholders' accumulation accounts and forcing mass lapses and surrenders of Policies.

68.   At a minimum, the MD Rate Increase is of such a magnitude that, even if legitimate cost of insurance increases were a factor, Transamerica necessarily considered impermissible factors other than the cost of insurance in setting the level of the MD Rate Increase.

69.   Transamerica's conduct and material breaches of the Policies have proximately caused damages to Plaintiffs and the Class Members in an amount to be determined at trial.

70.   In addition, unless Transamerica is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and the Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## SECOND CAUSE OF ACTION

*(Contract Breach of the Implied Covenant of Good Faith and Fair Dealing*
*– California Classes Only)*

71.   Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

72.   The Policies are valid, enforceable contracts between Transamerica and Plaintiffs or the Class Members.

73.    Implied in the Policies are contractual covenants of good faith and fair dealing through which Transamerica owed Plaintiffs and the Class Members a duty to act in a manner that did not frustrate their reasonable expectations under the Policies.

74.    Transamerica contractually breached the covenant of good faith and fair dealing because, to the extent Transamerica had the discretion to increase the Monthly Deduction, that discretion was sufficiently constrained under the terms of Policies to support an implied obligation of good faith and fair dealing with respect to the MD Rate Increase.

75.    Transamerica's contractual breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the Class Members in an amount to be determined at the time of trial.

76.    In addition, unless Transamerica is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and the Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

### THIRD CAUSE OF ACTION

*(Tortious Breach of the Duty of Good Faith and Fair Dealing*

*– California Classes Only)*

77.    Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

78.    The Policies are valid, enforceable contracts between Transamerica and Plaintiffs or the Class Members.

79.    Life insurance policies, like those owned by Plaintiffs and the Class Members, protect them from the economic harm and risk presented by death.  As is the case with most insurance contracts, the financial interests of Transamerica and the Policyholders are directly at odds: Transamerica benefits from increasing the charges to the Policyholders and the Policyholders are harmed by such

19

increases. As explained above, Transamerica in particular benefits if Plaintiffs and the Class Members are forced to forfeit the Policies because of its increases of the Monthly Deduction because it will have obtained premium payments without having to pay the death benefits or the promised credited interest rates.

80.   For these reasons, Transamerica owes Plaintiffs and the Class Members a heightened duty of good faith and fair dealing. Among other things, Transamerica is required to refrain from doing anything to injure their right to receive the benefits of the Policies.  Transamerica is required to give at least as much consideration to the welfare of the Policyholders as it gives to its own interests. Furthermore, Transamerica has a duty to reasonably inform Plaintiff and the Class Members of their rights and obligations under the Policies.

81.   As alleged above, Transamerica has breached these duties in connection with the MD Rate Increase, frustrating the reasonable expectations of Plaintiffs and the Class Members under the Policies and tortiously depriving them of benefits under the Policies.  In increasing the Monthly Deduction, Transamerica did not give proper consideration to the welfare of Plaintiffs and the Class Members and served solely its own interests at their expense. In addition, Transamerica has failed to truthfully, let alone reasonably, disclose or describe its course of conduct, or the basis and reasons for its course of conduct.

82.   Transamerica's forgoing alleged acts and omissions were and are unreasonable and without proper cause. If left unabated, Transamerica's conduct will frustrate and deprive Plaintiffs and the Class Members of the reasonably expected benefits of the Policies.

83.   Transamerica has in particular improperly withheld benefits due Plaintiffs and the Class Members under the Policies, because the unlawful increase in the Monthly Deduction has both (a) reduced the value of their accumulation account, and (b) reduced the amount of interest credited on their accumulation accounts.

84. Transamerica's tortious breaches of the covenant of good faith and fair dealing have proximately caused damages to Plaintiffs and the Class Members in an amount to be determined at the time of trial.

85. Transamerica's conduct was intentional and deliberate and constitutes oppression, fraud, or malice. Plaintiffs and the Class Members are entitled to recover punitive and exemplary damages in an amount to be determined by the trier of fact. Plaintiffs also seek an order requiring Transamerica to disgorge all that it received in connection with the above-referenced wrongful acts and omissions.

86. In addition, unless Transamerica is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

*(Injunctive and Restitutionary Relief Pursuant to UCL*

*– California Classes Only)*

87. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

88. Transamerica committed acts of unfair competition by engaging in the following practices, among others:

    a. Marketing and selling the Policies on the premise that they were a solid and good life insurance product that would provide a certain death benefit for a certain cost and duration and subsequently taking steps to prevent Policyholders from receiving the promised benefits from those Policies by suddenly, massively, and unlawfully increasing the cost of the Policies through the MD Rate Increase.

    b. Imposing the MD Rate Increase even though Transamerica's expected future mortality has improved and is better than the

mortality upon which the original MD Rate schedule is based -- in order to increase premiums, recoup past losses, and/or force its insureds to surrender (cancel) their Policies, all of which was, and is, contrary to, and precluded by, the express terms of the Policies. Thus, the Monthly Deduction charges were increased effective August 1, 2015, so that Transamerica could reduce the size of an unprofitable block of life insurance policies, to eliminate long-anticipated losses on the Policies, and to cause many of the Policyholders to surrender their Policies. Transamerica breached its duties under the Policies by improperly increasing the Monthly Deduction charges in order to recoup past losses and gain or retain an unfair competitive advantage over other life insurers.

    c.    After the sale of the Policies, continuing to send annual reports, policy servicing statements, illustrations and other documents and correspondence to Plaintiffs and the Class Members without disclosing that there would be sudden, dramatic, and cost-prohibitive increases in the Monthly Deduction charges effective August 1, 2015.

    d.    Failing to provide any meaningful advance warning that it intended to massively and suddenly increase the Monthly Deduction charges effective August 1, 2015, through the MD Rate Increase.

    e.    Ultimately providing a false and misleading explanation to Plaintiffs and the Class Members of the grounds for the MB Rate Increase.

    89.    A claim under the UCL's "unlawful" prong can be predicated on any business practice "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made." *Agarwal v. Pomona Valley Med. Grp. Inc.*, 476 F.3d 665, 674 (9th Cir. 2007).   Transamerica violated the "unlawful" prong through its alleged misconduct, including the tortious breach of

22

1  the implied obligation of good faith and fair dealing as alleged above.

2      90.    A claim under the UCL's "unfair" prong is predicated on a "business

3  practice" that "violates established public policy" or is "immoral, unethical,

4  oppressive or unscrupulous and causes injury to consumers which outweighs its

5  benefits." (*Eisen v. Porsche Cars North America, Inc.*, 2012 WL 841019, \*5 (C.D.

6  Cal. Feb. 22, 2012) (citing *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th

7  1457, 1473 (2006).) Transamerica violated the "unfair" prong by excessively

8  raising the Monthly Deduction and the Monthly Deduction Rates for reasons not

9  authorized under the Policies, unfairly shifting to the Plaintiffs and the Class

10  Members (a) losses suffered by Transamerica when the Policies ceased to be as

11  profitable as Transamerica had hoped based on its original (but mistaken) pricing

12  assumptions, and (b) Transamerica's cost of meeting its obligations to pay

13  credited interest at the 4% annual and 5.5% effective guaranteed rates.

14      91.    Plaintiffs are informed and believe and on that basis allege that the

15  "unfair" and "unlawful" practices alleged above are continuing in nature and they

16  are widespread practices engaged in by Transamerica.

17      92.    On behalf of the general public and the Classes, Plaintiffs

18  respectfully requests that the Court issue an injunction against Transamerica

19  preliminarily and permanently enjoining it (i) from continuing to engage in the

20  unlawful and unfair conduct and preventing Transamerica from collecting the

21  unlawfully and unfairly increased Monthly Deduction charges in violation of the

22  Policies and (ii) ordering any Policy to be reinstated that lapsed or terminated as a

23  result of the MD Rate Increase.

24      93.    On behalf of the general public and the Classes, Plaintiffs

25  furthermore respectfully requests that this Court order restitution to be paid by

26  Transamerica to the Classes for Monthly Deduction charges, premiums and other

27  amounts wrongfully required, obtained and collected as the result of the MD Rate

28  Increase in violation of the Policies.

94.     Plaintiffs respectfully request an award of attorneys' fees as the prevailing party in his request for injunctive relief and restitutionary relief against Transamerica on behalf of themselves and the Class Members.

## FIFTH CAUSE OF ACTION

### *(For Declaratory Relief – All Classes)*

95.     Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

96.     An actual controversy has arisen and now exists between Plaintiffs and the Class Members, on the one hand, and Transamerica, on the other hand, concerning the respective rights and duties of the parties under the Policies.

97.     Transamerica contends that it lawfully and appropriately increased the Monthly Deductions respecting the Policies effective August 1, 2015, through the MD Rate Increase, has appropriately collected (and is still collecting) Monthly Deduction charges based on the elevated Monthly Deduction Rates, and that it is permitted to continue to collect these Monthly Deduction charges in the future for the duration of the Policies.  On the other hand, Plaintiffs and the Class Members maintain that Transamerica, effective August 1, 2015, through the MD Rate Increase, has inappropriately and unlawfully, in material breach of the express and implied terms of the Policies, collected inflated Monthly Deduction charges based on the MD Rate Increase.

98.     Plaintiffs, for themselves and on behalf of the Classes, seeks a declaration as to the parties' respective rights under the Policies and requests the Court to declare that the MD Rate Increase is unlawful and in material breach of the Policies so that future controversies under the Policies may be avoided.

## SIXTH CAUSE OF ACTION

### *(For Elder Abuse – California Class III Only)*

99.     Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

CLASS ACTION COMPLAINT

100.   This cause of action is brought under California's Welfare and Institutions Code section 15610, *et seq.*

101.   Plaintiffs George and Margaret Zacharia and each member of California Class III were ages 65 or older at all times relevant to this claim.

102.   Transamerica, by seeking to impose the MD Rate Increase took, depleted, appropriated and/or retained the Zacharias' and the Class Members' personal property in bad faith for a wrongful use and/or with intent to defraud, which constitutes financial abuse as defined in Cal. Wel. & Inst. Code section 15610.30.

103.   Transamerica is guilty of oppression, fraud, and malice in the commission of the above-described acts of abuse. At a minimum, Transamerica knew or should have known that its conduct was likely to be harmful to elders.

104.   Under Cal. Civ. Code section 3294 Transamerica is liable to the Zacharias and the Class Members for punitive damages.

105.   Under Cal. Wel. & Inst. Code section 15657.5 Transamerica is liable to Zacharia and the Class Members for reasonable attorney fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief as follows as applicable for the particular cause of action:

1.   An Order certifying this action to proceed on behalf of the Class, including the Subclasses, and appointing Plaintiffs and the counsel listed below to represent the Class;

2.   An Order awarding Plaintiffs and the Class Members entitled to such relief restitution and/or disgorgement and such other equitable relief as the Court deems proper;

3.   An Order enjoining Transamerica, its representatives, and all others acting with it or on its behalf, (a) from using Monthly Deduction Rates based on

CLASS ACTION COMPLAINT

the MD Rate Increase and (b) from unlawfully charging excessive Monthly Deduction Rates for the Policies and requiring those rates to be at levels that are consistent with the terms of the policies, and other appropriate injunctive relief;

4.      An Order providing preliminary and permanent injunctive relief requiring Transamerica, its representatives, and all others acting with it or on its behalf to reinstate any Class Member whose Policy was cancelled or surrendered as a result of the MD Rate Increase;

5.      An Order providing a declaration that the MD Rate Increase materially breaches the Policies, and that Transamerica must determine the Monthly Deduction Rates only on the grounds authorized under the Policies;

6.      An Order awarding Plaintiffs and the Subclass Members who might be entitled to such relief actual, compensatory, statutory, punitive, and/or exemplary damages;

7.      An Order awarding Plaintiffs' attorneys' fees, expert witness fees and other costs pursuant to the state statutory causes of action set forth above that permit such an award; and

8.      An Order awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

Dated:  February 28, 2016.

                        CONSUMER WATCHDOG

                        By: */s/Harvey Rosenfield*
                            Harvey Rosenfield (SBN: 123082)
                            Jerry Flanagan (SBN: 271272)
                            2701 Ocean Park Blvd., Suite 112
                            Santa Monica, CA 90405
                            Tel: (310) 392-0522

1   Fax: (310) 392-8874
    Harvey@consumerwatchdog.org
2   jerry@consumerwatchdog.org

3
    BONNETT, FAIRBOURN,
4   FRIEDMAN & BALINT, PC
    Andrew S. Friedman
5   (to be admitted *Pro Hac Vice*)
6   Francis J. Balint, Jr.
    (to be admitted *Pro Hac Vice*)
7   2325 East Camelback Road,
8   Suite 300
    Phoenix, Arizona 85016
9   Tel: 602-274-1100
10  Fax: 602-274-1199
    afriedman@bffb.com
11  fbalint@bffb.com

12
    SHERNOFF BIDART
13  ECHEVERRIA BENTLEY LLP
14  William M. Shernoff (SBN: 38856)
    Travis M. Corby (SBN: 268633)
15  301 N. Cañon Drive, Suite 200
16  Beverly Hills, CA 90210
    Telephone: (310) 246-0503
17  Facsimile: (310) 246-0380
18  wshernoff@shernoff.com
    tcorby@shernoff.com
19

20  *Attorneys for Plaintiffs and the
    Classes*
21

22

23

24

25

26

27

28