1  **BONNETT, FAIRBOURN, FRIEDMAN**
2  **& BALINT, P.C.**
   Andrew S. Friedman (admitted *Pro Hac Vice*)
3  afriedman@bffb.com
   Francis J. Balint, Jr. (admitted *Pro Hac Vice*)
4  fbalint@bffb.com
   2325 East Camelback Road, Suite 300
5  Phoenix, Arizona 85016
   Tel: (602) 274-1100
6  Fax: (602) 274-1199

7  **CONSUMER WATCHDOG**
8  Harvey Rosenfield (SBN: 123082)
   harvey@consumerwatchdog.org
9  Jerry Flanagan (SBN: 271272)
   jerry@consumerwatchdog.org
10 2701 Ocean Park Blvd., Suite 112
   Santa Monica, CA 90405
11 Tel: (310) 392-0522
   Fax: (310) 392-8874
12

13 **KOZYAK TROPIN & THROCKMORTON, LLP**
14 Adam M. Moskowitz (admitted *Pro Hac Vice*)
   amm@kttlaw.com
15 2525 Ponce De Leon Blvd., 9th Floor
   Miami, Florida 33134
16 Tel: (305) 372-1800
   Fax: (305) 372-3508
17

18 [Additional Counsel on Signature Page]
19 *Attorneys for Plaintiffs and the Classes*

20            **UNITED STATES DISTRICT COURT**

21            **CENTRAL DISTRICT OF CALIFORNIA**

22 | GORDON AND MARY FELLER, GEORGE | Case No. 2:16-cv-01378-CAS-AJW |
23 | AND MARGARET ZACHARIA, and |  |
   | ANDREW KRIEGMAN, as trustee for the | |
24 | ADRIENNE L. HENDLER REVOCABLE | **CONSOLIDATED AMENDED** |
   | TRUST dated 6/4/1993, the ELIZABETH | **CLASS ACTION COMPLAINT** |
25 | KRIEGMAN REVOCABLE TRUST dated | **DEMAND FOR JURY TRIAL** |
   | 6/8/1993, and the PATRICIA SOKOLOW | |
26 | REVOCABLE TRUST dated 6/4/1993, and | 1.   Breach of Contract |
   | GERALD R. LYONS, DONNA M. AND | 2.   Breach of the Implied Covenant |
27

28

───────────────────────────────────────────
       CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1   CLARENCE E. WHITE, and LOIS
    THOMPSON and GAIL THOMPSON, on
2   behalf of themselves and all others similarly
    situated,
3
4               Plaintiffs,
5          vs.
6   TRANSAMERICA LIFE INSURANCE
7   COMPANY,
8               Defendant.

of Good Faith and Fair Dealing
3.   Breach of Duty of Good Faith
     and Fair Dealing
4.   Injunctive and Restitutionary
     Relief pursuant to Cal. Bus. &
     Prof. Code §17200, *et seq.*
5.   Declaratory Relief
6.   Preliminary and Permanent
     Injunctive Relief
7.   Elder Abuse pursuant to Cal.
     Wel. & Inst. Code §15657.5, *et
     seq.*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by and through the undersigned attorneys, bring this action on behalf of themselves and all others similarly situated against Defendant Transamerica Life Insurance Company ("Transamerica"). Plaintiffs allege the following on information and belief, except as to those allegations that pertain to the named Plaintiffs, which are alleged on personal knowledge.

## NATURE OF THE ACTION

1.     In the late 1980s and early 1990s, Transamerica sold hundreds of millions of dollars in universal life insurance policies under which it agreed to credit interest on policyholders' accounts at guaranteed annual rates generally ranging between 4.0% and 5.5% (the "Policies").[1] Plaintiffs and the Class members bought these Policies so that they and their families would be protected as they entered their senior years. But, beginning in August 2015, Transamerica suddenly, unilaterally, and massively began increasing the monthly deductions withdrawn from the Policies' accumulation accounts by as much as 100% (the "MD Increase"), falsely stating that the increase was permitted by the terms of the Policies. Transamerica's true reasons for imposing the drastic MD Increase however, were to: (a) subsidize its cost of meeting its interest rate guarantees under the Policies; (b) to recoup past losses in violation of the terms of the Policies; and (c) induce policy terminations by elderly policyholders.

2.     To maximize the number of elderly policyholders who would surrender their Policies and lose their insurance coverage, Transamerica sent letters to policyholders directing them to contact a designated Transamerica hotline with any questions about the annual premiums increase, rather than the agents who they

---

[1] Plaintiffs in this action allege no claim premised on deception at the time of sale of the Policies or any other pre-sale conduct by Transamerica; Plaintiffs' claims are instead exclusively premised on Transamerica's actions in imposing the MD Rate Increase beginning in August 2015.

had dealt with for many years.  Transamerica has also begun to refuse to provide policyholders with illustrations showing how their Policies will perform as a result of the MD Increase.   Instead, Transamerica will now only provide policy illustrations depicting how the Policies would perform if the Monthly Deduction Rates were raised to a level even higher than the rates imposed by the MD Increase. . Transamerica hopes that by showing elderly policyholders the most pessimistic Policy performance possible, they will surrender their Policies.  As a result of Transamerica's actions, thousands of class members are faced with the imminent harm of either paying the exorbitant and unjustified new charges, or forever losing the benefits for which they have dutifully paid premiums for many years.

3.    Plaintiffs in this action seek injunctive and equitable relief, and ancillary damages, to halt and reverse Transamerica's massive increase in the monthly deduction that is withdrawn from their accounts each month. This increase has already injured Plaintiffs and, if allowed to proceed, will continue to cause irreparable injury to Plaintiffs and other members of the putative classes (collectively "Class Members").

4.    As further described below, Transamerica's sudden and unilateral increase in the Monthly Deduction charges constitutes a breach of its express and implied obligations under each and every policy, a violation of the unlawful and unfair prongs of California's Unfair Competition Law ("UCL"), and a violation of California's Elder Abuse Statutes.

## **THE PARTIES**

5.    Plaintiffs Gordon Feller and Mary Feller (collectively "Feller") are husband and wife, and at all times herein mentioned, were citizens of the State of California. On or about September 13, 1989, Transamerica Occidental Life Insurance Company ("Transamerica Occidental") from its Los Angeles office issued to Feller an adjustable universal life insurance policy (Policy No. 9229114)

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

with a face amount of $500,000.

6.    Plaintiffs George N. Zacharia and Margaret Zacharia (collectively "Zacharia") are husband and wife, and at all times herein mentioned were citizens of the State of California.  On or about December 20, 1990, Transamerica Occidental's Los Angeles office issued an adjustable universal life insurance policy (Policy No. 92332828) with a face amount of $250,000, which was subsequently transferred into a revocable *inter vivos* trust over which Zacharia, as the settlor, holds the power to revoke. Zacharia retains full ownership and control over the policy under California law.

7.    Plaintiff Andrew Kriegman is a citizen of New York and trustee for the Adrienne L. Hendler Revocable Trust dated 6/4/1993 (the "Hendler Trust"), the Elizabeth Kriegman Revocable Trust dated 6/8/1993 (the "Kriegman Trust"), and the Patricia Sokolow Revocable Trust dated 6/4/1993 (the "Sokolow Trust").

8.    These Trusts, settled by the three daughters of Harold and Shirley Leviton, own the following Transamerica universal life insurance policies each of which was issued by Transamerica Occidental from its offices located in Los Angeles, California:

### Hendler Trust

- Policy No. 92469810 – Face Amount $1,666,667 – Issued 3/22/1994

- Policy No. 92492271 – Face Amount $1,666,667 – Issued 11/10/1994

- Policy No. 92498158 – Face Amount $1,400,000 – Issued 2/15/1995

- Policy No. 92531551 – Face Amount $3,333,333 – Issued 7/19/1996

### Kriegman Trust

- Policy No. 92469811 – Face Amount $1,666,667 – Issued 3/22/1994

- Policy No. 92492487 – Face Amount $1,666,667 – Issued 7/15/1994

3

- Policy No. 92498153 – Face Amount $1,400,000 – Issued 2/15/1995

- Policy No. 92531548 – Face Amount $3,333,333 – Issued 7/19/1996

### Sokolow Trust

- Policy No. 92469813 – Face Amount $1,666,667 – Issued 3/22/1994

- Policy No. 92492268 – Face Amount $1,666,667 – Issued 7/15/1994

- Policy No. 92498155 – Face Amount $1,400,000 – Issued 2/15/1995

- Policy No. 92531550 – Face Amount $3,333,333 – Issued 7/19/1996

9. Plaintiff Geraldo R. Lyons ("Lyons") is an elder as defined under California law who, at all times material hereto, was and is a citizen of the State of California residing within Orange County, California. On or about August 22, 1995, Transamerica Occidental, from its home office in Los Angeles, issued to Lyons, as the owner and the insured, an individual flexible premium life insurance policy insuring his life, which was later converted by him on or about June 22, 2001, to a TransUltra (XL) Life Insurance Policy (Policy No. 60079202 with a face amount of $150,000.00).

10. Plaintiffs Donna M. White and Clarence E. White (collectively, "Whites") are wife and husband. Both are elders and were citizens of the State of California residing within Los Angeles County, California when they purchased their Transamerica Policies. Donna M. White and Clarence E. White currently reside in Saipan, Mariana Islands, United States Territory.

11. On or about May 12, 1980, Transamerica Occidental, from its home office in Los Angeles, issued to Clarence E. White as owner of an individual flexible premium life insurance policy insuring the life of his wife, Donna M. White, which was later converted by them on or about May 12, 1993, to a TransUltra (SM) Life Insurance Policy (Policy No. 92448993) with a face amount

4

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

of $100,000.00.

12.   On or about December 18, 1981, Transamerica Occidental, from its home office in Los Angeles, issued to Donna M. White, as owner of an individual flexible premium life insurance policy insuring the life of her husband Clarence E. White, that was subsequently converted on June 15, 1993 to a TransUltra (SM) Life Insurance Policy, (Policy No. 92449566), with a face amount of $100,000.00.

13.   On or about December 19, 1981, Transamerica Occidental, from its headquarters in Los Angeles, issued to Donna M. White, as owner, a flexible premium life insurance policy insuring the life of her son Jerry Dee Nelson, which was converted on or about July 9, 1993 to a Transamerica Preferred Policyholder, Life Insurance Policy (Policy No. 92451779), with a face amount of $100,000.00.

14.   The Whites resided in Los Angeles County, California when they purchased the Policies from Transamerica Occidental.  They subsequently moved to Saipan, Mariana Islands, where they now live.

15.   Plaintiff Lois Thompson is an elderly 88-year-old woman and resident of the State of California. Plaintiff Gail Thompson is the owner and beneficiary of a TransMax Survivor universal life insurance policy (Policy No. 92370232), which was issued on or about May 28, 1991 by Transamerica and has a current face value of $500,000. The insured under this policy is her mother, Lois Thompson. Gail Thompson's policy remains in force with Transamerica and is subject to Transamerica's monthly deduction rate increase, which was announced on or around June 2015. Gail Thompson is a 66-year-old elderly woman and resident of the State of California.

16.   Defendant Transamerica is a corporation organized under Iowa law, with its principal place of business located at 4333 Edgewood Road NE, Cedar Rapids, Iowa, 52499.  Transamerica is a citizen of Iowa.

17.   Transamerica Occidental was in 1989 and 1990 a corporation

organized under California law, with its Home Office and principal place of business at 1150 S. Olive Street, Los Angeles, California, 90015.

18.   On or about October 1, 2008, Transamerica Occidental was merged into Transamerica, making Transamerica its successor-in-interest. Transamerica Occidental and Transamerica are collectively referred to as "Transamerica."

## JURISDICTION AND VENUE

19.   This Court has jurisdiction over the parties to this action. The six named Plaintiffs are residents of California and New York. Transamerica transacts business in California, and thousands of Class Members are California residents.

20.   Jurisdiction over Transamerica is also proper because it has registered with the California Secretary of State, purposely availed itself of the privilege of conducting business in California, and because it currently maintains systematic and continuous business contacts with this State.

21.   Venue is proper in this District under 28 U.S.C. § 1391 because Transamerica maintains substantial operations in this District; thousands of Class Members either reside or did business with Transamerica in this District; Transamerica engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because Transamerica entered into transactions and received substantial profits from policyholders who reside in this District.

22.   This Court has subject matter jurisdiction based on diversity of citizenship. Additionally, because this Consolidated Complaint alleges claims on behalf of a national class of policyholders who are minimally diverse from Transamerica, and because the aggregate of these claims exceed $5,000,000, this Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

### A.    Background on Universal Life Policies

23.    Traditionally, life insurance companies sold two types of policies: term and whole life insurance.   Term life insurance is issued for a term of years, normally building up no cash value and expiring without value.   Whole life insurance provides coverage for life and provides an increasing cash value that is available when needed. The premiums remain the same throughout the life of the policy.

24.    Universal life insurance provides more flexibility than whole or term life insurance. Premium payments, which are variable, are deposited in an accumulation account from which monthly cost of insurance and expense charges are deducted. The accumulation account is credited with monthly interest at a non-guaranteed declared rate, but not less than the guaranteed interest rate specified in the policy contract. Universal life insurance policies allow policyholders to modify the amount and frequency of premium payments as long as their policy contains sufficient cash value to cover monthly deductions.[2]

25.    A graphic depicting a universal life insurance "chassis"[3] is set forth below:

---

[2] *Universal Life Insurance*, TRANSAMERICA, https://www.transamerica.com/individual/products/insurance/universal-life/  (last visited on June 10, 2016).

[3] *Transamerica Cost Increase Causes Premium to Maturity to More Than Double: A Case Study for Trustees*, ITM TWENTYFIRST, http://blog.itm21st.com/2015/09/09/transamerica-cost-increase-causes-premium-to-maturity-to-jump-over-200-a-case-study-for-toli-trustees/ (last visited on June 10, 2016).

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

26.    Transamerica's Policies use the term "Monthly Deductions" to refer to the Cost of Insurance ("COI") charge.  This charge is important to universal life policyholders for at least two reasons: (1) the COI charge is typically the highest expense that a policyholder pays; and (2) the COI charge is deducted from the accumulation account (i.e., the savings component) of the policy, so the policyholder forfeits the COI charge entirely to Transamerica.

**B.    The Standardized Policy Terms**

27.    Plaintiffs bring this class action on behalf of themselves and other owners and former owners of certain universal life insurance policies issued and administered by Transamerica.[4] The Policies use standardized, materially uniform language with respect to the policy provisions at issue in this action.

28.    Under the uniform provisions of the Policies, an "accumulation account" is established for each Policy, into which the Policyholder's premium

---

[4] The Policies include the so-called "TransMax" and "TransUltra" policies issued to the Plaintiffs, as well as all other policies issued by Transamerica that share comparable terms and for which Transamerica has unilaterally increased monthly deductions since August 1, 2015. Specimen copies of the standardized Policy contracts are attached as Exhibit A.

payment(s) are deposited. The accumulation account earns interest at a declared interest rate not less than the guaranteed interest rate specified in the Policy. Certain of the Policies provide that Transamerica will pay guaranteed interest at the rate of 4%, and that the accumulation value on any policy anniversary will never be less than as if 5.5% interest was credited annually from the issue date. Other policies contain similar interest rate guarantees.

29.   At the end of each policy month, Transamerica withdraws a Monthly Deduction from the Policy's accumulation account. The Monthly Deduction is equal to the following: (a) the application of a "Monthly Deduction Rate" to the difference between the death benefit and the accumulation value at the beginning of the year; (b) the monthly deduction for any policy riders; and (c) a policy fee.

30.   The Monthly Deduction Rate is by far the most important component of the Monthly Deduction charge.  Even small changes in the Monthly Deduction Rate can produce a dramatic increase in the dollar amount of the Monthly Deduction charged by Transamerica, particularly for elderly insureds. The higher the Monthly Deduction Rate, the greater the premiums required to maintain a positive balance in the accumulation account and avoid a lapse of the policy.

31.   Under the Policies, Transamerica determines the Monthly Deduction Rates for each policy year at the beginning of the year, using the insured's age as of that policy year.  The guaranteed Monthly Deduction Rate for non-smokers is premised on a COI portion or component, which is in turn based on projections of life span established by the 1980 CSO Mortality Tables. The guaranteed Monthly Deduction Rate for smokers is premised on the same COI rates, plus an added "expense" portion or component.

32.   Under the Policies, Transamerica's discretion to set or increase the Monthly Deduction Rates is therefore constrained by the Tables of Guaranteed Monthly Deduction Rates and the attained age of the insured under the Policy.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

33.   Furthermore, the Policies do not expressly authorize Transamerica to do any of the following:

- Set or increase the Monthly Deduction Rates in whatever amount or by whatever method it determines;

- Set or increase Monthly Deduction Rates to recoup past losses, including past losses on the Policies based on changes in interest rates, policy lapse rates or other experience factors;

- Set or increase Monthly Deduction Rates to recoup losses due to diminished returns on Transamerica's general investment portfolio; and

- Set or increase Monthly Deduction Rates in order to negate or offset Transamerica's obligation to pay credited interest to the Policies at the minimum guaranteed rates.

34.   A reasonable Policyholder would construe the standardized Policy language to mean that the Monthly Deduction Rate, which is premised on the purported COI and the 1980 CSO Mortality Tables, would not change except for a verifiable, material  adverse change in the underlying mortality rates used to price the Policies. As reflected in every subsequent version of the CSO Mortality Tables, mortality rates have only improved in the years since the Policies were issued from 1987 and 1998.

35.   A reasonable Policyholder would also construe (1) the Policies' provisions governing the payment of guaranteed interest on the accumulation account, and (2) the Policies' provisions governing the Monthly Deduction based on Transamerica's COI, as operating independently of one another, thereby precluding Transamerica from offsetting or subsidizing its interest obligations through increases in the Monthly Deduction Rate.

36.   In the alternative, the Policies are at a minimum ambiguous with respect to whether Transamerica can increase the Monthly Deduction for any reason other than an adverse change in the pricing mortality rates. As a result, any

10

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

ambiguity in this respect must be construed against Transamerica and in favor of the Policyholder.

### C. Transamerica's Massive Monthly Deduction Rate Increase

37.   On June 8, 2015, Transamerica suddenly announced the MD Increase, stating that it was going to unilaterally increase the Monthly Deduction charges under the Policies by as much as 100% based on a massive increase in the Monthly Deduction Rate.

38.   Transamerica notified Policyholders of the MD Increase through a uniform form letter. (*See* Exhibit B). In the letter, Transamerica purported to explain "What's Changing and Why." To make it look like the MD Increase is permitted under the Policies and to create the appearance that it was acting based on the limited grounds authorized by the Policies, Transamerica said it was increasing the Monthly Deduction Rates "based on our current expectations regarding future costs of providing . . . coverage [for the Policies]."

39.   Transamerica thus acknowledged the limited grounds upon which the Policies permit a MD Increase, and represented that the MD Increase was premised on an adverse change in the COI portion of the Monthly Deduction Rate.

40.   Transamerica did not give any other explanation for the MD Increase in the notice letter, and certainly did not suggest it had the unfettered discretion to increase the Monthly Deduction Rate by whatever amount or method it chose.

41.   Transamerica began imposing the MD Increase on Policies with an anniversary date of August 1, 2015, resulting in an astronomical increase in the premiums necessary to maintain coverage under the Policies.

42.   Pursuant to the MD Increase, Transamerica has increased the amount taken from Plaintiffs' and the putative Class members' accumulation accounts upon their respective Policy's anniversary dates. For example, beginning September 13, 2015, the Fellers suffered an approximately 38% increase in their Monthly

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Deduction Rates, raising the Monthly Deduction from approximately $1,500 to more than $2,000 in order to maintain the same death benefit for their Policy. The Zacharias similarly suffered an approximately 38% increase in the Monthly Deduction that Transamerica took from their accumulation accounts beginning December 20, 2015, after they reached their 65th birthday.  As a further example, Transamerica has imposed an increase of approximately 100% upon Lyons commencing June 22, 2016.

43.   Plaintiffs and Class Members are now required to pay much higher Monthly Deductions to maintain the same level of coverage under the Policies, such that their Policies will become cost-prohibitive if the MD Increase is not enjoined.  Unless stopped, Transamerica will induce policyholders to surrender their Policies for the current cash value. These widespread terminations – known as "shock lapses" – will in turn benefit Transamerica because it will not have to pay out the death benefits on Policies for which Plaintiffs and Class Members have duly paid the premiums for decades.

**D.     The True Reasons for the MD Rate Increase**

44.   The sudden and dramatic MD Increase is not truly based on adverse changes in the "cost of providing coverage" as Transamerica represented in its notice letter to the Policyholders, but rather on Transamerica's desire to avoid its contractual obligation to meet the high interest crediting rates it promised under the Policies and to recoup past losses, including the cost of paying out the guaranteed interest rates.

**1.     The Genesis of Transamerica's Self-Inflicted Losses**

45.   As alleged above, over the last 20 to 30 years, Transamerica has collected premiums from policyholders premised on Monthly Deduction Rates expressly tied to mortality-based cost of insurance charges. Transamerica now seeks to impose the draconian MD Increase to impermissibly recoup past and

12

emerging losses even though mortality has only *improved* over the years.

46.    Insurance carriers must reserve assets for the payment liabilities on the policies they issue.  Typically, as much as 80% of an insurance carrier's assets are held in corporate bonds which support the reserves required to back its contractual obligations to policyholders.  At the time the Policies were issued, interest rates were at historically high levels. As interest rates started to trend downwards beginning in the early 2000s, the bonds acquired by Transamerica in earlier years increased in value.  However, Transamerica could not sell the bonds supporting its policy reserves and realize the associated gains unless the underlying policy liabilities were released, which occurs when policies are surrendered or lapse. Transamerica's reserves included those backing the Policies, thereby ensuring that Transamerica has sufficient future profits to pay its obligations to Plaintiffs and the Class Members as those obligations become due.

47.    Transamerica's ultimate parent is AEGON NV ("AEGON") a publicly traded Netherlands-based corporation.  Because the Policies and other interest-sensitive insurance products sold by Transamerica were not lapsing quickly enough to allow the company to release reserves and free up enough capital to satisfy AEGON's demand for cash-flows, Transamerica engineered a series of captive reinsurance transactions premised on representations to regulators and the public that it was holding reserves that were more than sufficient to cover its liabilities, including its obligations under the Policies, based on existing and anticipated future Monthly Deduction charges and related expenses. Through such "shadow insurance" transactions, Transamerica purported to transfer the risks associated with the Policies and other interest-sensitive products to wholly owned captive reinsurance affiliates, thereby claiming a "reserve credit" allowing the company to release the purportedly redundant reserves into its reported surplus, which it then used to pay dividends to AEGON.

48.    For example, in 2010, Transamerica reported that it had taken reserve credits as a result of reinsurance transactions with affiliated reinsurance companies totalling approximately $30 billion.   Transamerica purported to justify these transactions based on its assertion that that Transamerica had ample remaining reserves to cover its  liabilities, including its obligations under the Policies.   In 2010 alone, Transamerica and other affiliated insurance operating companies upstreamed dividends to AEGON totalling $2.3 billion.

49.    By releasing the reserves through captive reinsurance transactions in order to upstream billions of dollars to its parent, Transamerica weakened its policy reserves, diverted its cash flows to pay parental dividends and depleted its capital, thereby self-inflicting near-term losses that it would later seek to recoup through the MD Increase. By depleting its capital surplus to benefit its  foreign parent at the expense of its policyholders, Transamerica knowingly increased the potential adverse impact of losses stemming from  the Policies' high interest rate guarantees and other financial reversals. Even though Transamerica assumed those risks by entering into the Policy contracts containing high guaranteed interest rates and provisions prohibiting Transamerica from recouping losses through Monthly Deduction increases, Transamerica nevertheless imposed the MD Increase in contravention of its contractual obligations to the policyholders.

**2.    Transamerica Imposes the MD Increase to Recoup Losses Resulting from its Captive Reinsurance Transactions and the Great Recession**

50.    As alleged above, interest rates have declined over the last 15 years, falling to historic lows in the wake of the Great Recession. Although these steadily declining interest rates, which fell sharply during the Great Recession, have adversely impacted insurers generally, they have had extremely adverse consequences for the profitability of products, like the Policies issued by Transamerica, which have high guaranteed interest rates.

14
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

51.    In the late 1980s, when many of the Policies were issued, the 10-year Treasury rate was around 9%. Throughout the 1990s the 10-year Treasury moved steadily downward, remaining at or above 5% until the post-2001 recession period when it pierced the 4% level for some months.   Between 2003 and 2008 it fluctuated generally between 4% and 5%. Since mid-2008, however, the 10-year Treasury has been under 4%, hitting a low of 1.65% in 2012.

52.    In April 2012, the Center for Insurance Policy & Research ("CIPR") branch of the National Association of Insurance Commissioners published a report describing the effect on insurers of what was, even then, a prolonged period of low level interest rates. (*See* Exhibit C.) The CIPR Report warned:

> Life insurance companies face considerable interest rate risk given their investments in fixed-income securities and their unique liabilities. For life insurance companies, their assets and liabilities are heavily exposed to interest rate movements. Interest rate risk can materialize in various ways, impacting life insurers' earnings, capital and reserves, liquidity and competitiveness. Moreover, the impact of a low interest rate environment depends on the level and type of guarantees offered. Much of the business currently on life insurers' books could be vulnerable to a sustained low interest rate environment ….
>
> Life insurers typically derive their profits from the spread between their portfolio earnings and what they credit as interest on insurance policies. During times of persistent low interest rates, life insurers' income from investments might be insufficient to meet contractually guaranteed obligations to policyholders which cannot be lowered. ***
>
> In a low interest rate environment, it is challenging to find relatively low-risk, high-yield, long-duration assets to match annuities that guarantee a minimum annual return (e.g., 4%). For many policies, low interest rates mean that some mismatch with assets is likely. For example, older fixed income insurance products that guarantee rates of around 6%—closely matching or conceivably even surpassing current investment portfolio yields—are likely to put a strain on life insurers as a result of spread compression or possibly negative interest margins.

CIPR Report, at 2-3.

53.    The low interest rate environment has persisted since 2012, exacerbating the spread compression and thus, as explained by the CIPR, undermined the profitability of policies with "guarantee rates around 6%."

54.    A recent report by actuary and Consumer Federation of America's James H. Hunt described how today's "climate of low interest rates" would impact insurers.[5] For more than 30 years Hunt has evaluated life insurance policies. His report prophetically warned:

> While there has been occasional COI increases in the past, and there has been litigation on the issue, CFA is concerned that the actions taken may spread throughout the life insurance business . . . . We are concerned that COI rate increases will, in effect, void the interest rate guarantees in affected contracts The question is: Are these insurers in a climate of low interest rates using COI increases to maintain profits when the interest rates they have been crediting to cash values have been reduced to the contractually guaranteed rates, often 4%, sometimes higher?

*Id*. at 1.

55.    As Hunt predicted, the low interest rate environment undermined the profitability of policies with guaranteed rates at 4% or more, and in turn Transamerica is "using COI increases to maintain profits."

56.    In fact, Transamerica's investment returns have been very low since 2007, and are nowhere near the returns needed to support continued interest credit to the policies' cash values at the guaranteed 4% rate. Through the MD Increase, Transamerica is seeking to offset or subsidize its credited interest guarantees through dramatic increases in the charges taken from the policyholders' cash value.

---

[5] *See Life Insurance Regulators Should Block Cost of Insurance Rate Increases When Used to Avoid Guaranteed Interest Rates in Universal Life Policies, James Hunt,* found at http://www.consumerfed.org/pdfs/160121_CFACOIs_report.pdf. (Last checked June 10, 2016).

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Transamerica also is seeking to recoup past losses through the MD Increase.

57.   In short, through the sudden and massive MD Increase, Transamerica is attempting to avoid its obligation to credit the guaranteed interest rates under the policies by impermissibly recouping its past losses — thereby denying policyholders their contractual benefits under the policies.   Through the MD Increase, Transamerica is attempting to offset or subsidize its credited interest guarantees

58.   For the foregoing reasons, Transamerica's stated reason in its notice letters for the MD Increase was false.   As one industry commentator has put it, Transamerica is "trying to claim that mortality charges are the culprit even though you would have to be snoozing pretty heavily not to know that people are living way longer than they were 15 to 20 years ago."[6]

59.   Because non-guaranteed elements such as the Monthly Deduction Rate are required to reflect expectations of *future* experience, Transamerica is precluded from re-determining those elements to recoup past losses, including past losses attributable to the Policies. The Policies contain contractual provisions prohibiting Transamerica from increasing the Monthly Deductions to recoup past losses. Additionally, any attempt to do so would violate the actuarial standards of practice, the code of professional ethics, and regulatory constraints.

### 3.   The MD Increase is Not Justified by Adverse Anticipated Experience Factors Relating to the Cost of Insurance

60.   The MD Increase is not justified by adverse mortality or any other deterioration in anticipated experience factors relating to the cost of insurance, which is the only permissible basis for changes in the Monthly Deduction Rates

---

[6] Ed Hinerman, *Transamerica Life Drops a Big One in the Punch Bowl!*, Hinerman Group, http://www.hinermangroup.com/blog/insurance/transamerica-life-drops-a-big-one-in-the-punch-bowl (last checked June 10, 2016).

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

under the Policies. The Monthly Deduction Rate, which Transamerica has set at a level less than the Guaranteed Monthly Deduction Rate, is considered a "nonguaranteed element" of the Policy. Insurance companies and their actuaries are required to file with their state regulators answers to interrogatories every year as to whether their "anticipated experience factors underlying any nonguaranteed elements [are] different from current experience."

61.    In Transamerica's Statement of Nonguaranteed Elements, as recently December 31, 2014, Transamerica expressed no indication of any need to increase the Monthly Deduction Rates due to any adverse change in mortality rates or any other anticipated experience factors. (*See* Exhibit D.)

62.    Indeed, for each of the past four years, Transamerica consistently reported to regulators that the anticipated experience factors underlying its nonguaranteed elements were no different from current experience. (*See* Statement of Nonguaranteed Elements as of December 31, 2013 (attached as Exhibit E); Statement of Nonguaranteed Elements as of December 31, 2012 (attached as Exhibit F); Statement of Nonguaranteed Elements as of December 31, 2011 (attached as Exhibit G).

63.    Tellingly, Transamerica qualified its Statement of Nonguaranteed Elements to "include[] only those elements over which the company … may by policy provisions exercise some current or future level of discretionary control," while excluding from its statement "interest sensitive … contracts [that] contain minimum interest rate … guarantees … which the company must, as a matter of contract law, not violate." *Id.* Transamerica also disclaimed any ability to predict anticipated investment experience.  By doing so, Transamerica avoided disclosing that the high interest rates guaranteed in the Policies were not supported by current experience and, in fact, had contributed to losses that Transamerica improperly now seeks to recoup through the MD Increase.

18
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

64.    Insurance company actuaries are required to closely monitor and report on COI trends affecting non-guaranteed elements of its insurance policies.  Material deviations between current and expected future expectations as to COI do not occur overnight; they are gradual trends for which actuaries can and do make incremental adjustments. As a consequence, it is inconceivable that the MD Increase (as high as 100%) is attributable to changes in current or anticipated experience factors relating to the cost of providing insurance that emerged in a single year during 2015.

### 4.    Transamerica Seeks to Inflict Massive Shock Lapses Through the MD Increase

65.    As alleged above, Transamerica has saddled Plaintiffs and other Class Members with the onerous MD Increase not because of any adverse mortality experience or other legitimate COI factors but, instead, to defray its contractual obligations to pay guaranteed interest under the Policies and to recoup losses stemming from Transamerica's own actions—i.e. arranging captive reinsurance transactions to release policy reserves for the purpose of upstreaming billions of dollars in dividends to AEGON.  In an unconscionable disregard of the rights and interests of its—mostly elderly—policyholders, Transamerica effectively plundered the policy reserves established to protect those policyholders, only to turn around and demand that the policyholders themselves restore the profitability of the Policies to Transamerica by paying increased Monthly Deductions.

66.    Transamerica's true motive behind the MD Increase -- to benefit its ultimate parent, AEGON, at the expense of its policyholders—is further reflected in the timing of the MD Increase.  As a Netherlands-based holding company, AEGON is subject to the capital adequacy requirements of the European Union, known as "Solvency II".  On Friday, June 12, 2015, the European Commission issued a decision permitting AEGON and other European based insurance companies to include the capital of their foreign subsidiaries in determining their

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

own risk-based capital under the operative capital adequacy requirements.  This decision thus allowed AEGON to include the earnings and capital of Transamerica to satisfy its own risk-based capital requirements.  Transamerica announced the MD Increase on Monday, June 15, 2015, the very next business day after the European Commission's decision.

67.   The MD Increase, which was implemented to recoup Transamerica's past losses and increase its overall profitability, was therefore calculated to benefit AEGON by allowing AEGON to include the resulting profits in order to help satisfy its own minimum risk-based capital requirements under the European Union capital adequacy regime.  Indeed, according to an equity research report by RBC Capital Markets dated August 18, 2015, AEGON is now entirely dependent on the cash flow generated by Transamerica (including the cash flows resulting from the MD Increase) to cover AEGON's dividends and expenses.  Furthermore, AEGON's ability to continue dividends at their current level would be jeopardized if Transamerica were required to re-establish the reserves that were released as part of the captive reinsurance transactions described in Paragraphs 46-49 above.  *See* attached Exhibit H.

68.   Unless enjoined, the MD Increase virtually assures that Transamerica will achieve its goal of recouping past losses to make the Policies collectively more profitable.  To the extent policyholders agree to pay the increased charges resulting from the MD Increase, Transamerica will avoid its losses and reap profits.  To the extent policyholders decide or are forced to surrender their Policies as a result of the MD Increase, Transamerica will wipe the unprofitable Policies from its books.  Transamerica knows, and fully expects, that the massive MD Increase will cause thousands of Class Members to surrender their Policies and cause thousands of other Policies to lapse as the increased Monthly Deduction charges exhaust the funds in the Policies' accumulation accounts.  Indeed, Transamerica has acted

intentionally to provoke Policy surrenders in an effort to wipe from its books life insurance policies that Transamerica has by its own conduct rendered unprofitable.

69.    The likelihood of a surrender or lapse increases dramatically when there is an increase in Monthly Deduction Rates, and the policyholder must decide whether he or she can afford to maintain the policy, especially when the information supplied to the policyholder is deliberately designed to provoke surrender or lapse.

70.    Transamerica has actively sought to encourage and provoke Plaintiffs and Class Members to terminate their Policies or reduce the face amount of coverage enough to allow Transamerica to collect the increased monthly deduction charges.  In its form letters announcing the MD Increase, Transamerica suggested as the first option that policyholders "may choose to surrender your policy for the cash value…You can take this in cash or you may be able to exchange it for another life insurance policy that accumulates cash value."  Exhibit B. Transamerica also suggested an alternative "Reduced Face Amount Option," which would drastically reduce the insurance coverage while still allowing Transamerica to pocket the increased Monthly Deductions as long as the Policy remained in force.  *Id.*

71.    Transamerica also has created obstacles that preclude policyholders from obtaining the information they need to evaluate their options.  For instance, Transamerica systematically directs policyholders to speak with its "customer service" representatives or its "Product Specialist Team" to obtain information and answers to questions about the MD Increase.  Policyholders often must make multiple calls or remain on hold for extended periods of time to ring through to the Transamerica representatives. Moreover, the center is staffed by representatives who lack sufficient training or information to provide meaningful guidance to policyholders.  Policyholders are often given confusing or conflicting answers to their questions, or presented with alarming doomsday scenarios intended to

encourage surrenders or lapses.

72.   In addition, Transamerica is now refusing to provide policyholders with illustrations showing how their Policies will perform as a result of the MD Increase. Instead, Transamerica will now only provide policy illustrations depicting how the Policies would perform if the Monthly Deduction Rates were raised to a level even higher than the rates imposed by the MD Increase.  These illustrations depict the most pessimistic scenario possible, suggesting showing — that the Policies will terminate far sooner than they will as a result of the MD Increase would be the case under current assumptions. By doing so, Transamerica hopes to induce elderly policyholders to surrender their Policies.

### 5.   Transamerica's Unconscionable Conduct Must Be Enjoined

73.   In short, through the sudden and massive MD Increase, Transamerica is attempting to avoid its obligation to credit the guaranteed interest rates under the Policies, recoup past losses, and shed the Policies by making the premiums to maintain them cost-prohibitive for Policyholders, thereby frustrating Policyholders' ability to receive their contractual benefits under the Policies.

74.   The Class Members hardest hit by Transamerica's unconscionable business practice are elderly Policyholders who have dutifully paid premiums for 20 years or more based on the expectation that in their twilight years the Policies would provide protection for their families. Due to age-related underwriting considerations, life insurance protection for these elderly policyholders is now either unavailable or prohibitively expensive.  Compounding this situation is the fact that these policies do not contain an "extension of maturity option" which would provide coverage past age 100.  Therefore, it is possible that the insured may outlive the policy and will have paid increased premiums without a way to recover the additional costs.  Transamerica's actions have thus stripped Plaintiffs

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

and the Class of any future life insurance protection.

75.   Transamerica's attempt to deprive Plaintiffs and Class Members of the primary benefit of their Policies—paid for through years of contributions to the accumulation account—violates Transamerica's express and implied obligations under the Policies, constitutes "unlawful" and "unfair" conduct under the UCL, and statutory elder abuse in the case of Zacharia, Lyons and other Policyholders aged 65 years or older.

76.   The vast majority of Transamerica policyholders affected by this increased COI are elderly; many are now in their mid-to-late 80s and 90s and purchased a policy in the 1990s when they were in their 60s or 70s.  These policyholders have faithfully paid the scheduled premiums for years and have accumulated significant cash value in the policies.  Due to their advanced age, these individuals cannot obtain alternative life insurance coverage and will lose the cash value of the policy if they cannot pay the increased costs to maintain the policy.

77.   Transamerica for many years and as recently as late 2015, supplied policyholders with illustrations and other information using existing COI rates that provided no hint of any impending change in those rates. Current policyholders thus had no way of knowing or expecting that this dramatic increase in the Monthly Deduction Rates would happen after almost twenty years of stable premiums.

78.   These elderly policyholders, who are effectively uninsurable due to their advanced ages, face the prospect of: (1) surrendering their policies and losing their death benefits at an age when purchasing other life insurance coverage is practically impossible; (2) permitting Transamerica to deplete their policy values through its "cost of insurance" increases until there is nothing left and the policy "shock lapses"; (3) paying vastly increased premiums with no assurance the cost of insurance will not continue to increase; or (4) accepting cuts in death benefits.

79.   As a result of Transamerica's actions, thousands of class members are

faced with the difficult decision of either paying the exorbitant and unjustified new charges, or forever forgoing the life insurance benefits for which they have dutifully paid premiums for many years.

80. Plaintiffs therefore seek immediate preliminary injunctive and equitable relief to preserve the status quo *pendente lite* by enjoining the MD Increase. Unless Transamerica is enjoined, Policyholders will be irreparably damaged and Transamerica will succeed with its plan to cause mass cancellations of the Policies—leaving tens of thousands of Policyholders without coverage based on an unlawful, unfair and abusive MD Increase. Plaintiffs also seek permanent declaratory and injunctive relief requiring Transamerica to (i) reverse the unlawful increase in Monthly Deductions charged on the Policies, and (ii) reinstate all Policies that were surrendered or lapsed as a result of the MD Increase. Plaintiffs also seek ancillary damages flowing directly from Transamerica's unlawful conduct.

## CLASS ACTION ALLEGATIONS

81. This action is brought by Plaintiffs individually and on behalf of the five subclasses described below (the "Classes") pursuant to Rule 23, subdivisions (a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

82. Plaintiffs seek certification of the following subclasses:

a. **California Subclass I: Current Policyholders**

All California residents who own an in-force Policy for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

b. **California Subclass II: Surrendered Policyholders**

All California residents who previously owned and seek to reinstate a Policy: (i) for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, resulted or threatened to result in higher Monthly Deduction charges than

24
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

those applicable under the rate schedule in effect before that date; and (ii) that terminated after that date.

    c.    **California Subclass III:  Senior Policyholders**

All California residents who were 65 years old or older and owned a Policy for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

    d.    **National Subclass I:  Current Policyholders**

All persons, other than California residents, who own a Policy for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

    e.    **National Subclass II:  Surrendered Policyholders**

All persons, other than California residents, who previously owned and seek to reinstate a Policy: (i) for which the Monthly Deduction increase imposed by Transamerica beginning August 1, 2015, resulted or threatened to result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date; and (ii) that terminated after that date.

83.    There are thousands of members of each of the Subclasses described in the foregoing paragraph. Accordingly, the Class consists of thousands of Transamerica policyholders and is thus so numerous that joinder of all members is impracticable.  The identities and addresses of the members of these Subclasses can be readily ascertained from business records maintained by Transamerica.

84.    The claims asserted by Plaintiffs are typical of the claims of the Class Members.

85.    Plaintiffs are willing and prepared to serve the Court and the proposed Class in a representative capacity. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests that are adverse to, or which materially and irreconcilably conflict with, the interests of the other members of the Class.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

86.   The self-interests of Plaintiffs are co-extensive with and not antagonistic to those of absent Class members. Plaintiffs will undertake to represent and protect the interests of absent Class members.

87.   Plaintiffs have engaged the services of counsel indicated below who are experienced in complex class litigation and life insurance matters, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiffs and the putative Class members.

**A.   Rule 23 (b)(2)**

88.   This action is appropriate as a class action pursuant to Rule 23 (b)(2). Plaintiffs seek injunctive relief and corresponding declaratory relief for each of the Classes.  Transamerica has acted in a manner generally applicable to each member of the Classes by imposing the MD Rate Increase on all Policies owned by Class members.

89.   Transamerica's unlawful MD Increase, if not enjoined, will subject Plaintiffs and Class Members to enormous continuing future harm and will cause irreparable injuries to such Policyholders, who are compelled to surrender valuable life insurance policies with no economically viable option for alternative life insurance. The adverse financial impact of Transamerica's unlawful actions is continuing and, unless preliminarily and permanently enjoined, will continue to irreparably injure Plaintiffs and Class Members.

**B.   Rule 23 (b)(3)**

90.   This action is also appropriate as a class action pursuant to Federal Rule of Civil Procedure 23 (b)(3).

91.   Common questions of law and fact predominate over any individualized questions. Common legal and factual questions include the following:

a.      Whether Transamerica's large and sudden increase in the s

Monthly Deduction Rates is authorized under the terms of the Policies;

b.     Whether Transamerica breached its contractual obligations owed to Plaintiffs and Class Members;

c.     Whether Transamerica breached its implied duty of good faith and fair dealing owed to Plaintiffs and Class Members;

d.     Whether Transamerica has engaged in unfair or unlawful business practices in its dealings with Plaintiffs and Class Members;

e.     Whether Transamerica has engaged in the financial abuse of elders within the meaning of California's Elder Abuse Statute;

f.     Whether Plaintiffs and Class Members have been damaged, and if so, are eligible for and entitled to compensatory and punitive damages;

g.     Whether Plaintiffs and Class Members are entitled to declaratory relief; and

h.     Whether Plaintiffs and Class Members are entitled to preliminary and permanent injunctive relief, or other equitable relief, against Transamerica.

92.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

a.     Given the age of Class Members, many of whom are elderly and have limited resources, the complexity of the issues involved in this action and the expense of litigating the claims, few, if any, Class Members could afford to seek legal redress individually for the wrongs that Transamerica has committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b.     Once Transamerica's liability has been adjudicated respecting the Monthly Deduction Rate Increase, claims of all Class Members can be determined by the Court;

27

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

c.    This action will ensure an orderly and expeditious administration of the Class's claims and foster economies of time, effort, and expense, and ensure uniformity of decisions and compliance by Transamerica with the Policies;

d.    Without a class action, many Class Members would continue to suffer injury, and Transamerica's violations of law will continue without redress while it continues to reap and retain the substantial proceeds and reductions in its future liabilities derived from its wrongful conduct; and

e.    This action does not present any undue difficulties that would impede its management by the Court as a class action.

93.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. The injuries suffered by individual Class Members are, though important to them, relatively small compared to the burden and expense of individual prosecution needed to address Transamerica's conduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

*(Breach of Contract – All Plaintiffs on behalf of the National Classes and the Feller, Zacharia and Lyons Plaintiffs on behalf of the California Subclasses)*

94.    Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

95.    The Policies are valid, enforceable contracts between Plaintiffs and Class Members and Transamerica.

96.    At all relevant times, Plaintiffs and Class Members have paid premiums to Transamerica through Monthly Deduction charges established at the

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

inception of the Policies, and have otherwise performed all their obligations under the Policies.

97.   As alleged above, Transamerica owed duties and obligations to Plaintiffs and Class Members under the Policies including, but not limited to, refraining from imposing Monthly Deduction charges except as authorized under the terms of the Policies.

98.   Through the MD Increase, Transamerica has materially breached the terms and provisions of the Policies for reasons not permitted under the Policies; that is, in order to reduce its credited interest obligations to Plaintiffs and the Class and to recoup past losses, by dramatically depleting the Policyholders' accumulation accounts and forcing mass lapses and surrenders of Policies.

99.   At a minimum, the MD Increase is of such a magnitude that, even if legitimate COI increases were a factor, Transamerica necessarily considered impermissible factors other than the COI in setting the level of the MD Increase.

100. Transamerica's conduct and material breaches of the Policies have proximately caused damage to Plaintiffs and the Class Members in an amount to be determined at trial.

101. In addition, unless Transamerica is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and the Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## SECOND CAUSE OF ACTION

*(Contract Breach of the Implied Covenant of Good Faith and Fair Dealing – the Feller, Zacharia and Lyons Plaintiffs on behalf of the California Subclasses)*

102. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

103. The Policies are valid, enforceable contracts between Transamerica

and Plaintiffs or the Class Members.

104.  Implied in each Policy is a contractual covenant of good faith and fair dealing through which Transamerica owed Plaintiffs and Class Members a duty to act in good faith and deal fairly, and in a manner that did not frustrate their reasonable expectations under the Policies.

105.  Transamerica contractually breached the covenant of good faith and fair dealing because, to the extent Transamerica had the discretion to increase the Monthly Deduction, that discretion was sufficiently constrained under the terms of Policies to support an implied obligation of good faith and fair dealing with respect to the MD Rate Increase.

106.  Transamerica exercised its discretion under the Policies in bad faith and breached the implied covenant of good faith and fair dealing by, among other things:

a.  Exercising its discretion to increase the Monthly Deductions to recoup past losses;

b.  Misrepresenting to Plaintiff and Class members the reasons for the MD Rate Increase;

c.  Intending for the MD Rate Increase to force Plaintiffs and Class members to surrender their policies so Transamerica would not have to pay the death benefits; and

d.  Negating the value of what were intended to be guaranteed interest rates, which Transamerica has no right to do.

107.  Transamerica's contractual breach of the covenant of good faith and fair dealing has proximately caused damage to Plaintiffs and the Class Members in an amount to be determined at the time of trial.

108.  In addition, unless Transamerica is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and Class Members will suffer severe and irreparable injuries

for which they have no adequate remedy at law.

### THIRD CAUSE OF ACTION

*(Tortious Breach of the Duty of Good Faith and Fair Dealing*
*–Feller, Zacharia and Lyons Plaintiffs on behalf of the California Subclasses)*

109. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

110. The Policies are valid, enforceable contracts between Transamerica and Plaintiffs or the Class Members.

111. Life insurance policies, like those owned by Plaintiffs and the Class Members, protect them from the economic harm and risk presented by death. As is the case with most insurance contracts, Transamerica and the Policyholders' financial interests are directly at odds: Transamerica benefits from increasing the charges to Policyholders and the Policyholders are harmed by such increases. As explained above, Transamerica benefits if Plaintiffs and Class Members forfeit the Policies because it will have obtained premium payments without having to pay death benefits or the promised credited interest rates.

112. For these reasons, Transamerica owes Plaintiffs and Class Members a heightened duty of good faith and fair dealing. Among other things, Transamerica must refrain from doing anything to injure Policyholders' right to receive the benefits of the Policies. Transamerica is required to give at least as much consideration to the welfare of the Policyholders as it gives to its own interests. Furthermore, Transamerica has a duty to reasonably inform Plaintiffs and the Class Members of their rights and obligations under the Policies.

113. As alleged above, Transamerica has breached these duties in connection with the MD Increase, thereby frustrating the reasonable expectations of Plaintiffs and the Class Members and tortiously depriving them of benefits under the Policies. In increasing the Monthly Deduction, Transamerica did not give

proper consideration to the welfare of Plaintiffs and Class Members and served solely its own interests at their expense. In addition, Transamerica has failed to truthfully, let alone reasonably, disclose or describe its course of conduct, or the basis and reasons for its course of conduct.

114.  Transamerica's alleged acts and omissions were and are unreasonable and without proper cause. If left unabated, Transamerica's conduct will frustrate and deprive Plaintiffs and the Class Members of the reasonably expected benefits of the Policies.

115.  Transamerica has, in particular, improperly withheld benefits due Plaintiffs and the Class Members under the Policies, because the unlawful increase in the Monthly Deduction has both (a) reduced the value of their accumulation account, and (b) reduced the amount of interest credited on their accumulation accounts.

116.  Transamerica's tortious breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and Class Members in an amount to be determined at the time of trial.

117.  Transamerica's conduct was intentional, deliberate, and constitutes oppression, fraud, or malice.  Plaintiffs and the Class Members are entitled to recover punitive and exemplary damages in an amount to be determined by the trier of fact.  Plaintiffs also seek an order requiring Transamerica to disgorge all profits that it received in connection with the above referenced wrongful acts and omissions.

118.  In addition, unless Transamerica is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

# FOURTH CAUSE OF ACTION

*(Injunctive and Restitutionary Relief Pursuant to UCL
–Feller, Zacharia and Lyons Plaintiffs on behalf of the California Subclasses)*

119. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

120. Transamerica committed acts of unfair competition by engaging in, among others, the following practices:

   a.  Marketing and selling the Policies on the premise that they were a solid and good life insurance product that would provide a certain death benefit for a certain cost and duration and subsequently taking steps to prevent Policyholders from receiving the promised benefits from those Policies by suddenly, massively, and unlawfully increasing the cost of the Policies through the MD Increase.

   b.  Imposing the MD Increase even though Transamerica's expected future mortality has improved and is better than the mortality upon which the original MD Rate schedule is based -- in order to increase premiums, recoup past losses, and/or force its insureds to surrender (cancel) their Policies, all of which was, and is, contrary to, and precluded by, the express terms of the Policies.  The Monthly Deduction charges were increased effective August 1, 2015, so that Transamerica could reduce the size of an unprofitable block of life insurance policies, to eliminate long-anticipated losses on the Policies, and to cause many of the Policyholders to surrender their Policies. Transamerica breached its duties under the Policies by improperly increasing the Monthly Deduction charges in order to recoup past losses and gain or retain an unfair competitive advantage over other life insurers.

   c.  After the sale of the Policies, continuing to send annual reports, policy servicing statements, illustrations and other documents and correspondence to Plaintiffs and the Class Members without disclosing that there would be sudden, dramatic, and cost-prohibitive increases in the Monthly Deduction charges effective August 1, 2015.

33

d.   Failing to provide any meaningful advance warning that it intended to massively and suddenly increase the Monthly Deduction charges effective August 1, 2015, through the MD Increase.

e.   Ultimately providing a false and misleading explanation to Plaintiffs and the Class Members of the grounds for the MD Increase.

121.   A claim under the Unfair Competition Law's ("UCL's") "unlawful" prong can be predicated on any business practice "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made." *Agarwal v. Pomona Valley Med. Grp. Inc.*, 476 F.3d 665, 674 (9th Cir. 2007). Transamerica violated the "unlawful" prong through its alleged misconduct, including the tortious breach of the implied obligation of good faith and fair dealing as alleged above.

122.   A claim under the UCL's "unfair" prong is predicated on a "business practice" that "violates established public policy" or is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Eisen v. Porsche Cars N. America, Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *5 (C.D. Cal. Feb. 22, 2012) (citing *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Transamerica violated the "unfair" prong by excessively raising the Monthly Deduction for reasons not authorized under the Policies, and unfairly shifting to Plaintiffs and Class Members: (a) losses suffered by Transamerica when the Policies ceased to be as profitable as Transamerica had hoped based on its original (but mistaken) pricing assumptions; and (b) Transamerica's cost of meeting its obligations to pay credited interest at the 4% annual and 5.5% effective guaranteed rates.

123.   Plaintiffs are informed and believe and on that basis allege that the "unfair" and "unlawful" practices alleged above are continuing in nature and are

widespread practices engaged in by Transamerica.

124.  On behalf of the general public and the Classes, Plaintiffs respectfully request that the Court issue an injunction against Transamerica preliminarily and permanently enjoining it (i) from continuing to engage in unlawful and unfair conduct and preventing Transamerica from collecting the unlawfully and unfairly increased Monthly Deduction charges in violation of the Policies and (ii) ordering any Policy to be reinstated that lapsed or terminated as a result of the MD Increase.

125.  On behalf of the general public and the Classes, Plaintiffs furthermore respectfully request that this Court order restitution to be paid by Transamerica to the Classes for Monthly Deduction charges, premiums, and other amounts wrongfully required, obtained and collected as the result of the MD Increase in violation of the Policies.

126.  Plaintiffs respectfully request an award of attorneys' fees as the prevailing party in his request for injunctive relief and restitutionary relief against Transamerica on behalf of themselves and the Class Members.

## FIFTH CAUSE OF ACTION

*(For Declaratory Relief – All Classes)*

127.  Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

128.  An actual controversy has arisen and now exists between Plaintiffs and the Class Members, on the one hand, and Transamerica, on the other hand, concerning the respective rights and duties of the parties under the Policies.

129.  Transamerica contends that it lawfully and appropriately increased Monthly Deductions effective August 1, 2015, through the MD Increase, has appropriately collected (and is still collecting) Monthly Deduction charges based on the elevated Monthly Deduction Rates, and that it is permitted to continue to collect these charges for the duration of the Policies.  On the other hand, Plaintiffs

and Class Members maintain that Transamerica, through the MD Increase, has inappropriately and unlawfully, in material breach of the express and implied terms of the Policies, collected inflated Monthly Deduction charges.

130.   Plaintiffs, on behalf of themselves and the Classes, seek a declaration as to the parties' respective rights under the Policies and request the Court to declare that the MD Increase is unlawful and in material breach of the Policies' terms so that future controversies may be avoided.

## SIXTH CAUSE OF ACTION

*(For Elder Abuse – Zacharia, Lyons, and Thompson Plaintiffs on behalf of California Subclass III Only)*

131. Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

132. This cause of action is brought under California's Welfare and Institutions Code section 15610, *et seq.*

133. Plaintiffs George and Margaret Zacharia and each member of California Class III were 65 years or older at all times relevant to this claim.

134. By imposing the MD Increase, Transamerica took, depleted, appropriated and/or retained the Zacharias' and the Class Members' personal property in bad faith for a wrongful use and/or with the intent to defraud, which constitutes financial abuse as defined in California Welfare & Institutions Code section 15610.30.

135. Transamerica is guilty of oppression, fraud, and malice in the commission of the above-described acts of abuse. At a minimum, Transamerica knew or should have known that its conduct was likely to be harmful to elders.

136. Under California Civil Code section 3294 Transamerica is liable to Zacharia, Lois and Gail Thompson, and the Class Members for punitive damages.

137. Under California Welfare & Institutions Code section 15657.5

Transamerica is liable to the Zacharia, Lyons, and Thompson Plaintiffs and Class Members aged 65 years or older for reasonable attorney fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief as follows as applicable for the particular cause of action:

1.     An Order certifying this action to proceed on behalf of the Class, including the Subclasses, and appointing Plaintiffs and the counsel listed below to represent the Classes;

2.     An Order awarding Plaintiffs and Class Members entitled to such relief restitution and/or disgorgement and such other equitable relief as the Court deems proper;

3.     An Order enjoining Transamerica, its representatives, and all others acting with it or on its behalf from using Monthly Deduction Rates based on the MD Rate Increase and from unlawfully charging excessive Monthly Deduction Rates for the Policies and requiring those rates to be at levels that are consistent with the terms of the policies, and other appropriate injunctive relief;

4.     An Order providing preliminary and permanent injunctive relief requiring Transamerica, its representatives, and all others acting with it or on its behalf to reinstate any Class Member whose Policy was cancelled or surrendered as a result of the MD Rate Increase;

5.     An Order providing a declaration that the MD Rate Increase materially breaches the Policies, and that Transamerica must determine the Monthly Deduction Rates only on the grounds authorized under the Policies;

6.     An Order awarding Plaintiffs and the Subclass Members who might be entitled to such relief actual, compensatory, statutory, punitive, and/or exemplary damages;

37

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

7.     An Order awarding Plaintiffs' attorneys' fees, expert witness fees and other costs pursuant to the state statutory causes of action set forth above that permit such an award; and

8.     An Order awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

Dated:  June 10, 2016.

**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, PC**

By: /s/Andrew S. Friedman
Andrew S. Friedman (admitted *Pro Hac Vice*)
Francis J. Balint, Jr. (admitted *Pro Hac Vice*)
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
afriedman@bffb.com
fbalint@bffb.com

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Jerry Flanagan (SBN: 271272)
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874
Harvey@consumerwatchdog.org
jerry@consumerwatchdog.org

**KOZYAK TROPIN & THROCKMORTON**
Adam M. Moskowitz (Admitted *pro hac vice*)
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
amm@kttlaw.com

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER (121590)
Mark R. Rosen (139506)
Samuel M. Ward (216562)
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Tel: (619) 230-0800
Fax: (619) 230-1874
sbasser@barrack.com
sward@barrack.com
mrosen@barrack.com

**EMERSON SCOTT, LLP**
John G. Emerson
830 Apollo Lane
Houston, TX 77058
Tel: (281) 488-8854
Fax: (281) 488-8867
jemerson@emersonfirm.com

**EMERSON SCOTT, LLP**
David G. Scott
The Rozelle-Murphy House
1301 Scott Street
Little Rock, AR 72202
Tel: (501) 907-2555
Fax: (501) 907-2556
dscott@emersonfirm.com

**JOHNSON VINES PLLC**
Christopher D. Jennings
2226 Cottondale Lane, Suite 210

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Little Rock, AR 72202
Tel: (501) 372-1300
Fax: (888) 505-0909
cjennings@johnsonvines.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
Allison H. Goddard (CA 211098)
Catherine S. Wicker (CA 306494)
402 West Broadway, 29th Floor
San Diego, California 92101
Tel: 619.756.6990
Fax: 619.756.6991
jim@pattersonlawgroup.com
ali@pattersonlawgroup.com
catherine@pattersonlawgroup.com

*Attorneys for Plaintiffs and the Classes*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I, Trish Aquilino, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on June 10, 2016.

/s/ Trish Aquilino

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT