UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL           'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS
(Filed August 1, 2016, Dkt. 109)

## I.    INTRODUCTION

On February 28, 2016, Gordon Feller, Mary Feller, George Zacharia, and Margaret Zacharia, filed this putative class action against Transamerica Life Insurance Company ("Transamerica") challenging a monthly deduction rate ("MDR") increase in imposed on holders of life insurance policies issued by Transamerica.  Dkt. 1.

On March 25, 2016, Andrew Kriegman filed a nationwide class action in the Southern District of Florida challenging Transamerica's same MDR increase in 2015. Kriegman v. Transamerica Life Insurance Company, Case No. 1:16-cv-21074.  On April 25, 2016, the Thompsons filed a third class action in the Southern District of California. Thompson v. Transamerica Life Insurance Company, Case No. 3:16-cv-1007.

On May 3, 2016, Transamerica filed a motion before the United States Judicial Panel on Multidistrict Litigation ("JPML") seeking transfer of all three actions the Northern District of Iowa.  Dkt. 22.  Before the JPML ruled on Transamerica's motion the Thompson and Kriegman plaintiffs voluntarily dismissed their cases in other districts and refiled them in the Central District of California.  The newly filed cases were related to the Feller case and consolidated for pretrial purposes.

On June 10, 2016, plaintiffs filed a Consolidated Amended Class Action Complaint (the "Complaint") in this Court.  Dkt. 68.  In the Complaint, Gordon Feller,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Mary Feller, George Zacharia, Margaret Zacharia, Gerald Lyons, Donna M., Clarence White, Lois Thompson, Gail Thompson, and Andrew Kriegman, as trustee for the Adrienne L. Hendler Revocable Trust, the Elizabeth Kriegman Revocable Trust, and the Patricia Sokolow Revocable Trust, assert seven claims against Transamerica on behalf of themselves and all others similarly situated.  Id.  Specifically, the Complaint alleges claims for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) tortious breach of duty of good faith and fair dealing; (4) violation of California's Unfair Competition Law ("UCL"), pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq.; (5) declaratory relief; (6) preliminary and permanent injunctive relief; and (7) elder abuse, pursuant to Cal. Welf. & Inst. Code §§ 15657.5, et seq.  Id.

On August 1, 2016, Transamerica filed a motion to dismiss the Complaint, Dkt. 109, as well as a request for judicial notice in support of its motion to dismiss, Dkt. 110. On August 31, 2016, plaintiffs filed an opposition, Dkt. 123, as well as a request for judicial notice, Dkt. 124.  On October 17, 2016, Transamerica filed a reply.  Dkt. 137.

On October 31, 2016, the Court heard oral argument from the parties and thereafter took this matter under submission.  Dkt. 157.  Having carefully considered the parties' arguments, the Court rules as follows.

## II.   BACKGROUND

### A.   Plaintiffs' Life Insurance Policy Terms

Plaintiffs are all owners of life insurance policies issued by Transamerica Occidental[1] between December 18, 1981, and June 22, 2001.  Complaint ¶¶ 5-15. Plaintiffs' allege that they own universal life insurance policies that are unlike term and whole life insurance policies traditionally sold by insurance companies.  Id. ¶¶ 23-24. Plaintiffs allege that numerous universal life insurance policies administered by

---

[1] Transamerica Occidental was a corporation organized under the laws of California.  On or about October 1, 2008, Transamerica Occidental merged with Transamerica, a corporation organized under the laws of Iowa.  Plaintiffs allege that Transamerica is Transamerica Occidental's successor-in-interest.  Accordingly, for purposes of this order, the Court refers to both corporations as Transamerica.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Transamerica share "standardized, materially uniform language" with respect to the policy terms at issue here.  Id. ¶ 27.  The policies have different names, such as "TransMax" or "TransUltra," but, as explained below, were all subject to significant MDR increases commencing in 2015.  Id. ¶ 27 n. 4.

Under plaintiffs' universal life insurance policies, premiums are deposited into an account for each policy.  Each month, Transamerica withdraws a monthly deduction from each account and deposits a separate amount of interest.  Interest accrues on the account's balance based upon minimum rates and average annual rates guaranteed by each policy. Universal life insurance policies allow policyholders to alter the amount and frequency of their premium payments as long as their account contains sufficient value to cover the monthly deduction.  Id. ¶ 24.

The monthly deduction amount is determined by adding three numbers: a policy fee; a deduction for any policy riders; and a number derived from the MDR set by Transamerica.  The latter component of the monthly deduction is determined by subtracting the present account value from the policy's death benefit and multiplying the difference by one thousandth of the MDR.  Id. Ex. A at 13.  Some policies provide that:

> [Transamerica] will determine the [MDR] for each policy year at the beginning of that year.  [Transamerica] will use the insured's age as of that policy year.

> A table of Annualized Guaranteed Monthly Deduction Rates is in the policy data.  [Transamerica] may use rates lower than these annualized guaranteed monthly deduction rates.  [Transamerica] will never use higher rates.

> A Table of Maximum Guaranteed Annualized Monthly Expense Charges is on page 3.  We may use expense charges lower than these maximum guaranteed annualized monthly expense charges.  We will never use higher expense charges.

Dkt 111-1, Hames Decl. Ex. 1 at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Not every policy uses the same language to describe the MDR. For instance, Zacharia's policy equates the guaranteed monthly deduction with the "Cost of Insurance." Compl. Ex. A at 12. Nelson's policy language does the same. Id. at 177 ("The guaranteed monthly deduction for nonsmokers is the cost of insurance"). Plaintiffs allege that the cost of insurance ("COI") portion is based upon projections of life span established by the 1980 CSO Mortality Tables. Id. ¶ 31. One of Lyon's policies provides that:

> [t]he monthly deduction rate for the base policy will depend on the face amount of the policy; the Insured's sex; the Insured's smoker or nonsmoker status; the Insured's class of risk as of the Policy Date; the number of years that the policy has been in force; and the Insured's issue age.

Id. at 70.

Plaintiffs allege that the policies do not expressly permit Transamerica to set the MDR "in whatever amount or by whatever method it determines." Id. ¶ 33. According to plaintiffs, a reasonable policyholder would construe the standardized policy language to require that the MDR only change pursuant to changes in the underlying mortality rates. Id. ¶ 34. Alternatively, plaintiffs allege that the policies are "at a minimum ambiguous" regarding whether the MDR may be altered for any reason other than pricing mortality rates. Id. ¶ 36.

Plaintiffs allege that Transamerica is not permitted to "set or increase [MDRs] to recoup past losses" based on changes in interest rates, lapse rates, diminished returns on Transamerica's overall portfolio, or other experience factors. Id. Plaintiffs further allege that Transamerica is not permitted to set the MDR "to negate or offset Transamerica's obligation to pay credited interest to the Policies at the minimum guaranteed rates." Id. ¶ 33.

Ultimately, if a monthly deduction exceeds an account's value, the policy may lapse. Plaintiffs allege that small changes in the MDR can produce dramatic increases in the monthly deduction, requiring higher premiums to maintain a positive balance in the policy's account to avoid a lapse of the policy. Id. ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### B.   MDR Increases in 2015

On June 8, 2015, Transamerica announced that plaintiffs' MDRs would increase by "as much as 100%," and that monthly deductions would increase accordingly. Id. ¶ 37. Plaintiffs allege that the ensuing MDR increases resulted in "an astronomical increase in the premiums necessary to maintain coverage under the Policies." Id. ¶ 41.

Plaintiffs allege that Transamerica dramatically increased the applicable MDRs in 2015 in order to induce "shock lapses" and avoid paying out death benefits to plaintiffs. Id. ¶ 43. Transamerica allegedly depleted its capital reserves and thereby increased the risks it faced if plaintiffs' policies resulted in a loss. Id. ¶¶ 48-49. Meanwhile, low interest rates undermined the profitability of plaintiffs' policies because plaintiffs' policies guaranteed much higher interest rate accruals on account balances. Id. ¶ 55. Accordingly, plaintiffs allege that Transamerica has increased MDRs to avoid its obligation to meet the high interest rates it guaranteed under plaintiffs' policies and to recoup past losses. Id. ¶ 44.

Most policyholders affected by the MDR increases are elderly. Id. ¶ 76. Plaintiffs allege that Transamerica hopes to induce lapses among elderly policyholders who have dutifully paid premiums for decades. Id. ¶¶ 72, 74.

The gravamen of the Complaint is that the MDR increase Transamerica began in mid-2015 is improper, unfair, and a breach of Transamerica's obligations to plaintiffs.

### C.   The *Natal* Settlement

Defendant contends that a prior class action settlement bars all of plaintiffs' claims based on policies issued before June 30, 1996.

On July 28, 1997, the Superior Court of California for the County of San Diego approved a class action settlement in Natal v. Transamerica Occidental Life Ins. Co., San Diego Superior Court Case No. 694829. Defendant's Request for Judicial Notice, Ex. 3 ("*Natal* Judgment"). The *Natal* Judgment resolved then existing claims by a nationwide class of policyholders who owned an interest in universal life insurance policies issued by Transamerica between January 1, 1981, and June 30, 1996. Id. at 2:19-23. As part of their settlement, class members in Natal agreed to release Transamerica from certain claims. See Id. at 75-78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|----------|--------------------------|------|------------------|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Specifically, the settlement provides that members of the class:

> shall not now or hereafter institute . . . against [Transamerica] . . . any and all causes of action . . . that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against [Transamerica] . . . in [1] the Action or . . . [2] related to, in whole or in part, the Released Transactions.

Id. at 76, 8.B.1.  The release defined "Released Transactions" as:

> the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement . . . [of] the Policies . . . . [including] without limitation, the matters described in Sections [8.]B. l(i) through [8.]B. l(iv).

Id. at 76, 8.A.3.  In pertinent part, Sections 8.B.1(i) through 8.B.1(iv) of the release, provide that the class released claims relating to:

> (i) any or all of the acts, omissions, facts, matters, transactions or occurrences that have been, could have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Action;

> (ii) any or all of the acts, omissions, . . . or representations allegedly made in connection with or . . . relating to the Released Transactions, including . . . matters . . . relating to:

> > . . . (d) the interest rate credited or to be credited to premiums . . . and the deductions (including all expense and other deductions) charged or to be charged against the Policy or Policies;

> > . . . (o) the Defendants' . . . cost of insurance and administrative charge policies and practices; policy or premium charges and monthly deductions; . . . or any other matters relating to . . . monthly deductions or cost of insurance and administrative charges; . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Id. at 76-78, 8.B.1(i)-(ii).  Finally, the release provides that:

> Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein.  Nevertheless, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally, and forever to settle and release all such matters . . . .

Id. at 78-79, 8.B.4.

## III.    LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Polic Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

plausibly suggestive of a claim entitling the plaintiff to relief." (citing Twombly and Iqbal)). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

### A.   The *Natal* Settlement

Defendant contends that all of plaintiffs' claims arising out of insurance policies issued before June 30, 1996, are barred by the *Natal* Judgment either because said claims were expressly released or pursuant to the doctrine of res judicata.

#### 1.   The Scope of the *Natal* Settlement Release

Defendant argues that the *Natal* Settlement release bars all future claims based upon changes to the MDR, whether those changes occurred prior to the *Natal* Settlement or, as in this case, nearly 20 years later.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken.' " Marrese v. American Academy of Orthopaedic Surg., 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (quoting 28 U.S.C. § 1738). To determine the preclusive effect of a state court judgment, federal courts must "refer to the preclusive law of the State in which judgment was rendered." Id; see also Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

The *Natal* Settlement is governed by California law. California's rules of contract interpretation preclude defendant's interpretation of the *Natal* release. "In California, interpretation of a settlement release is governed by contract principles." Howard v. Am. Online Inc., 208 F.3d 741, 747 (9th Cir. 2000) (citing General Motors Corp. v. Superior Court, 12 Cal.App.4th 435, 15 Cal.Rptr.2d 622, 625 (Cal. Ct. App.1993)). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. When a contract's meaning is in dispute, the Court must first determine whether the language is "reasonably susceptible" to the interpretation urged. S. Cal. Edison Co. v. Superior Court, 37 Cal. App. 4th 839, 847, 44 Cal. Rptr. 2d 227, 232 (1995), as modified on denial of reh'g (Sept. 7, 1995).

The *Natal* release is not reasonably susceptible to the interpretation urged by defendant.

If defendant's interpretation of the *Natal* Judgment were correct, it would release claims based on virtually any subsequent actions by defendant so long as those actions could be construed to fall within the *Natal* Judgment's "Released Transactions" definition. For instance, plaintiffs would have released claims for, as they assert here, willful elder abuse occurring any time in the future. Plaintiffs would be left, under defendant's reading of the settlement, without recourse for any number of intentional, unlawful acts so long as they could be construed as "related to" plaintiffs' policies. Furthermore, defendant's reading of the release would, for all practical purposes, void

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

defendant's continuing obligation to honor its insurance policies' express terms by barring any future actions relating to the MDR.[2]  Accordingly, defendant's interpretation would render it indefinite and potentially unlawful.[3]  See Cal. Civ. Code § 1643 (interpretation must "make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"); see also Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own . . . willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law").

Furthermore, even if the *Natal* release were intended to encompass claims based on defendant's future conduct, such a release would be unenforceable.  Numerous courts have accepted the general proposition that a class action settlement's release is unenforceable against claims predicated on the defendant's post-settlement conduct.  For example, in Williams v. Boeing Co., 517 F.3d 1120 (9th Cir. 2008), the Ninth Circuit observed that a class action settlement release is only "*enforceable* as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, *but depending upon the same set of facts*." Williams, 517 F.3d at 1134 (citing Newberg on Class Actions § 12:15); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could

---

[2] Defendant argues that plaintiffs' claims fall "squarely" within the "Released Transactions" language of the *Natal* Release while disclaiming "carte blanche" authority to breach their policies' terms.  Reply at 4-5.  However, if the parties intended to release claims based on Transamerica's future conduct, then there is nothing in the definition of "Released Transactions" that would preclude willful and wrongful breach of plaintiffs' insurance contracts after decades of premium contributions.

[3] Although the release contains language releasing claims that "may be or could be alleged or asserted now *or in the future*," Ex. 3 at 76, 8.B.1 (emphasis added), the Court construes this language to refer to claims predicated upon injuries or *past* conduct that are yet to be discovered.  The language is not reasonably susceptible to an interpretation which would permit willful breach of plaintiffs' policies long after the *Natal* settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct").

Although neither party relies upon a California state court decision addressing the "identical factual predicate" test, federal courts have applied the test to determine the scope of settlement releases under California law.  For instance, in In re Conseco Life Ins. Co. Cost of Ins. Litig., 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005), the plaintiffs filed an action based on an allegedly improper increase in their insurance policies' cost of insurance charge.  Id. at *1.  The increase occurred in 2003.  Id.  The defendant sought the protection of a broadly worded release issued by a California state court in 2000 (the Dupell Release).  Id. at *6.  The Dupell Release shared many of the basic characteristics of the Natal Release at issue here.  It released "any and all causes of action . . . related to . . . Released Transactions," and defined Released Transactions to include "among many other things, 'the marketing, solicitation, . . . [and] charges for insurance' of any policy."  Id.  It also included a waiver of California Civil Code section 1542.[4]  Id.  The district court concluded, relying in part upon Wal-Mart Stores, supra, that:

> Plaintiffs' breach of contract claims here are not based on the identical factual predicate as the Dupell claims and involve actions by Defendants that first occurred years after the Dupell settlement and that therefore could not have been asserted in the Dupell litigation.

Id. at *7.

Although the Conseco court did not appear to rely on any state court authority for the application of the identical factual predicate test to a California court settlement, defendant cites no authority suggesting California has rejected this widely accepted

---

[4] Cal. Civ. Code § 1542 provides that, "a general release does not extend to claims which a creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|----------|--------------------------|------|------------------|

| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY |
|-------|-------------------------------------------------------------|

principle.[5]  Nor does the alleged MDR increase in 2015 appear to be premised on an "identical factual predicate" as the *Natal* action settled in 1997.  Accordingly, the release is unenforceable against plaintiffs' claims here.[6]

_____

[5] Defendant relies upon Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287 (9th Cir.1992) for its argument that "the Ninth Circuit has held that [the identical factual predicate test] is the incorrect standard to apply to state court settlements."  However, Class Plaintiffs did not address whether claims based upon a separate factual predicate could be barred by a settlement release issued under California law.  Class Plaintiffs addressed the question of whether or not a federal settlement could bar state court claims over which the federal court lacked subject matter jurisdiction.  Id. at 1287.  The claims at issue were governed by the laws of the State of Washington, not California, and the court was silent as to whether the identical factual predicate test applied under either state's laws.

[6] In support of defendant's argument that the Natal release should be read broadly, counsel for the defendant directed the Court, during oral argument, to Tropp v. W.-S. Life Ins. Co., 2003 WL 21688245 (N.D. Ill. July 18, 2003), aff'd, 381 F.3d 591 (7th Cir. 2004).  In Tropp, the district court found, and the Seventh Circuit Court of Appeals affirmed, that a plaintiff's fraud claim against a life insurance company was within the scope of a broadly worded class action settlement's release.  Id. at *12.  However, Tropp's reasoning has little application here because of the timing of the claim and release in that case.  In Tropp, the plaintiff brought a claim based upon improper life insurance premium charges between 1986 and 1995.  Id. at * 2; *9.  The court concluded that the plaintiff's claim was precluded by a settlement release which took effect in 2001.  Id. at *3.  In this case, in contrast, plaintiffs' claims arise out of actions by Transamerica that are alleged to have occurred over a decade after the Natal release upon which defendant relies.  The parties do not appear to dispute that the Natal release covered claims based upon defendant's acts predating the Natal release, but that does not resolve the release's application to future claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|----------|--------------------------|------|------------------|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Finally, even if the parties could and had attempted to release claims predicated on defendant's willful conduct in the future, such a release would be unenforceable as against public policy.

Accordingly, plaintiffs' claims here are not barred by the *Natal* Settlement's release.

### 2.    Res Judicata

Independent of the terms of the *Natal* Release, defendant next contends that plaintiffs' claims are barred by the doctrine of res judicata.

Under California law, claim preclusion provides that a final judgment on the merits bars further claims by the parties or their privies based on the same "cause of action." Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n, 60 Cal.App.4th 1053,1065, 71 Cal.Rptr.2d 77 (1998).  To be barred by res judicata, "(1) the second lawsuit must involve the same 'cause of action' as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit." San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009).

The parties here do not appear to dispute that the second and third requirements are satisfied.[7]  Thus the applicability of res judicata turns upon whether or not this action involves that same "cause of action" as *Natal*.

In the context of evaluating res judicata, "the term 'cause of action' is defined in terms of a primary right and a breach of the corresponding duty; the primary right and the breach together constitute the cause of action." Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 792, 230 P.3d 342, 344 (2010).  All three of these components, namely, (1) the primary right, (2) the corresponding duty it imposes on a defendant, and (3) the acts breaching that right, constitute a cause of action.  Boeken, 48 Cal. 4th at 798 (citing

---

[7] Not all the named plaintiffs' policies were issued during the *Natal* class period. However, this distinction is of no consequence because, as discussed below, this action is not barred by res judicata.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

McKee v. Dodd, 152 Cal. 637, 641 (1908)).  Although two acts by a defendant may
violate a single primary right and therefore give rise to only one cause of action, the acts
must cause the same injury.  Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins.
Co., 5 Cal. 4th 854, 860, 855 P.2d 1263, 1266 (1993) (attorney's repeated acts of
malpractice violated same "primary right" because a "single injury" occurred, namely
plaintiff's inability to collect a single debt for which the attorney was hired).  Where the
parties in a continuing relationship, a previous action cannot immunize a defendant from
liability for continuous or repeated misconduct.  Nakash v. Superior Court, 196 Cal. App.
3d 59, 69, 241 Cal. Rptr. 578, 584 (Ct. App. 1987).  "Under well settled law, the doctrine
of res judicata does not apply where there are changed conditions and new facts which
were not in existence at the time of the prior judgment, and upon which such judgment
was based."  Neil Norman, Ltd. v. William Kasper & Co., 149 Cal. App. 3d 942, 947,
197 Cal. Rptr. 198, 202 (Ct. App. 1983) (quoting Starr v. City and County of San
Francisco, 72 Cal.App.3d 164, 178–179 (1977)).  To determine whether two actions seek
to vindicate the same primary right, courts examine the allegations in each.  See e.g.
McNeary-Calloway v. JP Morgan Chase Bank, N.A., 863 F. Supp. 2d 928, 951 (N.D.
Cal. 2012) (comparing general factual predicate alleged, while declining to credit
similarities between two individual paragraphs of the complaint).

It appears that the "primary right" at issue in *Natal* was policyholders' right to be
free from a fraudulent marketing and sales scheme.  The *Natal* plaintiffs alleged a
"vanishing premium scheme" focused on Transamerica's allegedly false promises to
them about plaintiffs' policies when they *purchased* them and Transamerica's alleged
efforts to conceal from policyholders that their initial premium payments would be
inadequate to continue to accrue value or ensure a death benefit in the future.

In contrast, the plaintiffs in this action seek to vindicate their right not to be subject
to an allegedly improper and unlawful MDR increase in 2015.  Plaintiffs allege that a
specific MDR increase breached their policy contracts, was unfair, and entitles them to
several remedies.  The alleged factual predicate for Transamerica's 2015 MDR increase
is different from the primary right at issue in *Natal*.  Plaintiffs allege here that the 2015
MDR increase occurred because of an improper attempt to recoup losses and mitigate
Transamerica's under-capitalization that occurred in the late 2000's.  Compl. ¶ 43.
Plaintiffs seek to be free from improper "shock lapses," and an allegedly improper MDR
increase.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS (AJWx) | | Date | November 8, 2016 |
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

The differences between each cause of action's claim for breach of contract is illustrative of the significant differences between the *Natal* action and this action. Plaintiffs here allege a breach of contract claim, predicated upon an alleged breach of their policies' MDR rules when Transamerica increased the MDR in 2015. In *Natal*, the plaintiffs alleged a breach of contract claim predicated upon Transamerica's alleged promise "that the single prepayment of premiums at the time of purchase of the Policies, or the payment of out-of-pocket premiums during only the initial years of the Policies, would generate sufficient values to fund the cost of the Policies for the life of the insured." Natal Complaint ¶ 148. The latter allegations sought to vindicate plaintiffs' right not to be misled about the investment prospects of their initial premium payments. Plaintiffs here seek to vindicate their alleged rights not to pay MDR increases in 2015 so that Transamerica may recoup losses.

Although certain allegations in the *Natal* action refer to a monthly deduction increase in 1993, these allegations do not mean the action sought to vindicate the same primary right as plaintiffs' claim here. See McNeary-Calloway, 863 F. Supp. 2d at 951 n. 5. Furthermore, the 1993 monthly deduction increase alleged in the *Natal* complaint is used as an example of Transamerica's alleged attempts to conceal its vanishing premium scheme:

> in order to continue to deceive and conceal their fraudulent vanishing premium sales scheme and continuing breaches of fiduciary duty, Transamerica Life Companies misrepresented to plaintiffs and Class members the purported "impact" the Deferred Acquisitions Cost tax ("DAC tax") had on the vanishing premium Policies. Transamerica Life Companies claimed that the primary reason the vanishing premium Policies failed to perform as illustrated was the DAC tax. In reality, it was not the DAC tax by itself that caused the Policies not to perform, but Transamerica Life Companies' improper charging of plaintiffs' Policies with additional costs and other fees unrelated to the DAC tax. In fact, Transamerica Life Companies, in order to conceal and make up for their investment losses, poor operating results and inadequate management of its expenses and costs, unilaterally increased monthly deductions against the Policies in October 1993.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

*Natal* Complaint ¶ 58 (in a section of the complaint entitled "Defendants' False And Misleading Policy Illustrations And Uniform Sales Presentations"). Accordingly, the *Natal* Complaint's passing references to a monthly deduction increase in 1993 do not preclude plaintiffs from bringing a future action predicated on an MDR change nearly two decades later. Nor would even an analogous action regarding alleged breach of contract in 1993 necessarily preclude future contract breach claims based on future MDR increases. See Nakash, 196 Cal. App. 3d at 69 ("If res judicata may be used to bar future inquiry into [future] misconduct, no party engaged in a business and fiduciary relationship in this state would attempt settlement negotiations concerning business differences because of the risk of giving too much future leverage to the other side of the dispute").

Accordingly, the *Natal* action did not resolve the plaintiffs' cause of action with respect to the primary right at issue in this action. Their claims are not barred by res judicata.

**B.   Breach of Contract**

To state a claim for breach of contract under California law, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach, and resulting damage. Vaccarino v. MidlandNat. Life Ins., Co., 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (citing Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008)). Plaintiffs allege two separate theories pursuant to which defendant breached the terms of their policies. First, plaintiffs allege that defendant breached its policy contracts by increasing the MDR to avoid its obligation to pay credited interest. Second, plaintiffs allege that defendant increased MDRs in order to recoup losses. The Court addresses each in-turn.

**1.     MDR Increases to Avoid Credited Interest Obligations**

The policy language of all the policies at issue here unambiguously gives Transamerica *some* discretion in determining the MDR. The policies provide that each policy is subject to a maximum MDR, but that Transamerica, "may use [monthly deduction] rates lower than these guaranteed monthly deduction rates." Compl. Ex. A at 13. The scope of Transamerica's discretion is at the core of this action's merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|----------|--------------------------|------|------------------|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiff alleges that:

> A reasonable Policyholder would construe the standardized Policy language to mean that the Monthly Deduction Rate, which is premised on the purported COI and the 1980 CSO Mortality Tables, would not change except for a verifiable, material adverse change in the underlying mortality rates used to price the Policies. As reflected in every subsequent version of the CSO Mortality Tables, mortality rates have only improved in the years since the Policies were issued from 1987 and 1998.

Compl. ¶ 34.  All of the policies at issue here connect the MDR to *at least* the policyholder's age and whether or not they are a smoker.  Furthermore, the unambiguous terms of some policies equate the MDR with the "cost of insurance" ("COI").  Plaintiffs argue that because it is linked to the COI, any MDR increase based upon the cost of defendant's obligation to pay guaranteed interest on policy accounts is a breach of the plaintiffs' policy terms.  Plaintiffs argue that the phrase COI would be reasonably interpreted by policyholders as limited in scope, particularly to mortality-related costs.  Defendant argues that Transamerica's obligation to pay interest on each account "is a common variable in the cost of insurance, along with other factors," Mot. at 16, and that the policies give defendant discretion to set the MDR anywhere below the guaranteed maximum

Nowhere is the MDR expressly linked to defendant's financial prospects.  Furthermore, the policies expressly refer to an "expense portion" of each MDR applicable to smokers and a policy fee, both of which are charged separately from the COI or MDR.  See Dean v. United of Omaha Life Ins., 2007 WL 7079558, at *4 (C.D. Cal. Aug. 27, 2007) (finding "cost of insurance" to be an ambiguous phrase where policies separately listed several expenses).  Finally, the policies discuss guaranteed interest accrual and monthly deductions in separate sections.  Accordingly, a plausible reading of the policies is that the amount of money necessarily accruing in interest is independent of Transamerica's monthly deductions.

Most of the policies at issue here do not expressly describe how the MDR will be determined.  However, defendant points out that at least one policy at issue here contains

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|----------|--------------------------|------|-------------------|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

a provision expressly permitting Transamerica to consider "mortality; expenses; *interest*; persistency; and any applicable federal state and local taxes," when it sets the MDR.  See Lyons Policy No. 60079202, Compl. Ex. 1 at 71 (emphasis added).  To the extent plaintiff interprets these contracts to preclude consideration of interest costs in setting the MDR, the Court concludes that policies with the above language are not reasonably susceptible to plaintiffs' interpretation.  Accordingly, insofar as plaintiffs' claims rely upon policies with the foregoing language, plaintiffs' have failed to state a claim for liability based upon Transamerica's alleged consideration its interest obligations in setting an MDR.  Any such claims are **DISMISSED** without prejudice.

However, the remaining policies at issue here appear to be susceptible to plaintiffs' interpretation.  At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is *'reasonably susceptible'* to the meaning ascribed to it in the complaint." Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted).  "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Services, Inc., 231 Cal. App. 3d 232, 239 (1991)).  Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by the language of the policy. See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ("Croskey") ¶ 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerine Oil Co., Inc. v. Supt. Ct., 37 Cal. 4th 377, 390 (2005)).

Whether or not Transamerica is permitted to consider other factors, certain provisions in the policy can be read to preclude consideration of the policy's own guaranteed interest.  For instance, if certain interest rate accruals are "guaranteed," a plausible reading of the policies is that defendants may not directly offset them by increasing the MDR based on its interest obligations.

In light of the foregoing, and accepting plaintiffs' allegations as true, the Court concludes that the policies' language is reasonably susceptible to plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|

| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY |
|---|---|

interpretation, namely, the policies could reasonably be read as requiring that MDR changes be connected to mortality costs and risk categories among policyholders.

The Court further concludes that plaintiffs' state a claim for breach of contract. Specifically, plaintiffs allege that defendant set plaintiffs' MDRs at a substantially higher rate to mitigate its interest obligations to policyholders rather than based on permissible COI considerations. The alleged scale of MDR increases ("as much as 100%", Compl. ¶ 37), the timing of the MDR increase (one business day after its risk-based capital allegedly became reportable by its parent company in Europe, Id. ¶ 67), and the alleged unprofitability of plaintiffs' policies, are sufficient to plausibly allege that Transamerica altered the MDR in 2015 with an impermissible motive to mitigate its guaranteed interest obligations.

Accordingly, with the exception of those already dismissed above, plaintiffs have stated a claim for breach of contract based upon Transamerica's alleged attempt to offset its guaranteed interest obligations. In light of the foregoing, defendant's motion to dismiss plaintiffs' breach of contract claim is **DENIED**.[8]

---

[8] During oral argument, counsel for the defendant reiterated its argument that the policies at issue here unambiguously permit Transamerica to set the MDR based upon any factors it chooses so long as it does not do so to recoup losses. In support of its argument, Transamerica cites Coffman v. Pruco Life Ins. Co., 2011 WL 4550152 (D.N.J. Sept. 29, 2011). Coffman has similar underlying allegations. For instance, in Coffman the plaintiff challenged an insurer's monthly deduction by arguing that the insurer improperly charged for "expenses, taxes, and/or profits," rather than "only" considering mortality in setting its deduction rates. Id. at *1. The court in Coffman concluded that, under Missouri's contract interpretation laws, the insurer was permitted to consider things other than mortality in setting its deduction rates despite policy language stating that the monthly cost was a "monthly charge for the expected cost of mortality." Id. at *3-4. However, Coffman is not binding precedent here, nor does it discuss the interpretive issues presented in plaintiffs' contracts here. The court in Coffman did not evaluate whether the underlying deduction could be increased for *any* reason, but rather focused on whether the insurer was limited to *only* mortality changes. Specifically, Coffman did not discuss whether deductions could be used to offset "guaranteed" interest, nor is it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 2.     MDR Increases to Recoup Past Losses

Plaintiff also alleges that the policies expressly preclude defendant from raising the MDR to recoup past losses and that defendant has breached their policies by doing so. Defendant appears to acknowledge that, if it did raise MDRs to recoup past losses, it would constitute breach of contract. See e.g. Reply at 22 (an MDR increase is authorized "as long as it does not exceed the guaranteed maximum MDR and does not recoup past losses"). However, defendant argues that plaintiffs' claim is insufficiently plausible.

The Court concludes that plaintiffs' allege a plausible claim that defendant breached its policies by attempting to recoup past losses. Plaintiffs allege that the policies at issue here accrue interest at a minimum annual rate of 4%. Compl. ¶ 28. Furthermore, plaintiffs allege that, as prevailing interest rates have fallen, Transamerica has suffered substantial losses on plaintiffs' policies because of their high guaranteed interest rate. Id. ¶ 50. In support of their claim, plaintiffs request that the Court take judicial notice of defendant's annual statements for the last four years, which show net operating losses of hundreds of millions of dollars on allegedly "interest sensitive insurance products." Friedman Decl. ¶ 7. Finally, plaintiffs allege a temporal connection between this MDR increase and Transamerica's changing relationship with its parent company.

Defendant responds by arguing that its MDR changes were to mitigate future losses from persistently low rates rather than to recoup past losses. However, contrary to defendants' assertions, plaintiffs' allegations "nudge [plaintiffs'] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Ultimately, the Court concludes that this factual dispute cannot be resolved on consideration of a motion to dismiss. Accordingly, insofar as plaintiffs' allege that Transamerica breached its insurance contracts with plaintiffs by raising the MDR to recoup past losses, defendant's motion to dismiss is **DENIED**.

---

clear that the policies at issue in Coffman included analogous, separate "expense" charges like those at issue here. Finally, in contrast to Coffman, both parties here appear to agree that Transamerica may not increase the MDR to recoup losses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### C.   Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' second claim for relief asserts that defendant violated the implied covenant of good faith and fair dealing by exercising its discretion over MDR changes in bad faith.  Defendant argues that this claim is duplicative of plaintiffs' breach of contract claim and that the implied covenant of good faith and fair dealing may not prohibit a party from doing that which a contract expressly permits.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371-72 (1992).  "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." McNeary–Calloway v. JP Morgan Chase Bank, N.A., 863 F.Supp.2d 928, 956 (N.D.Cal.2012) (quoting Perdue v. Crocker Nat'l Bank, 38 Cal.3d 913, 923, 216 Cal.Rptr. 345, 702 P.2d 503 (1985)). Nonetheless, the covenant of good faith may not "prohibit a party from doing that which is expressly permitted by an agreement." Carma, 2 Cal. 4th at 374.  "In short, [the covenant of good faith and fair dealing] is an implied-in-law term of the contract. Therefore, its breach will always result in a breach of the contract, although a breach of a consensual . . . contract term will not necessarily constitute a breach of the covenant." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393–94, 272 Cal. Rptr. 387, 399 (Ct. App. 1990), as modified on denial of reh'g (Oct. 31, 2001). "California law requires that a claim for breach of the implied covenant of good faith and fair dealing 'go beyond the statement of a mere contract breach' and not 'rel[y] on the same alleged acts [or] simply seek the same damages or other relief already claimed in a companion contract cause of action.' " Env't Furniture, Inc. v. Bina, 2010 WL 5060381, at *3 (C.D.Cal. Dec. 6, 2010) (quoting Careau & Co. v. Sec. Pac., 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990)).  To allege a separate claim for breach of the covenant of good faith and fair dealing, plaintiffs must allege bad faith conduct, "which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Careau, 222 Cal. App. 3d at 1395.

Plaintiffs allege more than a mere breach of contract.  Plaintiffs allege that defendant used its discretion over MDRs in bad faith to wrongfully induce forfeiture of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

death benefits among elderly policyholders. Although the two claims share many of the same predicate allegations, plaintiffs' allege that Transamerica used its, allegedly limited, discretion over the MDR in bad faith rather than merely in violation of the contract's express terms. Accordingly, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is not duplicative.

Nor do plaintiffs allege that defendant breached the covenant of good faith and fair dealing by doing that which the policies expressly permitted defendant to do.

In support of their argument, defendants rely on Baymiller v. Guarantee Mutual Life Company, 2000 WL 1026565 (C.D. Cal. May 3, 2000). In Baymiller, policyholders brought a similar claim against their insurer. Id. at *3. However, this case is distinguishable from Baymiller because the policies at issue in each case involve different express terms. In Baymiller, the insurance policies at issue *expressly* permitted the insurer to set rates "in the amount and by the method determined by" the insurer. Id. at *1. The Baymiller court concluded that the policies expressly left rate setting "in Defendants' total discretion." Id. at *2. Ultimately, because the insurer was expressly permitted to determine its own method of setting the rates at issue and because the express terms of the contract were otherwise enforceable rather than merely illusory, the insurer had no implied duty to set rates in compliance with the covenant of good faith and fair dealing. Id. at *3.

In this case, Transamerica is not *expressly* given unfettered discretion to set the MDR anywhere below the guaranteed maximum rate. In contrast to Baymiller, the parties here reasonably dispute the scope of defendant's discretion to set the MDR. Although the policies provide that Transamerica "may" set a lower rate than the maximum, that does not resolve whether MDR changes are left to Transamerica' unfettered discretion. If, as in Baymiller, the contracts' express terms gave Transamerica unfettered discretion to set the MDR, plaintiffs breach of contract claim would, as in Baymiller, also fail because it is predicated on alleged consideration of improper factors in setting the MDR. In Baymiller, the express contract language stated that the insurer could consider any factors and set any rate below the maximum. In contrast, here, it may be implied that Transamerica is required to use its discretion in good-faith without running afoul of any express terms in the policy language.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

In light of the foregoing, defendant's motion to dismiss plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing is **DENIED**.

**D.    Tortious Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiffs have also asserted a claim for breach of the implied covenant of good faith and fair dealing sounding in tort. A breach of the implied covenant of good faith in an insurance contract can give rise to an action in either contract or tort. See Archdale v. American Intern. Specialty Lines Ins. Co, 154 Cal. Rptr. 3d 632, 648 (2007) (remedy for breach of the implied covenant "sounds in both contract and tort."). However, to bring an action in tort a plaintiff must allege that benefits due under the policy have been improperly withheld. See Benavides v. State Farm Gen. Ins. Co., 136 Cal. App. 4th 1241, 1250 (2006) ("[T]he essence of the tort of the implied covenant...is focused on the prompt payment of benefits under the insurance policy, there is no cause of action...when no benefits are due").

Plaintiffs adequately allege a claim for tortious breach of the covenant of good faith and fair dealing. As discussed above, plaintiffs adequately allege that defendant exercised its discretion over MDRs in violation of the covenant of good faith and fair dealing. Furthermore, plaintiffs allege that an improper MDR increase deprives them of two benefits under their policies. First, plaintiffs allege that the accumulated value of their accounts constitutes a benefit. According to plaintiffs, an improper MDR increase deprives them of that benefit because monthly deductions are drawn directly from the accumulated value of their accounts. Second, plaintiffs allege that a second benefit under their accounts is the monthly accrual of guarantee interest based upon the accumulated value in their accounts. According to plaintiffs, monthly deductions improperly deny them this benefit because they cannot earn interest upon the deducted amounts.

Accordingly, accepting plaintiffs' allegations as true, plaintiffs have stated a plausible claim for tortious breach of the covenant of good faith and fair dealing.

**E.    Unfair Competition Law**

To state a claim for unfair competition pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq., a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." <u>Boschma v. Home Loan Ctr., Inc.</u>, 198 Cal. App. 4th 230, 252 (Cal. Ct. App. 2011) (internal quotation marks and citation omitted). Defendant argues that plaintiffs have failed to state a claim for relief under any prong of the UCL. Plaintiffs contend that they adequately allege violations of the "unlawful" prong and the "unfair" prong.

Plaintiffs argue that they have stated a claim under the "unlawful" prong of the UCL predicated upon their tortious breach of the covenant of good faith and fair dealing. Defendant argues that a claim under the UCL's "unlawful" prong cannot be predicated on a common law claim. Defendant relies upon, <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035 (9th Cir. 2010). In <u>Shroyer</u>, the Ninth Circuit considered whether a claim under the "unlawful" prong could be predicated solely upon a breach of contract claim. <u>Id.</u> at 1044. The court concluded that, "[b]ecause Shroyer does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200." <u>Id.</u> Accordingly, insofar as plaintiffs' allege an "unlawful" act in violation of the UCL, it may not be predicated upon their tortious breach of the covenant of good faith and fair dealing claim.[9] Plaintiffs have not alleged argued any other basis for a UCL claim under the "unlawful" prong.

However, plaintiffs have stated a claim under the UCL's "unfair" prong. <u>Shroyer</u> does not limit the scope of the "unfair" prong. <u>Brecher v. Citigroup Glob. Markets, Inc.</u>,

---

[9] During oral argument, counsel for plaintiffs argued that plaintiffs have adequately alleged a UCL violation under the UCL's "unlawful" prong. In support of his argument, counsel presented the Court with numerous cases supporting their argument that a systematic breach of certain contracts may state a claim for relief pursuant to the UCL. As discussed herein, the Court concludes that plaintiffs have stated a claim under the UCL's "unfair" prong, but not the "unlawful" prong. Doing so is consistent with the cases cited by plaintiffs' counsel, which proceeded under the UCL's "unfair" prong. <u>See Arce v. Kaiser Foundation Health Plan, Inc.</u>, 181 Cal.App 4th 471, 489-90 (2010) ("with respect to the unfairness prong"); <u>Am. Marine Corp. v. Blue Shield of California</u>, 2011 WL 1399244, at *5 (N.D. Cal. Apr. 13, 2011) (citing <u>Arce</u>); <u>Smith v. Wells Fargo Bank, N.A.</u>, 135 Cal. App. 4th 1463, 1483 (Jan. 26, 2006) ("can constitute an unfair business practice").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|----------|--------------------------|------|------------------|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

2011 WL 3475299, at *7 (S.D. Cal. Aug. 8, 2011).  To state a claim under the "unfair" prong, a plaintiff must prove that a "business practice ... violates established public policy" or is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." Eisen v. Porsche Cars North America, Inc., 2012 WL 841019, *5 (C.D. Cal. Feb. 22, 2012) (citing McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006). "With respect to the unfairness . . . appellate courts have recognized that 'a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.'" Arce v. Kaiser Found. Health Plan, Inc., 181 Cal. App. 4th 471, 489–90 (2010).

Here, plaintiffs allege that defendants violated the "unfair" prong by systematically and excessively raising policy rates in an attempt to induce forfeiture of elderly policyholders' policy benefits or compel payment of higher premiums.  As already discussed, the Court concludes that these allegations state a claim predicated upon bad faith.  At the motion to dismiss stage, these are sufficient allegations are sufficient to state a plausible claim.  Accordingly, defendant's motion to dismiss plaintiffs' UCL claim is **DENIED**.[10]

**G.    Declaratory Judgment**

Plaintiffs seek a declaration as to the parties' respective rights under the Policies at issue in this action.  Defendant argues that plaintiffs' claim for declaratory relief should be dismissed as duplicative of plaintiffs' other claims.

"The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. Proc. 57.  Moreover,

---

[10] Plaintiffs' fourth claim for relief seeks injunctive relief predicated upon plaintiffs' UCL claim.  Defendant does not argue any reason why this claim should be dismissed other than those which it contends entitle it to dismissal of plaintiffs' UCL claim.  Because the court denies defendant's motion to dismiss plaintiffs' UCL claim, defendant's motion is also DENIED with respect to plaintiffs' fourth claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

declaratory relief is proper, "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." StreamCast Networks, Inc. v. IBIS LLC., 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006).

Defendant argues that declaratory relief will "necessarily be part of any relief under [plaintiffs'] other claims." Motion at 23. However, it appears that the declaratory relief sought here is a distinct remedy from those *necessarily* available under plaintiffs' other claims. It is unclear at this juncture whether resolution of plaintiffs' breach of contract claim and UCL claim would necessarily resolve the parties' prospective rights under the Policies. To the extent it may overlap with plaintiffs' other requests for relief, plaintiffs may be required to make an election of remedies if they prevail on multiple claims. Accordingly, defendant's motion to dismiss plaintiff's declaratory judgment claim is **DENIED**.

## H.    Elder Abuse

Plaintiffs' final claim for relief alleges elder abuse in violation of California's Welfare and Institutions Code sections 15610, et seq.

California's elder abuse laws make additional damages available to a prevailing plaintiff who proves abuse of an elder, or a person age 65 years or older.[11] The Act defines various acts as "abuse of an elder," including "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." Cal. Welf. & Instit. Code § 15610.07(a). Each of these types of elder abuse is further defined elsewhere in the Act.

At issue here is alleged "financial abuse," which occurs when a person or entity "takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Id. § 15610.30(a)(1). The taking or retaining of property for "wrongful use" is further defined as a taking of property where the person or entity "knew or should have known that this conduct is likely to be harmful to the elder." Id. § 15610.30(b). And "taking" is defined

---

[11] Not all of the plaintiffs here are over 65 years of age. However, as defendant acknowledges, plaintiffs' elder abuse claim is not alleged on behalf of anyone under 65.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS (AJWx) | Date | November 8, 2016 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY | | |

as depriving an elder of any real or personal property by a number of means, including "by means of an agreement." Id. § 15610.30(c).

Defendant argues that plaintiffs must allege that defendant specifically targeted elders rather than, as alleged here, an unfair practice applied to both elders and non-elders. In support of its argument, defendant cites a number of cases where the plaintiffs were elders and alleged that they had been targeted by an unlawful scheme. See e.g. Quintero Family Trust v. One West Bank, F.S.B, 2010 WL 2618729, at *15 (S.D. Cal. June 25, 2010) (denying a motion to dismiss an elder abuse claim). However, the cases on which defendant relies do not purport to *require* discrimination or specific targeting of the elderly. For instance, in Quintero, the court concluded that "[a] violation of the statute occurs if, among other things, the person or entity (1) 'takes, secretes, appropriates, obtains, or retains [] property,' and that person or entity (2) 'knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.'" Id. at *15 (quoting Cal. Welf. & Inst. Code § 15610.30(b)). The court in Quintero made no mention of specific targeting of elders, nor was it concerned with discriminatory motive or disparate impacts upon elders. Although meritorious elder abuse claims may commonly involve targeting of the elderly, California's elder abuse laws only require that a defendant know or should know their wrongful conduct is likely to harm an elder.

Plaintiffs have adequately alleged elder abuse. Plaintiffs allege that, by increasing the MDR on policies held by the elderly, defendant appropriated property from elderly plaintiffs in bad faith and with intent to defraud them. Plaintiffs allege that certain policy rates depend upon policyholders' age. Accordingly, plaintiffs allege that Transamerica knew or should have known that its conduct was likely to be harmful to elders.

Defendant's motion to dismiss plaintiffs' elder abuse claim is **DENIED**.

## V. CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss is **DENIED**.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |