| [REDACTED] CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[REDACTED]** - PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL (Filed May 22, 2017, dkt. 275)

## I.    INTRODUCTION

On February 28, 2016, Gordon Feller, Mary Feller, George Zacharia, and Margaret Zacharia filed a class action in this court seeking certification of a nationwide class against Transamerica Life Insurance Company ("Transamerica") challenging a monthly deduction rate ("MDR") increase imposed on holders of life insurance policies issued by Transamerica.  Dkt. 1.

On March 25, 2016, Andrew Kriegman filed a second class action case in the Southern District of Florida challenging Transamerica's same MDR increase in 2015. Kriegman v. Transamerica Life Insurance Company, Case No. 1:16-cv-21074.  The Kriegman case sought certification of a nationwide class.  On April 25, 2016, Gail and Lois Thompson filed a third class action in the Southern District of California, also seeking certification of a nationwide class.  Thompson v. Transamerica Life Insurance Company, Case No. 3:16-cv-1007.

On May 3, 2016, Transamerica filed a motion before the United States Judicial Panel on Multidistrict Litigation ("JPML"), seeking transfer of all three actions to the Northern District of Iowa.  Dkt. 22.  Before the JPML ruled on Transamerica's motion, the Thompson and Kriegman plaintiffs voluntarily dismissed their cases, filed in the other districts, and refiled them in the Central District of California.  The newly-filed cases were related to the Feller case and consolidated for pretrial purposes.

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 | |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

On June 10, 2016, plaintiffs filed a Consolidated Amended Class Action Complaint in this Court. Dkt. 68. On August 18, 2017, plaintiffs filed a Second Consolidated Amended Class Action Complaint. Dkt. 293 ("SAC"). In the SAC, Gordon Feller, Mary Feller, Gerald Lyons, Donna M., Clarence White, Gail Thompson, individually and under a power of attorney for Lois Thompson, Andrew Kriegman, as trustee for the Adrienne L. Hendler Revocable Trust, the Elizabeth Kriegman Revocable Trust, the Patricia Sokolow Revocable Trust, and Eric Schneck, as trustee for the Burton I. Schneck Irrevocable Life Insurance Trust, assert seven claims against Transamerica on behalf of themselves and all others similarly situated. Id. Specifically, the complaint alleges claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the duty of good faith and fair dealing; (4) violation of California's Unfair Competition Law ("UCL"), pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq.; (5) declaratory relief; (6) preliminary and permanent injunctive relief; and (7) elder abuse, pursuant to Cal. Welf. & Inst. Code §§ 15657.5, et seq. Id.

On May 22, 2017, plaintiffs filed the instant motion for class certification, appointment of class representatives, and appointment of class counsel, dkt. 275, and filed their memorandum in support of this motion on September 6, 2017, dkt. 307 ("Class Motion"). In support of their Class Motion, plaintiffs filed the Declaration of Eric Schneck, dkt. 285 ("Schneck Decl.") and the Declaration of Andrew S. Friedman, dkt. 308 ("Friedman Class Decl."). Transamerica filed a redacted opposition on September 1, 2017, dkt. 296-2 ("Opp'n"), and filed numerous declarations in support of its motion: Declaration of Ryan Colerick, dkt. 296-3 ("Colerick Decl."); Declaration of Nancy Thomas, dkt. 298 ("Thomas Decl."); Declaration of Tracy Collins, dkt. 299 ("Collins Decl."); Declaration of Christi Kintzel, dkt. 300 ("Kintzel Decl."); Declaration of Phyllis Dilbeck, dkt. 301 ("Dilbeck Decl."); and Declaration of Jerome Paul, dkt. 302 ("Paul Decl."). Transamerica filed a request for judicial notice in support of its opposition on September 1, 2017.[1] Dkt. 303 ("RJN"). On November 7, 2017, plaintiffs filed their Reply. Dkt. 344. On November 6, 2017, Transamerica filed its supplemental submission in support of its opposition. Dkt. 341 ("Supp. Opp'n").

---

[1]     Transamerica submits a true and correct copy of the "Certificate of Existence for Transamerica Occidental Life Insurance Company," dkt. 301 & Ex. 1, as issued by the Iowa Secretary of State. Because this fact is not in dispute, the Court takes judicial notice of the certificate.

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

On November 27, 2017, the Court held oral argument. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.        BACKGROUND

### A.        Plaintiffs' Life Insurance Policy Terms

Plaintiffs are all owners of life insurance policies issued by Transamerica Occidental[2] between December 18, 1981, and October 22, 2003. SAC ¶¶ 5-15. Plaintiffs allege that they own universal life insurance policies that are unlike term and whole life insurance policies traditionally sold by insurance companies. Id. ¶¶ 23-24. Plaintiffs allege that numerous universal life insurance policies administered by Transamerica share "standardized, materially uniform language" with respect to the policy terms at issue here. Id. ¶ 27. The policies have different names, such as "TransMax" or "TransUltra," but, as explained below, all were subject to significant MDR increases commencing in 2015. Id. ¶ 27 n. 5.

Under plaintiffs' universal life insurance policies, premiums are deposited into an account for each policy. Each month, Transamerica withdraws a monthly deduction amount from each account and deposits a separate amount of interest. Interest accrues on the account's balance based upon minimum rates and average annual rates guaranteed by each policy. Universal life insurance policies allow policyholders to alter the amount and frequency of their premium payments as long as their account contains sufficient value to cover the monthly deduction. Id. ¶ 24.

The monthly deduction amount is determined by adding three numbers: a policy fee; a deduction for any policy riders; and a number derived from the MDR set by Transamerica. Id. ¶ 29. The latter component of the monthly deduction is determined by the difference between the policy's death benefit and the accumulation value at the beginning of the policy year, multiplied by one thousandth of the MDR. Id. Ex. A at 56. Some policies provide that:

---

[2]     Transamerica Occidental was a corporation organized under the laws of California. On or about October 1, 2008, Transamerica Occidental merged with Transamerica, a corporation organized under the laws of Iowa. Plaintiffs allege that Transamerica is Transamerica Occidental's successor-in-interest. Accordingly, for purposes of this order, the Court refers to both corporations as Transamerica.

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY |

> [Transamerica] will determine the [MDR] for each policy year at the beginning of that year. [Transamerica] will use the insured's age as of that policy year.
>
> A table of Annualized Guaranteed Monthly Deduction Rates is in the policy data. [Transamerica] may use rates lower than these annualized guaranteed monthly deduction rates. [Transamerica] will never use higher rates.
>
> A Table of Maximum Guaranteed Annualized Monthly Expense Charges is on page 3. We may use expense charges lower than these maximum guaranteed annualized monthly expense charges. We will never use higher expense charges.

Dkt 111-1, Hames Decl. Ex. 1 at 10.

Not every policy uses the same language to describe the MDR. For instance, Nelson's policy equates the guaranteed monthly deduction with the "Cost of Insurance." SAC & Ex. A at 219 ("The guaranteed monthly deduction for nonsmokers is the cost of insurance"). Plaintiffs allege that the cost of insurance ("COI") portion is based upon projections of life span established by the 1980 CSO Mortality Tables. Id. ¶ 31. One of Lyon's policies provides that:

> [t]he monthly deduction rate for the base policy will depend on the face amount of the policy; the Insured's sex; the Insured's smoker or nonsmoker status; the Insured's class of risk as of the Policy Date; the number of years that the policy has been in force; and the Insured's issue age.

Id. at 113.

Plaintiffs allege that the policies do not expressly permit Transamerica to set the MDR "in whatever amount or by whatever method it determines." Id. ¶ 33. According to plaintiffs, a reasonable policyholder would construe the standardized policy language to require that the MDR only change pursuant to changes in the underlying mortality rates. Id. ¶ 34.

Plaintiffs allege that Transamerica is not permitted to "set or increase [MDRs] to recoup past losses" based on changes in interest rates, lapse rates, diminished returns on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Transamerica's overall portfolio, or other experience factors. Id. ¶ 33. Plaintiffs further allege that Transamerica is not permitted to set the MDR "to negate or offset Transamerica's obligation to pay credited interest to the Policies at the minimum guaranteed rates." Id.

Ultimately, if a monthly deduction exceeds an account's value, the policy may lapse. Plaintiffs allege that small changes in the MDR can produce dramatic increases in the monthly deduction, requiring higher premiums to maintain a positive balance in the policy's account to avoid a lapse of the policy. Id. ¶ 30.

### B. MDR Increases in 2015

On June 8, 2015, Transamerica announced that plaintiffs' MDRs would increase by "as much as 100%," and that monthly deductions would increase accordingly. Id. ¶ 37. Plaintiffs allege that the ensuing MDR increases resulted in "an astronomical increase in the premiums necessary to maintain coverage under the Policies." Id. ¶ 41.

Plaintiffs allege that Transamerica dramatically increased the applicable MDRs in 2015 in order to induce "shock lapses" and avoid paying out death benefits to plaintiffs. Id. ¶ 43. Transamerica allegedly depleted its capital reserves and thereby increased the risks it faced if plaintiffs' policies resulted in a loss. Id. ¶¶ 48-49. Meanwhile, low interest rates undermined the profitability of plaintiffs' policies because plaintiffs' policies guaranteed much higher interest rate accruals on account balances. Id. ¶ 55. Accordingly, plaintiffs allege that Transamerica has increased MDRs to avoid its obligation to meet the high interest rates it guaranteed under plaintiffs' policies and to recoup past losses. Id. ¶ 44.

Most policyholders affected by the MDR increases are elderly. Id. ¶ 76. Plaintiffs allege that Transamerica hopes to induce lapses among elderly policyholders who have dutifully paid premiums for decades. Id. ¶¶ 72, 74.

The gravamen of the SAC is that the MDR increases that Transamerica began to impose in mid-2015 are improper, unfair, and a breach of Transamerica's obligations to plaintiffs.

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## C. The Proposed Classes

In their Class Motion, plaintiffs seek the certification of a three classes, defined as follows:

### National Class

All persons who own an in-force Policy for which the MDR increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

### California Subclass

All California residents who own an in-force Policy for which the MDR increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

### California Senior Subclass

All California residents who own an in-force Policy for which the MDR increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date, and who were age 65 or older when the MDR increase was imposed on them.

Friedman Class Decl. ¶ 2.

## III. LEGAL STANDARDS

### A. Class Certification

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions.

| [REDACTED] CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 546 U.S. 338, 345 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000); Fed. R. Civ. P. 23(a). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).

In addition, the Court must consider whether the class is maintainable under Rule 23(b). Dukes, 546 U.S. at 345. Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions, (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely encountered in the management of a class action. Id. at 1190–92. "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. at 1189 (quotation marks omitted).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

questions of law or fact, etc." <u>Dukes</u>, 564 U.S. at 350. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." <u>Id.</u> at 350–51.

## IV.   DISCUSSION

### A.   The Proposed Classes

Plaintiffs challenge the MDR increases that Transamerica implemented in 2015 and 2016, which raised the Monthly Deduction charges on nearly 70,000 universal life insurance policies. Motion at 3. Plaintiffs assert that there is "no material dispute" about how these policies operate, and that all policies include an express contractual provision that prohibits Transamerica from "recover[ing] past losses by changing the monthly deduction rates." <u>Id.</u> Based on this provision, plaintiffs seek certification of the following common claims: (1) breach of contract with respect to the National Class and California Subclasses; (2) breach of the implied covenant of good faith and fair dealing under California law with respect to the California Subclasses; (3) tortious breach of the duty of good faith and fair dealing with respect to the California Subclasses; (4) violation of the UCL under the "unfair prong" with respect to the California Subclasses; (5) declaratory relief on behalf of all classes; and (5) violation of California's Welfare and Institutions Code section 15610, <u>et seq.</u>, with respect to the California Senior Subclass. <u>Id.</u> at 6–8.

### 1.   Rule 23(a) Requirements

Plaintiffs assert that their claims are ideally suited for class certification, and that they meet the requirements of Rule 23(a). Motion at 9. Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. <u>See</u> Fed. R. Civ. P. 23(a)(1). "No exact number cut-off can be stated. Rather, the specific facts of each case must be examined." <u>Ballard v. Equifax Check Servs., Inc.</u>, 186 F.R.D. 589, 594 (E.D. Cal. 1999). "Courts have not required evidence of exact class size or the identities of class members to satisfy the requirements of Rule 23(a)(1)." <u>Saulsberry v. Meridian Fin. Servs., Inc.</u>, No. 14-cv-6256-JGB-JPR, 2016 WL 3456939, at *7 (C.D. Cal. Apr. 14, 2016) (citing <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993)).

Plaintiffs' counsel, Andrew S. Friedman, along with actuarial expert Larry N. Stern, estimate that thousands of policyholders—owning some 70,000 policies—have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

been subjected to the MDR increases as of September 2015.  Friedman Class Decl. ¶ 7; dkt. 150 Declaration of Larry N. Stern ("Stern Decl.") ¶ 37.  Moreover, plaintiffs argue, there are 2,969 adversely affected California policyholders that hold policies with the same plan code as the named plaintiffs (other than Kriegman).  Friedman Class Decl. & Ex. B at 19.  Policyholders who were 65 years old or older when Transamerica imposed the MDR increases hold the majority of these California policies.  Friedman Class Decl. ¶ 9.

Transamerica does not dispute the existence of numerosity.  In light of the evidence described above—that Transamerica increased the MDRs on approximately 70,000 policies, which affected nearly 2,969 California policyholders, the majority of whom were 65 years old or older at the time of the increases— the Court finds that plaintiffs' allegations and evidence demonstrate that the numerosity requirement of Rule 21(a)(1) is met as to each of the three proposed classes.

### a.  Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class."  These common issues must be material to the resolution of the claims asserted and demonstrate that the putative class members "suffered the same injury."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982).  "[W]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  Dukes, 564 U.S. at 350 (quotation marks omitted).

Plaintiffs contend that commonality is satisfied given the common nature of the question of whether Transamerica had the contractual authority to impose the MDR increases at issue in this litigation.  Motion at 11 (citing Friedman Class Decl. ¶ 3; Stern Decl. & Ex. C).  Plaintiffs argue that the question of breach turns on the conduct of Transamerica, *not* the individual actions or understandings of policyholders.  Motion at 11.  Moreover, plaintiffs argue that the non-recoupment provision is unambiguous, which provides that "[w]e do not distribute past surplus or recover past losses by changing the monthly deduction rates."  Plaintiffs contend that, in light of the rule that contracts are to be enforced in accordance with their unambiguous terms, class certification is warranted.  Reply at 13–14.  Even if the non-recoupment provision were found to be ambiguous, the rule requiring uniform construction under an objective standard still applies, according to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

plaintiffs. Id. at 15. Accordingly, the subjective understanding of each policyholder is irrelevant to interpreting the non-recoupment provision, particularly in light of Transamerica's standard integration clause in each policy that provides "[t]he policy and the application together are the entire contract." Id. at 10, 12 (citing dkt. 298-7 at 19).

In opposition, Transamerica argues that there is "no common answer" for how the non-recoupment provision should be interpreted—implying that this provision is ambiguous and subject to varying interpretations. Opp'n at 20. Transamerica asserts that plaintiffs provide no evidence that policy owners interpret this phrase to mean that Transamerica cannot adjust the MDRs to make policies more profitable than projected under the original pricing assumptions. Opp'n at 20. Instead, the provision's "plain wording" merely confirms that a change in the MDRs does not transform the non-participating policy into a participating one. Id. at 21. Moreover, Transamerica argues that interpreting the non-recoupment provision will require the application of varying laws of fifty states. Id. at 22. State laws vary substantially with respect to the use of extrinsic evidence, particularly with respect to dealing with questions related to contractual ambiguities and policy interpretation. Id. at 24. As detailed in Transamerica's appendix, Transamerica argues that state laws vary significantly with respect to the application of the reasonable expectations of the insured doctrine. Id. at 25.

The Court finds that the instant case is susceptible to classwide proof—whether or not the non-recoupment provision is ambiguous. All of the policies at issue contain the standardized non-recoupment provision that plaintiffs contend Transamerica breached through its MDR increase. Whether the non-recoupment provision is in fact ambiguous is another matter—the Court cannot resolve the merits of this interpretation issue at the class certification stage. While acknowledging that the interpretation of the non-recoupment provision will ultimately be an issue at trial, at this juncture it is not "patently untenable" from the face of the policies that this standardized provision will be found to be unambiguous, and if so, a common issue exists as to whether Transamerica breached this provision. See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig., 270 F.R.D. 521, 529 (N.D. Cal. 2010) (finding that neither party asserted that a form policy contract contained ambiguous terms when, instead, they merely offered competing

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

interpretations based on the face of the documents).[3]   Given that courts have recognized that the law relating to the elements of a claim for breach of contract do not vary greatly from state to state, the issue of breach with respect to the non-recoupment provision is also common to all prospective class members.  See, e.g., In re Conseco, 270 F.R.D. 521 at 529 ("[Defendant] overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence") (citing Klay v. Humana, Inc., 382 F.3d 1241, 1262–63 (11th Cir. 2004) and Leszczynski v. Allianz Ins., 176 F.R.D. 659, 672 (S.D. Fla. 1997) for the proposition that law relating to the elements of a claim for breach of contract do not vary greatly from state-to-state).  Any isolated or relatively minor variations in state law with respect to breach may be handled at trial by grouping similar state laws together.  See id. (citing In re Prudential Ins. Co. Am. Sales Prac. Litig., 148 F.3d 283, 315 (3d Cir.1998)) (quotations omitted).

Even assuming the standardized non-recoupment provision is found to be ambiguous, what matters for purposes of commonality is that Transamerica appears to have treated class members [REDACTED] by setting MDR rates [REDACTED]. Transamerica's alleged breach is not assertedly based on thousands of distinct decisions to recoup a bonus, for example, which would all require separate consideration.  Cf. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) (finding that where "there is no evidence that the entire class was subject to the same allegedly [impermissible] practice, there is no question common to the class").  Accordingly, there is a sufficient showing of commonality for purposes of Rule 23(a)(2), because determining the propriety of Transamerica's practice of increasing the MDRs presents multiple common questions capable of common resolution.

Transamerica resists this conclusion, arguing that each class members' individual subjective understanding when purchasing the policy forecloses a finding of commonality here.[4]  But the purported uniqueness of each policy transaction does not undermine the

---

[3]      It is unclear whether Dilbeck is asserting in her declaration that the contract has unambiguous meaning.  If true, there is a common method of proof, and the Court need not reach ambiguity.

[4]      At bottom, Transamerica seems to argue that a breach of contract case could never be a class action, because liability will depend on proof of each individual's subjective understanding of the agreement.  If breach of contract cases were meant to be excluded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

commonality of the questions identified herein, because the non-recoupment provision is identical across the entire class. The problem in Dukes, to which Transamerica cites repeatedly, was that there was no common answer to the question of why any individual class member was disfavored or passed over for a promotion. Here, any issue of ambiguity is one that will be resolved by a common method of proof applying an objective standard for interpreting the non-recoupment provision of the policies at issue.[5]

Additionally, commonality is not destroyed by any variation in the product groups subjected to MDR increases, because the record demonstrates that the MDR increases were based on [REDACTED]. Transamerica asserts that the first two waves focused [REDACTED]—and the latter two waves [REDACTED]—[REDACTED]. Opp'n at 15. Plaintiffs, should they prevail, plan to use these methodologies to calculate the increased amounts that they claim were improperly taken from policyholders' accumulation accounts. Reply at 22 (citing Stern Decl. ¶¶ 25–29). Accordingly, plaintiffs sufficiently demonstrate that—if they succeed on their theory of breach—determination of restitution or damages according to these methodologies will "generate common answers apt to drive the resolution of the litigation." Dukes, 564 U.S. at 350.

Therefore, adjudicating plaintiffs' claims for breach of contract, breach of implied covenant, tortious breach of implied duty, violation of the UCL, and statutory elder abuse will present multiple common issues as to whether Transamerica's increases in fact violated the parties' respective policy contracts.[6] The commonality requirement is met here.

---

from Rule 23's coverage, Congress would have specified as much. See Kleiner, 97 F.R.D. 683 at 693.

[5] Transamerica offers no basis to conclude, at this juncture, that the standard terms of its policies were subject to individualized negotiation, or why extrinsic evidence regarding a particular policyholder's subjective understanding of the non-recoupment provision would be admissible. Nor does Transamerica show that the laws of the states vary in material respects as to the canons of contractual construction involving alleged ambiguities in printed form contracts that include integration clauses.

[6] Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, tortious breach of the duty of good faith and fair dealing, violation of the UCL, and statutory elder abuse all turn on the common course of Transamerica's alleged breach in

[REDACTED] CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### b.    Typicality

Rule 23 next requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2). The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Costco, 657 F.3d at 984 (quotation marks omitted). Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Where a class representative is subject to unique defenses, typicality may not be satisfied. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement tends to overlap with the commonality and adequacy requirements. See Newberg on Class Actions (Fifth) § 3:30.

Plaintiffs argue that typicality is satisfied because each of the proposed class representatives owns a policy subjected to the challenged MDR increase, and accordingly, all proposed class representative have experienced withdrawals from their accumulation accounts greater than the withdrawals that would have been made absent the MDR increase. Motion at 13 (citing dkt, 233, Declaration of Donna White ("White Decl.") ¶ 9; Dkt. 278, Declaration of Gail Thompson ("Thompson Decl.") ¶ 4; Dkt. 279, Declaration of Eric Schneck ("Schneck Decl.") ¶ 5).

---

increasing the MDRs, the very same alleged breach identified in plaintiffs' breach of contract claim. Accordingly, "[b]ecause [p]laintiff's breach of contract, bad faith, and UCL claims do not require proof of subjective understanding, it is unlikely that the Court will have to examine individualized evidence to assess them on the merits." Yue, 282 F.R.D. 469 at 477. Though Transamerica contends that policyholders who minimally funded their policies cannot show tortious breach, the Court finds that the policies with de minimis accumulation values when the MDR increases were implemented still face the very same loss of policy benefits insofar as Transamerica allegedly implemented the increases to purge these policies.

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 | |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

In opposition, Transamerica contends that none of the putative representatives has claims typical of other class members because adjudication of a putative class member's breach of contract claim requires application of that member's state law to that member's particular policy. Opp'n at 29. Accordingly, the evidence and arguments of individual representatives will not support the claims of absent class members.[7] Id. at 29, 47. Moreover, Transamerica argues that plaintiffs' proposed methodology for determining whether an MDR increase recovered past losses will result [REDACTED] amongst the proposed class representatives and putative class members. Id. at 30.

Plaintiffs respond that, here, the MDR increases have damaged *all* proposed class members through increased withdrawals from every accumulation account, and the legal and equitable relief would disadvantage none of them. Reply at 25.

"[A]ssuming plaintiffs confine their presentation to claims susceptible of common proof … no typicality problem will arise." In re Conseco, 270 F.R.D. 521 at 531. The Court finds that plaintiffs' injuries—with respect to the National Class and the California Subclasses—are "reasonably co-extensive" with those of other putative class members, insofar as each potential representative owns a policy that was subjected to the MDR increase. See Hanlon, 150 F.3d at 1020. These named representatives allege a course of conduct by Transamerica—the setting of the MDR increases—common across the classes. Therefore, the typicality requirement is met.

### c. Adequacy of Representation

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy

---

[7]    Transamerica argues that proposed representative Donna White has atypical claims because she incorrectly believed she owns a whole life policy, and Transamerica accordingly plans to present unique defenses with respect to her claims. Opp'n at 30. Plaintiffs contest the notion that White gave such mistaken testimony—but even if she did, they argue, these oversights in testimony do not render a class representative atypical or inadequate. Reply at 26 (citing In re Silver Wheaton Corp. Sec. Litig., No 15-CV-05146-CAS-JEMx, 2017 WL 2039171, at *9–10 (C.D. Cal. May 11, 2017). The Court agrees that, at this juncture, White's subjective understanding about whether her policy is whole life or universal is not relevant to the common issue of Transamerica's alleged breach of the standardized non-recoupment provision within it.

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|----------|------------------------|------|-------------------|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

inquiry involves whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that adequacy is met because the interests of the proposed class representatives are coextensive with those of the unnamed members of the classes. Motion at 14 (citing Friedman Class Decl. ¶¶ 10–12). Each proposed representative has attested that they understand and will fulfill their obligations as class representatives. White Decl. ¶¶ 17–18; Thompson Decl. ¶¶ 6-7; Schneck Decl. ¶¶ 7–8.

In opposition, Transamerica contends that the proposed representatives have irreconcilable conflicts with other class members because the representatives cannot advocate for thousands of class members whose policies [REDACTED]. Opp'n at 31–32, 47. Moreover, Transamerica contends that proposed representative Schneck is not adequate because the Court lacks personal jurisdiction over his claims. Id. at 32.

Plaintiffs respond that Ninth Circuit law dictates that purported conflicts within the class preclude certification only where the conflict is "apparent, imminent, and on an issue at the very heart of the suit." Reply at 27–28 (citing Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975)). Moreover, plaintiffs' class definition includes only policyholders for whom the MDR increases imposed by Transamerica have "resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date." Id. at 28 (citing dkt. 282 at 2). Even presuming "zero damages" members within the class, plaintiffs contend that this is no bar to class certification. Id. at 30 (citing Kamakahi v. Am. Soc'y for Reprod. Med., 305 F.R.D. 164, 189 (N.D. Cal. 2015), leave to appeal denied (May 12, 2015) (and cases cited therein)).

The notion that the putative National and California class representatives have irreconcilable conflicts with other class members [REDACTED] is foreclosed by the language of plaintiffs' class definitions. As stated, the class definitions include only policyholders for whom the MDR increases imposed by Transamerica have "resulted or will result in higher Monthly Deduction charges than those applicable under the *rate schedule in effect before that date*." (Emphasis added). This definition provides that the increase in MDR rates is based on Transamerica's own rate schedule, [REDACTED].

In addition, Transamerica's argument with respect to Schneck is foreclosed in light of the fact that this Court has found that it has personal specific jurisdiction over

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

[REDACTED] CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Shneck's claim against Transamerica. Accordingly, the Court finds that the proposed class representatives are adequate in light of the lack of any apparent conflict between these representatives, and in light of their acknowledgement that they understand and will fulfill their obligations as class representatives. White Decl. ¶¶ 17–18; Thompson Decl. ¶¶ 6–7; Schneck Decl. ¶¶ 7–8.

### 2.    Rule 23(b) Requirements

Having concluded that the Rule 23(a) requirements are met, the Court turns to Rule 23(b). Plaintiffs seek to certify the proposed classes separately for purposes of injunctive relief and damages under Rule 23(b)(2) and 23(b)(3). Transamerica argues that class certification under Rule 23(b)(2) is improper because the putative class members' claims for monetary relief are more than incidental to their claims for injunctive and declaratory relief, and due process concerns exist because absent class members will be bound by this Court's findings with respect to the Rule 23(b)(2) class. Opp'n at 36–38.

In its decision in Dukes v. Wal–Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010), rev'd, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011) (en banc), the Ninth Circuit noted that the district court had the option of certifying a Rule 23(b)(2) equitable relief class and a separate Rule 23(b)(3) class for damages if it concluded that it could not certify a single Rule 23(b)(2) class because monetary relief predominated over the equitable relief sought. Id. at 620. However, the Supreme Court "rejected the 'predominance' test for determining whether monetary damages may be included in a 23(b)(2) certification." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 986 (9th Cir. 2011). Subsequent to the Supreme Court's decision in Dukes, the Ninth Circuit has suggested on multiple occasions that district courts may consider certifying separate Rule 23(b)(2) and 23(b)(3) classes. See id. at 988 ("[T]he district court must consider how best to define the class(es) to ensure that all class members have standing to seek the requested relief.) See, e.g., Dukes, 603 F.2d at 620 (suggesting the court certify a 'Rule 23(b)(2) class for equitable relief and a separate Rule 23(b)(3) class for damages')"); see also Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) ("Plaintiffs concede that class certification for their monetary claims under Rule 23(b)(2) cannot stand in light of Wal–Mart. However, the possibility of a Rule 23(b)(2) class seeking injunctive relief remains. Rule 23(b)(2) applies 'when a single injunction or declaratory judgment would provide relief to each member of the class.' . . . [S]ee . . . Ellis, 657 F.3d at 987

**[REDACTED] CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|----------|------------------------|------|-------------------|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

(indicating that the court could certify a Rule 23(b)(2) class for injunctive relief and a separate Rule 23(b)(3) class for damages").[8]

Consequently, and notwithstanding Transamerica's arguments, Opp'n at 36-38, it appears to be the case that the Court can certify a Rule 23(b)(2) class where non-incidental monetary relief is sought in addition to injunctive relief. Rather, the Ninth Circuit has indicated that a district court can separately certify an injunctive relief class and, *if appropriate*, also certify a Rule 23(b)(3) damages class. Thus, the Court turns to consideration of the requirements for certification under Rule 23(b)(3) and Rule 23(b)(2).

### a. Rule 23(b)(3) Predominance of Liability Issues

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

Predominance focuses on "the relationship between the common and individual issues," requiring that the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. Hanlon, 150 F.3d at 1022. The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." Amchem Prods., 521 U.S. at 625. "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately." Gartin v. S & M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007). "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues

---

[8]     See also Roy v. Cty. of Los Angeles, No. 12-CV-09012-BRO-FFMX, 2016 WL 5219468, at *16 (C.D. Cal. Sept. 9, 2016) (noting "there is a difference between seeking damages for a class certified under Rule 23(b)(2) and seeking to certify separate classes in the same action in which injunctive relief is sought for classes certified under Rule 23(b)(2) and damages are sought for classes certified under Rule 23(b)(3).")

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

will help achieve judicial economy." <u>Valentino</u>, 97 F.3d at 1234. The focus is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods.</u>, 521 U.S. at 623.

Plaintiffs contend that common issues predominate with respect to the liability elements of plaintiffs' breach of express contract, breach of implied covenant, and California statutory claims. Motion at 14–15. Plaintiffs assert that these claims turn on the conduct of Transamerica in unilaterally developing and implementing the MDR increases. <u>Id.</u> at 15 (citing <u>In re Med. Capital Sec. Litig.</u>, No SACV-09-1048-DOC-RNBx, 2011 WL 5067208, at *3 (C. D. Cal. July 26, 2011); <u>Kleiner v. First Nat'l Bank of Atlanta</u>, 97 F.R.D. 683, 692 (N.D. Ga. 1983). Because the breach of contract claim alleged on behalf of the National Class is straightforward, choice of law nuances are not an issue. <u>Id.</u> (citing <u>Conseco</u>, 270 F.R.D. at 529; <u>Klay v. Humana, Inc.</u> 382 F.3d 1241, 1263 (11th Cir. 2004)). Moreover, the central issue of breach of the uniform policy language presents an actuarial issue that will be determined solely on the basis of *Transamerica's* actions. <u>Id.</u> at 16.

Transamerica asserts that the same legal and factual issues that preclude a showing of commonality also preclude a showing of predominance. <u>Id.</u> at 42.

It is well established that the predominance requirement is "more demanding" than Rule 23(a)'s commonality requirement. <u>Amchem</u>, 521 U.S. at 624. With this higher standard in mind, the Court finds that, even if the standardized non-recoupment provision is ambiguous, plaintiffs' claims are still subject to a common method of proof under an objective test that looks to "reasonable expectations" of the insured. Moreover, the ultimate issue of liability turns on *Transamerica's conduct* with respect to increasing MDRs.

With respect to the breach of contract claims, courts have long found that "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action." <u>See Kleiner v. First Nat'l Bank of Atlanta</u>, 97 F.R.D. 683, 691 (N.D. Cal. 1983); <u>see also Kolbe v. BAC Home Loans Servicing, LP</u>, 738 F.3d 432, 441 (1st Cir. 2013) (collecting cases) ("Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member."); <u>In re U.S.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

[REDACTED] CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY |

Foodservice Inc. Pricing Litig., 729 F.3d 108, 126 (2d Cir. 2013) ("Since the record does not indicate the existence of material differences in contract language or other significant individualized evidence, we conclude that the district court did not abuse its discretion in concluding that common issues will predominate over any individual issues."); Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). The instant case, based on standardized policy language contained in a non-recoupment provision, appears to be no different. See Leszczynski, 176 F.R.D. 659 at 674-75 (finding that predominance was satisfied with respect to plaintiffs' alleged breach of insurance policies that were the same in all material respects). Moreover, even assuming that there are ambiguities in this standardized provision, "the subjective expectations of an insured class member would have little if any bearing on the breach of contract analysis."[9] Yue v. Conseco Life Ins. Co., 282 F.R.D. 469, 476 (C.D. Cal. 2012). In interpreting a standardized provision, the provision "is interpreted wherever reasonable as treating alike all those similarly situated, *without regard to their knowledge or understanding of the standard terms of the writing*." Restatement (Second) of Contracts § 211(2) (emphasis added). "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it. The result may be to give the advantage of a restrictive reading to some sophisticated customers who contracted with knowledge of an ambiguity or dispute." Id. at Comment e.

With respect to policy interpretation, the Court has reviewed Transamerica's Appendix on state law variations in the reasonable expectations doctrine.[10] Dkt. 296 &

---

[9]     See Vedachalam v. Tata Consultancy Servs., Ltd., No. 06-CV-0963-CW, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012) ("in construing the form contract between Defendants and class members, the Court need not delve into the actual knowledge of individual class members"); Ewert v. eBay, Inc., No. 07-CV-02198-RMW, C–07–04487 RMW, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (same).

[10]     Transamerica cites two district court decisions in this Circuit that denied class certification due to contract interpretation that required the application of varying state laws. Opp'n at 22, n. 7 (citing Burton v. Nationstar Mortg. LLC, No. 13-CV-00307-LJO-JLTx, 2014 WL 5035163, at *13 (E.D. Cal. Oct. 8, 2014); Gustafson v. BAC Home Loans Servicing, LP, 294 F.R.D. 529, 544 (C.D. Cal. 2013)). However, in contrast to the

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Ex. 2 ("Appendix"). On the issue of choice of law, the Ninth Circuit in Mazza v. American Honda Motor Co., Inc. held that, under California's choice of law rules, the party opposing certification has the burden to demonstrate that foreign law, rather than California law, applies to class claims. 666 F.3d 581, 590 (9th Cir. 2012). This burden requires the opposing party to demonstrate how any alleged differences between state laws are material to the class claims. Id. Transamerica has failed to meet its burden in that it has not shown, or attempted to show, that resort to foreign law is necessary to interpret any alleged ambiguity in the form contracts here at issue. There is no evidence of any negotiation with any policyholder that yields a different interpretation of the contract. Statements about unexpressed subjective intent are speculative and are inadmissible in every jurisdiction. Here, though the reasonable expectations doctrine may vary slightly from state-to-state with respect to restrictions on the use of extrinsic evidence, the parties here do not point to any particular extrinsic evidence—such as representations made to the policyholders at the time of contracting—that would be relevant or admissible in determining the reasonable expectations of each *policyholder*.[11]

---

instant litigation, the provisions at issue in Burton were not part of printed form contracts, and the provisions at issue in Gustafson contained *materially different language* contract-to-contract. See Burton, 2014 WL 5035163, at *10 ("Significantly, Plaintiff's arguments for commonality are premised on the finding that Nationstar's [Permament Modification Agreement] documents were a "form contract." (See Doc. 69 at 20; Doc. 80 at 3) Yet there is no evidence supporting this assertion … Consequently, Plaintiff fails to show that the PMAs for all of the putative class members should be considered a 'form contract,' or that breaches of the PMAs may be demonstrated with common evidence."); Gustafson, 294 F.R.D. 529 at 543-44 ("the mortgage contracts at issue here contain numerous material variations of the provision that serves as the basis for Plaintiffs' breach of contract claim… Thus, the Court finds Plaintiff's expert's opinion—that the contracts used in the mortgage industry are standardized—unpersuasive in this instance").

[11] Transamerica's declarations of Phyllis Dilbeck and Jerry Paul reflect, generally, that Transamerica encouraged its producers, general agents, and branch officers to inform their clients that MDRs could be increased with respect to interest, mortality, taxes, and account persistency. See Opp'n at 10 (citing Paul Decl. ¶¶ 8–9; Dilbeck Decl. ¶¶ 9–10, 14). Yet these declarations do not demonstrate that any individual policyholder in the proposed classes relied on specific representations from Transamerica employees with respect to MDRs, or more importantly, whether any of these persons were authorized to vary the terms of the policies. Accordingly, just as the record contains no evidence

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

That extrinsic evidence is unnecessary to prove the objective understanding of a standardized provision is underscored by Transamerica's integration clause, which provides that "[t]he policy and the application together are the entire contract." See dkt. 298-7 at 19. As applicable here, "issues regarding extrinsic evidence do not necessarily defeat predominance in a case involving form contracts, and, for the reasons stated above, do not defeat predominance in this case. It is not obvious that extrinsic evidence will be introduced at all, and at best (and on this record, entirely hypothetically,) it would be non-individualized extrinsic evidence." Ellsworth v. U.S. Bank, N.A., No. 12-CV-02506 LB, 2014 WL 2734953, at *23 (N.D. Cal. June 13, 2014). The common conduct at issue is Transamerica's alleged breach in violation of the non-recoupment provision. Transamerica's contentions of significant variations in state law with respect to interpretation of this *standardized* provision are tangential to the fundamental, common question of breach, which the Court has already noted does not vary in any meaningful way from state-to-state. See, e.g., In re Conseco, 270 F.R.D. 521 at 529.

With respect to the claims unique to the California Subclasses, the common question still turns on the very same conduct at issue with respect to the breach of contract claim: Transamerica's conduct in implementing the MDR increases. The California Subclasses' claims turn on whether Transamerica's conduct violates the non-recoupment provision such that it gives rise to claims for breach of the implied covenant of good faith and fair dealing, tortious breach of the duty of good faith and fair dealing, violation of the UCL, and statutory elder abuse. Looking at these common issues through a pragmatic lens, the Court concludes that the inquiries will focus on Transamerica's conduct in increasing MDR's, and its basis for doing so—the analysis does not necessitate an inquiry into plaintiff's individual circumstances with respect to their individual policies.[12]

---

regarding individualized customer knowledge with respect to the non-recoupment provision, it likewise includes no evidence of any policyholder's contract negotiations.

[12] The duty of good faith and fair dealing is assessed under an objective standard under California law, making this claim suitable for class treatment. See Lazar v. Hertz Corp., 143 Cal. App. 3d 128, 141, 191 Cal. Rptr. 849 (1983) (holding that "[t]he essence of the good faith covenant is objectively reasonable conduct," and certifying class on this claim); Yue, 282 F.R.D. at 476 (same).

**[REDACTED] CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|---|---|---|---|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct. Accordingly, the Court finds that plaintiffs have satisfied their burden of showing that common questions predominate as to liability under each of plaintiffs' claims.

### b. Rule 23(b)(3) Predominance of Damages Issues

In order to satisfy Rule 23(b)(3)'s predominance standard, plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis." Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1433 (2013).

As the Ninth Circuit has reiterated post-Comcast, "[i]n this circuit . . . damage calculations alone cannot defeat certification." Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013) (quoting Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir.2010)). Comcast stands for the proposition that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" for a class to be certified under Rule 23(b)(3). Leyva, 716 F.3d at 514. The Court need not "decide the precise method for calculating damages at this stage," but rather must find "that calculation of damages will be sufficiently mechanical that whatever individualized inquiries need occur do not defeat class certification." Jordan v. Paul Fin., LLC, 285 F.R.D. 435, 466 (N.D. Cal. 2012) (Illston, J.). Plaintiffs must offer a method that tethers their theory of liability to a methodology for determining the damages suffered by the Class.

Plaintiffs contend that damages will be computed by one methodology applicable to each class member, across all classes: calculation of the amount of the Monthly Deduction overcharges withdrawn from each policyholder's accumulation account. Motion at 18 (citing Friedman Class Decl. ¶ 13). [REDACTED], Friedman Class Decl. ¶ 13, computation of the damages will be a rote arithmetic calculation based on Transamerica's own business records. Motion at 18–19.

Transamerica asserts that determining whether a policy's projected profitability, post-MDR increase, exceeds its original projected profitability would require dozens of separate analyses. Opp'n at 28. Transamerica's counsel raised this contention again at oral argument, noting that the dozens of separate analyses would be required according to *plaintiffs'* own methodology on whether Transamerica in fact recovered past losses. Plaintiffs' counsel responded that [REDACTED] were used to fashion the MDR

| Case No. | 2:16-cv-01378-CAS-AJW | | Date | December 11, 2017 |
|---|---|---|---|---|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

increases, that experts typically group policies when they are conducting actuarial analyses, and accordingly, that Transamerica was overstating the complexity of proof at trial.  Moreover, plaintiffs' counsel argued that the Ninth Circuit has made clear that obstacles to proving damages on a classwide basis are not an impediment to class certification.

In light of the evidence plaintiffs proffer with respect to their methodology for damages computation, the Court finds that plaintiffs' theory of liability is sufficiently tethered to their methodology for determining damages, as this methodology is "rote arithmetic" based on the uniform MDR percentage increase.  See Stern Supp. Decl, ¶ 50; Just Film, Inc. v. Buono, 847 F.3d 1108, 1121 (9th Cir. 2017) (affirming nationwide class certification and finding that damages could be determined by using defendants' business records to compute fees improperly deducted from class members' bank accounts).  Contrary to Transamerica's assertion, damages will not need to be calculated based on a more complex methodology demonstrating how Transamerica *should* have conducted its MDR increases in order to avoid recouping past losses.  Instead, because the evidence demonstrates that Transamerica used [REDACTED] to create the MDR increases, Transamerica has all of the data necessary to simply reverse the MDR overcharges and refund plaintiffs should it be found liable for plaintiffs' claims.   Accordingly, plaintiffs have demonstrated that damages are calculable on a classwide basis.

### c.    Superiority

In addition to a predominance of common questions, Rule 23(b)(3) requires a class proponent to demonstrate that the class action is superior to other methods of adjudicating the controversy.  See Valentino, 97 F.3d at 1235 (explaining that the party seeking certification needs to make a "showing [as to] why the class mechanism is superior to alternative methods of adjudication").  A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency."  Id. at 1234.  Rule 23(b)(3) provides the following non-exhaustive list of four factors to consider in this assessment:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (quotation marks omitted). District courts may also consider "other, non-listed factors," as the Ninth Circuit reiterated:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues.

Bateman v. Am. Multi–Cinema, Inc., 623 F.3d 708, 713 (9th Cir. 2010) (quotation marks omitted).

Plaintiffs argue that all four superiority factors support class certification. Motion at 20. First, there is no showing that the proposed class members have demonstrated an interest in individually controlling the prosecution or defense of separation actions. Id. Second, the litigation concerning this controversy has been consolidated before this Court. Id. Third, the concentration of the litigation in this forum is desirable. Id. Fourth, plaintiffs foresee no unusual difficulty in managing the class action. Id.

Transamerica argues that plaintiffs fail to establish superiority in light of the complications of trying all putative class member claims together. Opp'n at 42. With respect to factor (A) identified in Rule 23(b)(3), class members purportedly have "substantially different interests" in controlling the prosecution of separate actions because some class members [REDACTED] and some [REDACTED] from plaintiffs' proposed method of calculating MDR increases. Id. at 43. Moreover, Transamerica contends that plaintiffs cannot propose a realistic trial plan that accounts for the application of 50 state laws and the individual extrinsic evidence required to resolve competing policy interpretations. Id.

**[REDACTED] CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|----------|------------------------|------|-------------------|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiffs reply that a plethora of individual lawsuits do not present a realistic alternative path of judicial recourse. Reply at 40. Moreover, the four factors support (b)(3) certification—no class member is interested in prosecuting an individual action; any class member wanting to control her own litigation can opt out of either class; and all other known putative class action cases challenging the MDR increase have been consolidated before this Court. Id. at 40–41.

Here, the Court finds that each factor militates in favor of certification. The proposed class members have not demonstrated an interest in individually controlling the prosecution. The Court is unaware of any other actions initiated by members of the classes, and there do not appear to be any potential management problems, particularly with respect to interpretation of the unambiguous non-recoupment provision. Furthermore, "[w]here thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum." In re Juniper Networks, Inc. Sec. Litig., 264 F.R.D. 584, 592 (N.D. Cal. 2009). Accordingly, the Court concludes that resolution on a class wide basis will be superior to other methods of resolving claims by members of the Class.

### 3. Rule 23(b)(2) Requirements

An injunctive relief class can be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs argue that Transamerica's decision to impose the MDR increases affects all proposed class members in a shared way, and that declaratory or injunctive relief enjoining these increases would be applicable to the class as a whole. Motion at 22 (citing Parsons, 754 F.3d at 688). Furthermore, plaintiffs contend, because anti-discrimination insurance statutes and regulations require Transamerica to treat all policyholders within the same policy class in the same fashion, common treatment of all members of the national class is "essentially mandated." Id. at 23. Lastly, plaintiffs argue that certification under Rule 23(b)(2) is not limited to final injunctive relief, and is available to effectuate preliminary injunctive relief—accordingly, certification is appropriate in conjunction with plaintiffs' pending Motion for Preliminary Injunction. Id.

| [REDACTED] CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Transamerica argues that plaintiffs fail to show that the MDR increases are unlawful across the entire putative class. Opp'n at 38. Transamerica contends that, under plaintiff's interpretation of the policy terms, some [REDACTED]. Id. at 39. Thus, plaintiffs' requested injunctive and declaratory relief [REDACTED], and [REDACTED]. Id. Moreover, Transamerica contends that Rule 23(b)(2) class claims must be cohesive, particularly because unnamed members do not have the opportunity to opt out. Id. at 39–40. Plaintiffs fail to meet their burden showing that their proposed Rule 23(b)(2) class is cohesive given state-law variation in contract interpretation. Id. at 40–41.

Plaintiffs respond that Dukes did not foreclose the certification of a Rule 23(b)(2) class whenever a Rule 23(b)(3) class is also alleged. Reply at 33–34. Moreover, plaintiffs assert that they have proposed allowing policyholders to exclude themselves from the (b)(2) and (b)(3) classes, which eliminates due process concerns about claim preclusion. Id. With respect to the requirements of Rule 23(b)(2), plaintiffs respond that they are satisfied. Plaintiffs contend that they seek to enjoin common course of conduct by Transamerica, and afford class members equitable relief in the form of restitution to the extent Transamerica violated the non-recoupment provision. Id. at 37. Last, plaintiffs argue, for the same reasons there are no material conflicts of law, each policy has the same non-recoupment provision, and Transamerica applied [REDACTED] to every policy—accordingly, Transamerica's argument that the (b)(2) class is not "cohesive" fails. Id. at 38–39.

The Court set forth supra its analysis with respect to why this Court may properly certify the proposed classes under Rule 23(b)(2) in addition to Rule 23(b)(3). Moreover, for the very same reason the Court finds that common issues predominate with respect to Transamerica's conduct in implementing the MDR increases, if Transamerica's conduct amounts to breach or another type of unlawful conduct, it may be appropriate to order injunctive or declaratory relief applicable to the pertinent classes of policyholders. See Yue v. Conseco Life Ins. Co., No. 08-CV1506-AHM-JTL-X, 2009 WL 10671418, at *5 (C.D. Cal. Dec. 7, 2009) ("[C]lass certification is appropriate because [d]efendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.")

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|----------|------------------------|------|-------------------|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 4. Ascertainability

"In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Once an ascertainable and identifiable class has been defined, plaintiffs must show that they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3)."). A class is sufficiently ascertainable if "the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover." Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 593–94 (C.D. Cal. 2008). "A lack of ascertainability alone will generally not scuttle class certification." Red v. Kraft Foods, No. 10-cv-1028-GW-AGR, 2012 WL 8019257, at *6 (C.D. Cal. Apr. 12, 2012).

Plaintiffs argue that the proposed classes' definitions are precise and objective, which make membership in the classes easily ascertainable. Motion at 24. Moreover, confirmation of membership in the proposed classes is administratively feasible based on Transamerica's own business records. Id. Finally, plaintiffs contend, each proposed class representative has Article III standing to assert the class claims, since the accumulation accounts of each proposed class representative has been reduced in accordance with the challenged MDR increase. Id.

"To the extent that there are lingering queries regarding ascertainability, they do not foreclose class certification." Galvan v. KDI Distribution Inc., No. 08-CV-0999-JVS ANX, 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011). The Court does not find a lack of ascertainability to defeat class certification here. Courts in this circuit have found it "enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." McCrary v. The Elations Co., LLC, No. 13-cv-00242-JGB-OP, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014). Plaintiffs limit all classes to those who (a) own an in-force Transamerica policy, (b) for which an MDR increase, beginning on August 1, 2015, has resulted or will result in higher monthly deduction charges than previously applicable under the rate schedule in effect before that date. The California Subclasses are further limited to California residents, and the Senior Subclass is limited

| **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** | |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

to residents age 65 years or older at the time the MDR increase was imposed on them. The Court finds that these definitions set forth objective characteristics sufficient to enable prospective class members to identify themselves.

### B.     Proposed Class Definitions

Transamerica argues that plaintiffs' class definitions are overbroad, and contends that the Court lacks personal jurisdiction over Transamerica as to the claims asserted by non-resident putative class members in the National Class.  Opp'n at 47.  In turn, consistent with its motion to dismiss plaintiff Eric Schneck, and based on the Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773 (June 19, 2017) ("BMS"), Transamerica requests that the Court limit the classes to owners of policies that were issued to then-California residents or that were issued before Transamerica moved its operations from California. Id. at 47–48.

Additionally, Transamerica argues that the proposed California Subclasses are overbroad because they include claims that the Court has already dismissed.  Id. at 48. Namely, any definition should exclude policy owners with policies listing "interest" in the non-exclusive list of cost factors Transamerica can consider in increasing MDRs.  Id.

Plaintiffs respond that Transamerica's reliance on BMS is misplaced, as that decision dealt with personal jurisdiction in the context of mass actions, not class actions. Reply at 48.  In class actions, the claims of unnamed class members are irrelevant to the question of specific jurisdiction.  Id. at 48–49 (citing  AM Tr. v. UBS AG, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), aff'd, 681 F. App'x 587 (9th Cir. 2017)).

Though there is support for plaintiffs' position, this supporting case law was decided before the Supreme Court's decision in BMS.  The majority in BMS, which discussed personal jurisdiction in the mass tort context, did not address the narrow issue of whether its opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  137 S. Ct. at 1789, n. 4 (Sotomayor, J., dissenting).  The Court observes that there are important differences between a class action and a mass tort action for purposes of personal jurisdiction over defendants.  Importantly, each plaintiff in a mass tort action is an actual named party in the litigation.  See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc., No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22,

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

2017). Here, the proposed class representatives are the only plaintiffs actually named in the complaint. See Fed. R. Civ. P. 23. As the Supreme Court has found, "[n]onnamed class members ... may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." Devlin v. Scardelletti, 536 U.S. 1, 9–10 (2002). The Supreme Court in BMS applied its reasoning to the narrower grounds of personal jurisdiction in the context of mass tort actions. Its reasoning does not reach so far as to bar the nonresident unnamed class members. As one court in this Circuit has already found with respect to a putative class action, the reasoning in BMS is "meaningfully distinguishable," and the Court is not persuaded to extend BMS to the class action context on these facts. See Fitzhenry-Russell, 2017 WL 4224723, at *5. The Court thus has personal jurisdiction over Transamerica as to *all* putative members in the National Class.

Regarding Transamerica's request to narrow the definition of the California Subclasses, the Court observes that its November 8, 2016 identified a particular policy provision that expressly permits Transamerica to consider "mortality; expenses; *interest*; persistency; and any applicable federal state and local taxes" when it sets the MDR. Dkt. 160 at 18. Insofar as plaintiff interpreted these contracts to prohibit consideration of interest costs in setting the MDR, the Court concluded that plaintiffs failed to state a claim for liability based upon Transamerica's alleged consideration of its interest obligations. However, the Court observes that its November 8, 2016 order does not preclude a finding that the MDR increases are unlawful—across all policies, whether they include the particular policy provision identified above or not—and does not preclude a finding that Transamerica used a *contrived* calculation to justify an increase of a certain magnitude in the MDRs. Accordingly, the Court sees no issue with plaintiffs' California Subclass definition.

### C. Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint class counsel. Rule 23(g) provides, inter alia, that courts must consider the following factors in appointing class counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

The Court is satisfied that plaintiffs' co-counsel of record, Bonnett Friedman & Balint, PC, Consumer Watchdog, and Kozyak Tropin & Throckmorton, LLP meet the criteria of Rule 23(g) and should serve as co-class counsel. First, the firms have represented plaintiffs throughout this litigation. Second, the firms have significant experience in litigating class actions and otherwise satisfy the requirements of Rule 23(g). See Friedman Class Decl. ¶ 18.

Bonnett Friedman & Balint, PC, Consumer Watchdog, and Kozyak Tropin & Throckmorton, LLP are hereby appointed class counsel pursuant to Rule 23(g). Andrew S. Friedman, Harvey Rosenfield, and Adam M. Moskowitz are Lead Counsel for the Classes.

## V.     CONCLUSION

In accordance with the foregoing, plaintiffs' motion for class certification is **GRANTED**. The following classes are certified:

National Class

All persons who own an in-force Policy for which the MDR increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

California Subclass

All California residents who own an in-force Policy for which the MDR increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-01378-CAS-AJW | Date | December 11, 2017 |
|----------|----------------------|------|-------------------|
| Title | GORDON FELLER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date.

<u>California Senior Subclass</u>

All California residents who own an in-force Policy for which the MDR increase imposed by Transamerica beginning August 1, 2015, has resulted or will result in higher Monthly Deduction charges than those applicable under the rate schedule in effect before that date, and who were age 65 or older when the MDR increase was imposed on them.

The following individuals are appointed as class representatives: (1) Donna White, Gail Thompson, and Erick Schneck, as Trustee of the Schneck Trust, for the National Class; (2) Gail Thompson for the California Subclass; and (3) Gail Thompson for the California Senior Subclass.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|----|----|
| Initials of Preparer | | CMJ | |