O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON AND MARY FELLER, et al.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 16-cv-01378 CAS (GJSx)<br><br>CLASS ACTION<br><br>**FINAL ORDER APPROVING PLAINTIFFS' MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT [DKT. 420] AND MOTION FOR COURT APPROVAL OF COMMON FUND PAYMENT OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS [DKT. 421]**<br><br>Courtroom: 8D – 8th Floor<br>Judge: The Hon. Christina A. Snyder |

# I.    INTRODUCTION & BACKGROUND

In 2015 and 2016, Transamerica Life Insurance Company ("Transamerica") increased the monthly deduction rates ("MDR") applicable to the Policies issued under the plans set forth in Exhibit A to the parties' Settlement Agreement (the "MDR Increases"). The MDR Increases involved the Wave 1, 2A, 2B and 3 MDR increases on the Policies beginning in August 2015.

On February 28, 2016, Gordon Feller, Mary Feller, George Zacharia and Margaret Zacharia, filed this putative class action against Transamerica challenging the MDR Increases. [Dkt. 1.] On March 25, 2016, Andrew Kriegman filed a putative class action in the Southern District of Florida challenging the MDR Increases entitled *Kriegman v. Transamerica Life Insurance Company*, Case No. 1:16-cv-21074. On April 25, 2016, Gail Thompson and Lois Thompson filed a putative class action in the Southern District of California challenging the MDR Increases entitled *Thompson v. Transamerica Life Insurance Company*, Case No. 3:16-cv-01007.

On May 3, 2016, Transamerica filed a motion before the United States Judicial Panel on Multidistrict Litigation ("JPML") seeking transfer of all three actions to the Northern District of Iowa. [Dkt. 22.] Before the JPML ruled on Transamerica's motion, the *Kriegman* and *Thompson* plaintiffs voluntarily dismissed their cases in other districts and refiled them in the Central District of California. The newly filed cases were related to the *Feller* case and consolidated for pretrial purposes (collectively, the "Consolidated Actions").

On June 10, 2016, plaintiffs filed a Consolidated Amended Class Action Complaint in this Court. [Dkt. 68.] On August 18, 2017, plaintiffs filed a Second Consolidated Amended Class Action Complaint. [Dkt. 293 ("SAC").][1]

---

[1] The SAC removed Lois Thompson as a plaintiff, with Gail Thompson instead asserting claims individually and as power of attorney for Lois Thompson.

On October 3 and 4, 2018, the parties executed a Settlement Agreement and Release [Dkt. 401-1 ("Settlement Agreement")] intended to resolve the Consolidated Actions. On October 4, the Settlement Agreement was submitted to the Court along with a Motion for Preliminary Approval [Dkt. 399.]

On October 5, 2018, this Court entered its Preliminary Approval Order: (a) preliminarily approving the class action Settlement proposed in the Settlement Agreement by Plaintiffs Gordon & Mary Feller, Andrew Kriegman (as trustee for the Adrienne L. Hendler Revocable Trust dated 6/4/1993, the Elizabeth Kriegman Revocable Trust dated 6/8/1993, and the Patricia Sokolow Revocable Trust dated 6/4/1993), Gerald R. Lyons, Donna M. & Clarence E. White, Gail Thompson (individually and as power of attorney for Lois Thompson), and Eric Schneck (as co-trustee of the Burton I. Schneck Irrevocable Life Insurance Trust dated 2/24/1997) (collectively, "Plaintiffs") and Transamerica in the Consolidated Actions, (b) preliminarily approving the proposed nationwide class Settlement, (c) directing distribution of the Class Notice, and (d) preliminarily enjoining parallel proceedings. [Dkt. 404.] The Court also set a Fairness Hearing for January 28, 2019, (a) to determine whether the proposed Settlement is fair, reasonable, adequate, in the best interests of the Settlement Class, and (b) to consider any application for approval of a common fund payment of attorneys' fees and litigation expenses to Plaintiffs' Counsel and of service awards to the Settlement Class Representatives.

The approved form of Class Notice having been disseminated in form and content directed by the Preliminary Approval Order [Dkt. 419], Plaintiffs on December 13, 2018, moved for final approval of the Settlement [Dkt. 420 ("Final Approval Motion")] and for Court approval of the proposed payment of attorneys' fees, litigation expenses, and service awards [Dkt. 421 ("Fee Application")].

The Court held the Fairness Hearing on January 28, 2019. [Dkt. 442.] The Court has considered: (i) the Final Approval Motion and the Fee Application; (ii)

the extensive memoranda of points and authorities submitted in support of each; (iii) the declarations and exhibits submitted in support of each; (iv) Transamerica's separate request for final approval of the Settlement and entry of the Final Approval Order in the Consolidated Actions based on the terms and conditions set forth in the Settlement; (v) the Settlement Agreement itself; (vi) the entire record in this proceeding, including but not limited to the points and authorities, declarations, and exhibits submitted in support of preliminary approval of the Settlement; (vii) the form and manner of Class Notice of the proposed Settlement provided to the Settlement Class that encompasses more than 69,000 Policies; (viii) the filing of only three objections to the Settlement, two of which have been voluntarily withdrawn; (ix) the arguments advanced by all objectors, withdrawn or not, and the factual information provided by Co-Lead Class Counsel regarding the circumstances, background and mediation process involving the withdrawal of two of the objections; (x) the absence of any objection to the Fee Application; (xi) the absence of any objection or response by any state attorneys general, nor insurance official from any state, after they were all provided with the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715; (xii) the oral presentation by Co-Lead Settlement Class Counsel at the Fairness Hearing; (xiii) this Court's experiences and observations while presiding over the Consolidated Actions and similar actions; (xiv) the Court's file herein; and (xv) the relevant law including, but not limited to, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), and the factors set forth in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

Based upon the foregoing considerations, the Court's findings of fact and conclusions of law as set forth in the Preliminary Approval Order, and good cause appearing:

IT IS HEREBY ORDERED AND DECREED:

1. **Definitions.** The capitalized terms used in this Final Approval Order shall have the meanings and/or definitions given to them in the Settlement Agreement [Dkt. 401-1], or if not defined therein, the meanings and/or definitions given to them in this Final Order.

2. **Incorporation of Documents.** This Final Approval Order incorporates and makes a part hereof:

      (a)    the Settlement Agreement (including the exhibits thereto); and

      (b)    the Court's findings and conclusions contained in its Preliminary Approval Order.

3. **Jurisdiction and Venue.** The Court has personal jurisdiction over the Parties and the Settlement Class Members. The Court has subject matter jurisdiction over the Consolidated Actions under 18 U.S.C. §1332, including, without limitation, jurisdiction to approve the Settlement, to settle and release all claims alleged in the action and all claims released by the Settlement, including the Released Transactions (as defined in the Settlement Agreement), to adjudicate the objections submitted to the proposed Settlement by Settlement Class Members and to dismiss the Consolidated Actions with prejudice. By failing to exclude themselves according to the Court's Preliminary Approval Order, all Settlement Class Members have consented to the jurisdiction of this Court for purposes of this Action and the Settlement of this Action. Venue in this District is appropriate under 28 U.S.C. §1391.

4. **Definition of the Class and Settlement Class Members.** The Settlement Class hereby certified by the Court is defined as:

> All persons or entities who own or owned a Policy encompassed by the MDR Increases during the Class Period.

Excluded from the Settlement Class are (a) the Honorable Christina A. Snyder, United States District Court Judge of the Central District of California (or other

Circuit, District, or Magistrate Judge presiding over the Consolidated Actions through which this matter is presented for settlement) and court personnel employed in Judge Snyder's (or such other Judge's) chambers or courtroom; (b) Transamerica and its parents, affiliates, subsidiaries, successors, predecessors, and any entity in which Transamerica has a controlling interest and their current or former officers and directors (except to the extent Transamerica or such other entity is the owner of a Policy held for the benefit of an individual who is not otherwise excluded from membership in the Settlement Class); (c) any officer or director of Transamerica reported in its Annual Statements during the Class Period, or entity in which Transamerica had a controlling interest at any relevant time, any member of those persons' immediate families and legal affiliates, heirs, controlling persons, agents, successors and predecessors in interest or assigns of any such excluded person or entity; (d) Policyholders who properly execute and timely file a Request for Exclusion from the Settlement Class; and (e) the legal representatives, successors, or assigns of any such excluded Policyholders (but only then in their capacity as legal representative, successor, or assignee).

The Class Period is from August 1, 2015, through and including the date this Final Approval Order is entered. "Policy" or "Policies" means one or more insurance policies issued under the plans set forth in Exhibit A to the Settlement Agreement [Dkt. 401-1, at ECF 44]. All Settlement Class Members are subject to this Final Approval Order and the Final Judgment to be entered by the Clerk of Court in accordance herewith. All Policyholders who fall within the Settlement Class Definition are members of the Settlement Class, whether their Policy is an In-Force Policy or a Terminated Policy, as those terms are defined in the Settlement Agreement.

5. **Findings and Conclusions.** Based on its familiarity with the nature of the case, the record, the procedural history, the parties and the work of their counsel,

the Court finds that the Settlement was not the product of collusion and lacks any indicia of unfairness. The Court finds the Settlement is fair, reasonable, and adequate to the Settlement Class in light of the complexity, expense, and likely duration of the Consolidated Actions (including appellate proceedings), and the risks involved in establishing liability, damages, and in maintaining the Consolidated Actions on a class-wide basis through trial and appeal. The Court finds that the Settlement represents a fair and complete resolution of all claims asserted in a representative capacity on behalf of the Settlement Class and will fully and finally resolve all such claims.

In support of the foregoing findings and conclusions, the Court further specifically finds:

(a)     There is no evidence of collusion.  The Settlement is the product of extensive negotiations between the Parties with the assistance, and direct supervision, of an experienced and highly-regarded nationally-renowned mediator, David Geronemus, associated with JAMS in New York City, who teaches negotiation at Yale and Columbia Law Schools and who conducted many telephone sessions with all parties and a full day in-person mediation with all parties. Before agreeing to settle the Consolidated Actions, Plaintiffs, through Co-Lead Class Counsel and their experts, conducted extensive formal and informal discovery and a thorough investigation of the claims, defenses, and underlying events and transactions that are the subject of the Consolidated Actions. The discovery and investigation included, among other things: (i) evaluation of the evidence and applicable law, including the review and analysis of approximately one-million documents and data files produced by Transamerica and third-parties; (ii) consultation with highly experienced actuarial and other experts retained by Co-Lead Class Counsel; (iii) taking and defending depositions of fact and expert witnesses; and (iv) engaging in extensive motion practice, including successive

motions to dismiss, discovery motion practice, an application for preliminary injunctive relief, and successive motions for class certification.

In addition to taking the foregoing actions, the Parties also engaged in extensive activities necessary to adequately prepare for fully-informed settlement negotiations. Before meeting in person, the Parties participated in numerous pre-mediation meetings and calls and exchanged discovery and other data. In advance of the meditation, the Parties prepared and exchanged detailed mediation statements addressing liability, damages, and potential settlement structures. In furtherance of their pre-mediation preparation, Co-Lead Class Counsel acquired a license to use proprietary software that allowed their consulting actuary to examine and evaluate the challenged MDR Increases using alternative actuarial assumptions. Plaintiffs' actuarial expert also prepared a model to compute reliably the alleged overcharges associated with the MDR Increases and the values and savings resulting from proposed settlement benefits.

The Parties then participated in a full-day mediation session before Mediator Geronemus on June 20, 2018, but did not reach an agreement at that time. Following the in-person mediation, the Parties continued to exchange letters and information and participated in numerous conference calls to negotiate proposed settlement terms. The Parties agreed to the final terms of the proposed Settlement several weeks after the in-person mediation session. The Parties then devoted substantial efforts to preparation of the formal Settlement Agreement, which thereafter was approved by the Plaintiffs and Transamerica.

Throughout the process, the settlement negotiations were conducted at arm's length by highly qualified and experienced counsel on both sides. Co-Lead Class Counsel have concluded that the proposed Settlement is fair and reasonable, and is a highly successful result for members of the proposed Settlement Class. Co-Lead Class Counsel were well-informed of material facts and the negotiations were hard-

fought and non-collusive. Co-Lead Class Counsel analyzed all contested legal and factual issues to thoroughly evaluate Transamerica's contentions and defenses, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Settlement Class, and made fair and reasonable settlement demands of Transamerica.

(b) The Settlement provides for substantial cash payments and/or other monetary benefits to Settlement Class Members. Under the Settlement Agreement, Transamerica agreed to create a gross Settlement Common Fund in the amount of $195 million based on full participation by the entire Settlement Class (the "Settlement Common Fund"). The Settlement Common Fund, net of the amounts approved by the Court's Fee and Expense Order and a reduction for opt-outs[2] (the "Net Settlement Common Fund"), will be distributed to Settlement Class Members in a manner that generally corresponds to the injuries resulting from the alleged contractual breaches that are the focus of the Consolidated Actions; specifically, the Net Settlement Common Fund will be allocated among the Settlement Policies based on the difference between (a) the Monthly Deductions withdrawn from the accumulation value of a Class Policy during the Settlement Computation Period and (b) the Monthly Deductions that would have been withdrawn during the Settlement Computation Period under the prior MDR schedule; subject to a minimum allocation of $100, the funds will be distributed as follows and as set forth in further detail in the allocation calculations exchanged between counsel pursuant to Paragraph 69(b) of the Settlement Agreement:

---

[2] The Settlement Common Fund was proportionately reduced by the amounts that otherwise would have been distributed to those Policyholders requesting exclusion from the Settlement Class. Thus, the level of exclusion requests did not affect the estimated recovery of each Policyholder who wished to remain in the Settlement Class.

- In-Force Policyholders will be paid their share of the Net Settlement Common Fund by an increase to the accumulation value of each In-Force Policy (the "Accumulation Value Payment").

- Terminated Policyholders will be paid their share of the Net Common Settlement Fund by check (the "Terminated Policy Payment").

The Court finds and concludes that the proposed allocation formula treats all Settlement Members in a comparable fashion and that Settlement Members with In-Force Policies will receive monetary benefits comparable to those received by Settlement Class Members with Terminated Policies. The Net Settlement Common Fund will be distributed automatically to the Settlement Class; Settlement Class Members are not required to fill out a claim form to receive these benefits. There will be no reversion of the Net Settlement Common Fund to Transamerica, however, once the Settlement Class is determined. In addition to the Settlement Common Fund, the Settlement includes several other monetary benefits to the Class:

- Transamerica alone will pay and otherwise alone bear all administrative expenses incurred after the execution of the Settlement Agreement (including publication, printing, and mailing costs of the Class Notice and administration costs of the Settlement Relief), which will not be paid or otherwise reimbursed by Plaintiffs, Plaintiffs' Counsel, Co-Lead Class Counsel or the Settlement Class should the Settlement be terminated or disapproved for any reason, or should the Final Settlement Date otherwise not be attained for any reason (the "Notice and Administrative Costs Benefit").

- Transamerica has provided to Settlement Class Members, upon request and at no cost to the Settlement Class Member, an illustration depicting the impact of the Settlement Relief on the anticipated future performance of the Class Policies (the "Illustrations Benefit").

- In addition to the Settlement Common Fund, Transamerica agrees to pay to Plaintiffs' Counsel the first $10 million of the attorneys' fees and expenses awarded and approved by the Court (the "TLIC Fee and Expense Contribution").

(c)     In addition to all the foregoing monetary settlement benefits, the Settlement also includes valuable prospective relief that directly benefits Settlement Class Members now and into the future, which is set forth in Paragraph 69(d), (e), and (f) of the Settlement Agreement and is expressly incorporated herein in all respects:

- Transamerica agrees that it will not impose any additional MDR increase(s) on any Class Policy within five (5) years of the Execution Date, unless ordered to do so by a state regulatory body (the "MDR Increase Protection Benefit"). Notwithstanding the foregoing, TLIC will maintain the MDR schedules implemented through the MDR Increases.[3]

- Transamerica agrees that any future MDR increase(s) on a Class Policy will be based only on the collective effect of the cost factors assumed when the Policies were originally priced and will not increase the expected future profitability of the Class Policy to a level higher than projected based on the original policy pricing assumptions, which is intended to ensure that any future MDR increase adopted by Transamerica does not operate to recover past losses (the "Future MDR Methodology Benefit").

- Transamerica agrees it will not seek to void, rescind, cancel, have declared void, or otherwise deny coverage or death claims submitted by Settlement Class Members based on any alleged lack of insurable interest or

---

[3] These MDR increases were applied to the age-based changes to MDRs included within the Policies' pre-existing MDR schedules.

misrepresentations made in connection with the original application process (the "Non-Contestability Benefit").

(d)     The Court has considered the realistic range of outcomes in this matter, including the amount Plaintiffs might receive if they prevailed at trial, the strength and weaknesses of the case, the novelty and number of the complex legal issues involved, the risk that Plaintiffs would receive less than the relief afforded by the Settlement Agreement or recover nothing at trial, and the risk of a reversal of any judgment based on a review of the Court's file. The Settlement value is well within a range of reasonableness, even when considering the value of only the monetary relief recovered on behalf of the Settlement Class and is even more so considering the other valuable non-monetary benefits afforded to the Settlement Class.

(e)     Before reaching the Settlement, Plaintiffs and Transamerica fully and vigorously litigated their claims and defenses in extensive proceedings before this Court and in the appellate courts, including: (i) Transamerica's successive motions to dismiss; (ii) Plaintiffs' application for a preliminary injunction; (iii) Plaintiffs' successive motions for class certification; and  (iv) Transamerica's petition to appeal the Court's class certification ruling pursuant to Fed. R. Civ. P. 23(f).

(f)     The Settlement Class is and was at all times adequately represented by the Class Representatives and Co-Lead Settlement Class Counsel, including in litigating the Consolidated Actions and in entering into and implementing the Settlement, and have satisfied the requirements of *Federal Rules of Civil Procedure,* Rule 23, and applicable law.  Co-Lead Class Counsel have demonstrated that they have fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Settlement Class Members.  Co-Lead Class Counsel are highly experienced class action lawyers

with specialized knowledge in insurance litigation, and complex class action litigation generally, fully capable of properly assessing the risks, expenses, and duration of continued litigation, including at trial and on appeal. Co-Lead Class Counsel submit that the Settlement is fair, reasonable and adequate for the Settlement Class Members.

(g)     Transamerica denies all allegations of wrongdoing and disclaims any liability with respect to any and all claims alleged by Plaintiffs and the Settlement Class, including their claims regarding the propriety of class certification. But Transamerica agrees that the proposed Settlement will provide substantial benefits to Settlement Class Members, and considers it desirable to resolve the Consolidated Actions to finally put to rest Plaintiffs' and the Settlement Class's claims and to avoid, among other things, the risks of continued litigation, the expenditure of time and resources necessary to proceed through trial and any subsequent appeals, and the interference with ongoing business operations.

(h)     The selection and retention of the Settlement Administrator was reasonable and appropriate.

(i)     As further addressed in this Court's Preliminary Approval Order and below, through the mailing of the Class Notice in the form and manner ordered by this Court the Settlement Class has received the best practicable notice of the pendency of this class action, of the Settlement, the Fairness Hearing, and of Settlement Class Members' rights and options, including their rights to opt out, to object to the Settlement, and/or to appear at the Fairness Hearing in support of a properly submitted objection, and of the binding effect of the orders and Judgment in these Consolidated Actions, whether favorable or unfavorable, on all Settlement Class Members.   The Settlement Administrator sent the Class Notice to the Settlement Class Members by first-class mail on November 13, 2018, as directed by the Court's Preliminary Approval Order. [Dkt. 404 ¶ 7; Dkt. 419 ¶¶ 1-6.]   The

Settlement Class Members were given until December 28, 2018, to object to any aspect of the proposed Settlement by filing a written statement of objection with the Court. [Dkt. 404 ¶¶ 11, 12.] The Class Notice fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, and all due process rights under the U.S. Constitution and California Constitution.

(j)     In response to the Class Notice, only three objections (approximately 0.004%) were filed questioning the reasonableness of the proposed Settlement, and zero objections were filed to Plaintiffs' Counsel's application for approval of common fund payment of attorneys' fees, litigation expenses, and service awards. Two of the three objections were subsequently withdrawn. This overwhelmingly positive embrace of the Settlement by class members strongly supports approval. *See, e.g., Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *compare, e.g., Churchill Vill.,* 361 F.3d at 577 (same; 45 objections out of approximately 90,000 class members); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same; three objections out of approximately 57,000 class members).

6.     **Requests for Exclusion.**  Lists of those Policyholders who have timely and validly requested exclusion from the Settlement Class are set out by Policy number in the attached Exhibit A. The Policyholders owning Policies listed on said Exhibit A are excluded from the Settlement Class and such persons are therefore not Settlement Class Members, shall not be bound by the Settlement or Final Approval Order and Judgment in the Action, and shall not receive any Settlement Relief. All other Policyholders to whom the Class Notice was mailed are included in the

Settlement Class and shall be bound by all proceedings, orders, and judgments in these Consolidated Actions.  As a result of the exclusion of  Settlement Relief that would have been distributed to those Policyholders requesting exclusion, the net Settlement Common Fund is reduced to $110,668,433.32, prior to any additional reduction resulting from the award of attorneys' fees, litigation costs and service awards.

7. **Notices Pursuant to 28 U.S.C. § 1715.**  Based on the requirements of the Settlement Agreement and the declarations submitted in support of final settlement approval, the Court finds that all notices and requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, have been satisfied. More than ninety (90) days have passed since the service of the foregoing notices.  No written objection or response to the Settlement was filed by any federal or state official, including any recipient of the foregoing notices.  No federal or state official, including any recipient of the foregoing notices, appeared or requested to appear at the Fairness Hearing.

8. **Settlement Class Member Objections.**  As set forth in detail *supra,* full and fair notice of Settlement Class Members' right to object to the Settlement and to appear at the Fairness Hearing in support of such an objection has been provided in the form and manner required by the Settlement Agreement, the Court's Preliminary Approval Order, the requirements of due process, and any other applicable law.

The following objections were timely filed in accordance with the Court's Preliminary Approval Order:

- Dkt. 427-2 through -5: C. Thomas Tenney, Jr., Duncan Tenney, Susan Noble, filed *pro per* as trustees and policyowner of some or all of the following policies: Transamerica Policy No. 92488644; Transamerica Policy No.

1  92493028; Transamerica Policy No. 92493029; and Transamerica Policy No.
2  92488650 (collectively, the "Tenney Objection").

3  - Dkt. 427-1: Dorothy Daley, filed *pro per*, Transamerica Policy No. 92521161
4    (the "Daley Objection");

5  - Dkt. 424: Suzanne Fairlie, Transamerica Policy No. 92309935 and Ronald
6    Perkins, Transamerica Policy No. 92996275, filed by attorney Stephen J.
7    Fearon, Jr. ("Fearon") on behalf of two plaintiffs in duplicative lawsuits
8    Fearon filed in the Northern District of Iowa (the "Fearon Objection") long
9    after *Feller* commenced, as addressed at length in Plaintiffs' opposition to
10   Fearon's earlier motion to intervene. [Dkt. 413.]

11  The Daley Objection was withdrawn on January 14, 2019 with no payment or
12  consideration for the withdrawal. [Dkt. 429.] The Fearon Objection was withdrawn
13  at the Fairness Hearing with the approval of the Court.

14        The Tenney Objection focuses mainly on the specific facts of those individual
15  circumstances (and not the class) and consists of a series of four materially identical
16  objections, through which the Tenney objectors complain that relief from the
17  challenged MDR Increases does not sufficiently address premium increases incurred
18  on their four specific policies insuring the life of Eunice Tenney, who will turn 100
19  in less than a year. [Dkt. 427-2 through -5.] Specifically, the Tenneys decry the
20  premium increases imposed by Transamerica as their common insured has aged:
21  "While it may be positive that under the terms of the Settlement Transamerica may
22  never again increase the monthly deduction rate, the damage [from the premium
23  increase] has already been done to this policy and it most likely will not still be in
24  force when the settlement is approved." Dkt. 472-2, at ECF 2; Dkt. 472-3, at ECF 2;
25  Dkt. 472-4, at ECF 2; Dkt. 472-5, at ECF 2. Although thus seemingly recognizing
26  the distinction between the MDR Increases challenged in the Consolidated Actions
27  and the age-based premium increases that were baked into the MDR schedules in

28

place **before** the MDR Increases, the Tenney Objection in conclusion conflates the two:

> It appears … that Transamerica depositing into the policy accumulation value the difference of what would have been charged under the prior MDR's and what was charged after the MDR increases would not solve much. It also appears that going forward they are still able to charge the increased monthly deductions. This does not seem like a very just outcome.

*Id.* The Tenney Objection appears, therefore, to assert that the benefits of the proposed Settlement are inadequate because (a) the Settlement does not eliminate the MDR Increases in their entirety and (b) even if it did, the progressively increasing MDRs based upon the age of their insured makes the Tenney Policies too expensive to maintain. The Court overrules the Tenney Objection for three reasons.

First, by emphasizing premium increases based upon the age of their common insured (Eunice Tenney, who is said to be approaching 100 years of age in the near term), the Tenneys raise individual issues rather than a class-wide objection. *Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286, at \*10-11 (N.D. Cal. Jan. 23, 2018) (overruling objection to class settlement based on objector's unique circumstances: "nothing in Ms. Michaels' objection suggests this is a class-wide issue, rather than an individual one").[4] Essentially, the Tenneys seek individualized treatment in the specific (and relatively rare) instance in which the insured is within a few months of turning 100 years of age. The Tenney Objection therefore affords no grounds to disapprove a Settlement affording relief with respect to the MDR Increases to the balance of the Settlement Class as anything than fair

---

[4] Rule 23(e)(5)(A) now requires that the objection "must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Although the *pro per* Tenney Objectors do not explicitly so state, it is apparent that their objection based on the advanced age of their insured does not apply to the class as a whole.

and reasonable, nor any reason to deprive the class as a whole the benefits of the proposed Settlement.

Second, premium increases of the magnitude described in the Tenney Objection are an unfortunate consequence of: (1) MDRs that would have increased as the insured aged over time even in the absence of the MDR Increases; and (2) low policy accumulation values based on policy funding decisions by the Tenneys themselves. As recognized by the Tenney objectors, the cost-ineffectiveness they face would exist even had the challenged MDR Increases not been imposed by Transamerica. In this action, Plaintiffs challenged ***only*** the MDR Increases, ***not*** MDR increases based on the increasing age of the insured.[5] Accordingly, the concerns described in the Tenney Objection are not based on the same factual predicate as those alleged in the SAC, and as such are not prejudiced by the proposed Settlement. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (a class settlement agreement may preclude a party from bringing a related claim in the future, but only where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action") (quoting *Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir. 2008)); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (class may release only those claims based on "the identical factual predicate" as those underlying the claims in the settled class action).

Third, the Tenney Objection's demand that the Plaintiffs secure nothing less than the complete elimination of the MDR Increases "demonstrates a failure to appreciate the fact that settlements are by necessity compromises." *Roberts v. Electrolux Home Prods., Inc.*, No. CV13-2339-CAS VBKX, 2014 WL 4568632, at *11 (C.D. Cal. Sept. 11, 2014). As the Ninth Circuit has famously stated:

---

[5] Indeed, the cost of insurance charges on all universal life policies increase as the insured ages over time resulting in rapidly escalating charges at high ages. *See*, K. Black and H. Skipper, LIFE & HEALTH INSURANCE (Thirteenth Ed.) at 117-119.

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Roberts*, 2014 WL 4568632, at *11-12 (quoting same). Simply arguing that the recovery in the case should have been better does not render the Settlement itself unfair, unreasonable, or inadequate. *See, e.g., Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV-05-6838-CAS(MANX), 2015 WL 12592726, at *8 (C.D. Cal. Mar. 17, 2015) ("That the Objectors may have made another bargain is beside the point; settling parties need not find the most ideal terms.") (quoting *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices, & Prods. Liab. Litig.*, No. 8:10 ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 94484, at *261 (C.D. Cal. June 17, 2013))

Here, the Plaintiffs raised questions about the contractual constraints imposed by the contractual provision stating that Transamerica does not recover past losses by changing the monthly deduction rates upon Transamerica's discretion to increase MDRs subject only to the Policy contracts' guaranteed maximum rates – implicating a classic "battle of the experts." A compromise requiring Transamerica to refund almost 65% of the MDR Increases assessed during the Class Period, and establishing durational and substantive limits on any future MDR increase, is not an unreasonable compromise of the dispute.

9.  **Rule 23(e) Compliance.** Recent amendments to Rule 23 require the Court to assess several core considerations in approving a proposed class settlement; namely, whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As these factors are largely subsumed under the traditional Ninth Circuit analysis addressed at length above, the Court hereby expressly confirms that these factors have been considered and support final approval of the Settlement. In particular, Co-Lead Class Counsel at the Fairness Hearing disclosed and explained the terms of the agreements reached after an extensive, full-day mediation before the Honorable Dickran M. Tevrizian (Ret.), including the sharing of attorneys' fees with Mr. Fearon in an amount less than he represented as his lodestar incurred in the prosecution of the Fearon Objectors' claims against Transamerica in the Northern District of Iowa, and the fact that such fees are paid solely from those approved for Plaintiffs' Counsel. Accordingly, the Court hereby approves of the withdrawal of the Fearon Objection and the agreement with Mr. Fearon in accordance with Fed. R. Civ. P. 23(e)(5)(B)(i), including the exclusion of Ms. Fairlie and Mr. Perkins from the Settlement Class.

10. **Final Settlement Approval and Binding Effect.** The terms and provisions of the Settlement have been entered into in good faith, and are fair, reasonable and adequate as to, and in the best interests of, the Parties and the Settlement Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and the California Constitution. Therefore, the Settlement is approved. The Settlement, this Final Approval Order and the Judgment shall be

forever binding on the Plaintiffs and all other Settlement Class Members, as well as their heirs, beneficiaries, beneficiaries designated under the Policies, conservators, personal representatives, executors and administrators, predecessors, successors and assigns, and shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the fullest extent allowed by law.

11. **Implementation of Settlement.** The Parties are directed to implement the Settlement according to its terms and conditions, subject to the following:

(a) Transamerica shall apply the Accumulation Value Payment to each In-Force Class Policy on that Policy's first monthiversary date following the Final Settlement Date. A Policy's monthiversary date is the date of the month that Transamerica processes the monthly deduction. The monthiversary date is determined by the policy date shown in the Policy's data pages.

(b) If a Class Policy has matured or terminated (by lapse, surrender, death of the insured, or otherwise), the Settlement Class Member will receive his or her share of the Settlement Common Fund by check. The check will be distributed by the Settlement Administrator, Rust Consulting, within 30 days of the Final Settlement Date, or as soon as practical in the event tax reporting calculations necessitate a longer period.

(c) Should the status of any Class Policy change such that Transamerica must pay the Settlement Class Member a Terminated Policy Payment rather than an Accumulation Value Payment, Transamerica shall have an additional 30 days to distribute that Settlement Class Member's share of the Settlement Common Fund. The check will be distributed by the Settlement Administrator, Rust Consulting.

12. **Interim Relief Stipulation.** The Court hereby vacates its approval of [Dkt. 392] and terminates the Parties' Stipulation Regarding Procedures for

Specified Policies During the Pendency of the Action [Dkt. 391 (the "Interim Relief Stipulation")]. Transamerica will, subject to Paragraphs 69(d)-(e) of the Settlement Agreement, maintain the MDR schedules implemented through the MDR Increases for any Policies that received relief through the Interim Relief Stipulation. The Monthly Deductions for any Policies (In-Force or Terminated) that received interim relief shall be re-calculated using the increased MDRs for the time period during which the Policy received the interim relief. In-Force Policyholders who received the interim relief through the Interim Relief Stipulation shall have at least thirty-one (31) days following receipt of the Accumulation Value Payment to make any further payments necessary to keep their Policy in force. Terminated Policyholders who received the interim relief prior to any termination shall have the difference between the re-calculated amount of the Monthly Deductions under the MDR Increases and the Monthly Deductions under the Interim Relief Stipulation deducted from their Settlement Relief, unless the difference has already been retained by Transamerica.

13. **Release.** The Release set forth in Section VIII of the Settlement Agreement is expressly incorporated herein in all respects, is effective as of the date of the entry of this Final Approval Order, and forever discharges the Releasees from any claims or liabilities released by the Settlement, including the Released Claims (as those terms are defined in the Settlement Agreement). This Release covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Plaintiffs' Counsel or other counsel representing Plaintiffs or Settlement Class Members in these Consolidated Actions, the administration of the Settlement, and the Released Transactions, except to the extent otherwise specified in this Final Approval Order and the Settlement Agreement.

In addition, also in accordance with the terms of Section VIII of the Settlement Agreement, this Final Approval Order expressly incorporates Transamerica's release and discharge of Plaintiffs, Plaintiffs' Counsel, and Co-Lead Class Counsel,

from and against any and all claims, causes of action, debts, liabilities, damages, restitution, equitable, legal and administrative relief, known and unknown, at law or in equity, whether brought directly or indirectly, arising out of or relating to the filing, prosecution, or resolution of claims against TLIC alleged in the Feller Action, the Kriegman Action, the Thompson Action, the Lyons Action, the White Action and/or the Consolidated Actions.

14. **Permanent Injunction.** All Settlement Class Members are hereby permanently enjoined from filing, commencing, prosecuting, intervening in, participating in, maintaining, individually, as class members or otherwise, directly or indirectly through a representative or otherwise, receiving any benefits from, or organizing or soliciting the participation in, directly or indirectly, any lawsuit (including putative class actions), arbitration, remediation, administrative or regulatory proceeding or order in any jurisdiction, asserting any claims based on or relating to the claims or causes of action or the facts and transactions alleged or pursued in the Consolidated Actions or released by the Settlement Agreement; and from organizing Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) asserting any claims released by this the Settlement Agreement. Nothing in this paragraph, however, shall require any Settlement Class Member to take any affirmative action with regard to other pending class action litigation in which they may be absent class members. The Court finds that issuance of this permanent injunction is necessary and appropriate in the aid of the Court's jurisdiction over the Consolidated Actions and its judgments.

15. **Enforcement of Settlement.** Nothing in this Final Approval Order shall preclude any action to enforce the Settlement or interpret the terms of the Settlement Agreement. Any action which seeks to enforce or interpret the terms of

the Settlement, or which seeks to interpret or avoid in any way any legal consequences of or the effect of the Settlement Agreement, the Preliminary Approval Order, this Final Approval Order, the Permanent Injunction contained in this Final Approval Order, or the Release contained in the Settlement Agreement shall be brought solely in this Court.

16. **Plaintiffs' Counsel Attorneys' Fees and Expenses.** As explained below, the Court has fully assessed and finds fair and reasonable the common fund payment to Plaintiffs' Counsel of $27,688,000.00 in attorneys' fees and $1,004,608.49 in litigation expenses, the first $10 million of which is to be paid by Transamerica in accordance with the terms of the Settlement Agreement as the TLIC Fee and Expense Contribution.

This Court has reviewed at length Plaintiffs' Counsel's submissions in support of their application. Based on those uncontradicted submissions, the Court finds Plaintiffs' Counsel's hourly rates reasonable for complex class action litigation in Los Angeles. The Court also finds the rates charged by Plaintiffs' Counsel consistent with the hourly rates approved in *In re American Equity Annuity Practices and Sales Litig.*, No. CV-05-6735-CAS-MAN (C.D. Cal), *In re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, No. 2:07-ml-01825-CAS-MAN (C.D. Cal.), and *Negrete v. Fidelity & Guarantee Life Ins. Co.*, No. 05-6837-CAS (MANx) (C.D. Cal.). The hourly rates are commensurate with the skill and experience of the participating attorneys and their legal support.

Likewise, the amount of time devoted to the Consolidated Actions was reasonable, given Transamerica's vigorous defense of Plaintiffs' claims. Plaintiffs' Counsel has submitted evidence supporting the total number of hours they devoted to this litigation. In their submissions, Plaintiffs' Counsel provided detailed charts that segregate their time by individual attorney and support personnel, identifying the position of the attorney or support personnel, and their current hourly rates. The

charts further segregate each individual's time by twenty-two separate litigation tasks. According to their submissions, Plaintiffs' Counsel firms and attorneys have collectively devoted 16,668 hours of attorney and litigation support time to this litigation. Based upon their contemporaneous internal billing records, Plaintiffs' Counsel calculates a total lodestar of $9,326,856.75. The evidence shows that Plaintiffs' Counsel exercised sound billing practices in a complex case they had to litigate for years against first-rate defense counsel.

The Court has observed the zealousness with which Co-Lead Class Counsel prosecuted the Consolidated Actions in particular, and the exceptionally high quality of Co-Lead Class Counsel's representation of the Settlement Class throughout that time. The representation was on a pure contingent-fee basis, with no assurance that Plaintiffs' Counsel would be compensated for their efforts on behalf of the Class. It was in this challenging context that Co-Lead Class Counsel succeeded in negotiating a highly beneficial Settlement for the Settlement Class. The Court has carefully reviewed the task-based summary of Plaintiffs' Counsel's time in this case, submitted by Plaintiffs' Counsel in addition to their overall time and expenses. The Court finds that the role of Plaintiffs' Counsel is adequately set forth and described in Plaintiffs' Counsel's task-based summary and that the hours spent by them were reasonable, appropriate and necessary to the effective and efficient prosecution of this complex and hotly contested litigation. The Court accepts the submissions of Plaintiffs' Counsel.

Having reviewed and approved Plaintiffs' Counsel's hourly rates and time spent, and fully familiar with the litigation and circumstances leading to the Settlement as elaborated above, the Court finds, based on ample and uncontroverted evidence, that a reasonable lodestar in this case is $9,326,856.75, and reasonable expenses, which Plaintiffs' Counsel have fully documented, are $1,004,608.49. All

submitted expenses are of the sort typically billed by attorneys to paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

The Court further finds that the requested Plaintiffs' Counsel's attorneys' fees and Plaintiffs' Counsel's expenses are fully supported: (a) as a percentage of the overall benefit conferred on the Settlement Class by the Settlement, achieved solely through Plaintiffs' Counsel's efforts, the estimated value of which is substantially greater than the net Settlement Common Fund by virtue of the additional forms of Settlement Relief.  Plaintiffs' Counsel's requested attorneys' fees equal 25% of the amount of the net Settlement Common Fund remaining after reduction for opt-outs (consistent with the 25% benchmark recognized in the Ninth Circuit) and equates to an effective percentage reduction of only 16% when the $10 million TLIC Fee and Expense Contribution is taken into account.  Further, under a lodestar cross-check analysis the fee award yields a multiplier of 2.97, which is well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit.

Accordingly, given the foregoing factors and the result obtained for the Class, the Court finds the common fund payment of Plaintiffs' Counsel's attorneys' fees and expenses to be reasonable, and approves common fund payment to Co-Lead Class Counsel of attorneys' fees in the total amount of $27,688,000, plus litigation expenses, in the total amount of $1,004,608.49.  The Court directs Transamerica to pay the first $10,000,000 of these amounts directly to Co-Lead Class Counsel within 14 days of this Final Approval Order and following receipt of an IRS Form W-9 and wire instructions from Co-Lead Class Counsel, and the balance 14 days after the Final Settlement Date, all in accordance with the provisions of the Settlement Agreement.  As a result of the exclusion of Settlement Relief that would have been distributed to those Policyholders requesting exclusion and the award of additional attorneys' fees, expenses and service awards from the Settlement Common Fund to

Plaintiffs' Counsel, less Transamerica's payment of the first $10,000,000 of these amounts, the final net Settlement Common Fund is reduced to $91,895,824.83.

Co-Lead Counsel will determine the amount of fees and expenses approved by the Court to be paid to other Plaintiffs' Counsel, subject to any written agreements between or among them. Disagreements, if any, between or among Plaintiffs' Counsel in the Consolidated Actions relating to the Court's award of fees and expenses, or of their individual shares of such an award, will be determined by the Court, which will retain sole and exclusive jurisdiction to resolve any such disagreements. Disagreements between or among Plaintiffs' Counsel will have no impact on the effectiveness or the implementation of this Settlement, nor will such disagreements have any impact on or result in any increase of the obligations imposed upon Transamerica by this Final Approval Order.

17. **Service Awards to Plaintiffs.** The Court approves a common fund payment of $10,000.00 service awards to each of the Plaintiffs as provided in the Settlement Agreement:

- Gordan Feller
- Mary Feller
- Andrew Kriegman
- Gerald Lyons
- Donna White
- Clarence White
- Gail Thompson
- Eric Schneck

Based on the declarations of Class Counsel submitted in support of final settlement approval, Plaintiffs have actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class despite facing significant personal limitations. Each has waived his or her right to pursue potential individual claims or relief in the Consolidated Actions. Apart from these service awards, the Plaintiffs will receive no settlement payments or benefits of any nature other than their share of the Settlement relief available to the Settlement Class generally. These

service awards are approved to compensate the Plaintiffs for the burdens of their active involvement in this litigation and their commitment and effort on behalf of the Class. The service award payments will be made within 14 days after the Final Settlement Date and receipt from each Plaintiff of an IRS Form W-9 and wire or check mailing instructions.

18. **Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, if such changes are consistent with this Final Approval Order and do not limit the rights of Settlement Class Members or any other person entitled to Settlement Relief under the Settlement Agreement.

19. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Approval Order and the Final Judgment. Without in any way affecting the finality of this Final Approval Order or the Final Judgment, for the benefit of the Settlement Class and Transamerica, and to protect this Court's jurisdiction, the Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement Relief, including notices, payments, and benefits thereunder, the Class Notice and sufficiency thereof, any objection to the Settlement, any request for exclusion from the Settlement Class, the adequacy of representation by Co-Lead Class Counsel and/or the Class Representatives, the amount of attorneys' fees and litigation expenses paid to Plaintiffs' Counsel, the amount of any service awards to be paid to any Plaintiff, any claim by any person or entity relating to the representation of the Settlement Class by Co-Lead Class Counsel, to enforce the release and injunction provisions of the Settlement and of this Final Approval Order and Final Judgment, any remand after appeal or denial of any appellate

challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to these Consolidated Actions and Settlement.

20. **Dismissal of Action.** The Consolidated Actions are hereby dismissed on the merits and with prejudice, without an award of attorneys' fees or costs to any party except as provided in this Final Approval Order.

**WHEREFORE,** the Final Approval Motion and the Fee Application are **GRANTED** on the terms set forth in this Final Approval Order, and the Parties and their counsel are directed to implement and consummate the Settlement according to its terms and provisions as set forth in the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: February 6, 2019

_Christine A. Snyde_

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

## POLICY NUMBERS

| | | | | | | |
|---|---|---|---|---|---|---|
| 09370951 | 60105114 | 60123080 | 60125406 | 60126963 | 60128425 | 60129957 |
| 60070463 | 60105152 | 60123081 | 60125435 | 60127057 | 60128497 | 60129970 |
| 60071988 | 60105459 | 60123088 | 60125523 | 60127086 | 60128652 | 60129973 |
| 60073121 | 60105639 | 60123206 | 60125565 | 60127087 | 60128695 | 60129982 |
| 60073441 | 60105685 | 60123223 | 60125587 | 60127088 | 60128712 | 60130030 |
| 60076205 | 60107320 | 60123291 | 60125612 | 60127102 | 60128742 | 60130033 |
| 60076793 | 60109259 | 60123412 | 60125719 | 60127170 | 60128785 | 60130065 |
| 60077666 | 60109307 | 60123557 | 60125721 | 60127196 | 60128870 | 60130092 |
| 60078166 | 60110304 | 60123744 | 60125725 | 60127201 | 60128893 | 60130107 |
| 60078806 | 60110873 | 60123763 | 60125772 | 60127228 | 60128896 | 60130157 |
| 60079033 | 60111528 | 60123764 | 60125852 | 60127301 | 60128923 | 60130158 |
| 60079275 | 60111853 | 60123808 | 60125869 | 60127327 | 60128935 | 60130172 |
| 60081810 | 60112254 | 60123852 | 60125907 | 60127468 | 60128941 | 60130178 |
| 60081940 | 60112923 | 60123981 | 60125919 | 60127477 | 60129010 | 60130190 |
| 60085544 | 60112924 | 60123982 | 60125926 | 60127478 | 60129041 | 60130217 |
| 60085797 | 60114853 | 60124006 | 60125937 | 60127524 | 60129067 | 60130249 |
| 60086001 | 60114869 | 60124044 | 60125975 | 60127550 | 60129077 | 60130254 |
| 60086494 | 60114871 | 60124136 | 60126017 | 60127551 | 60129081 | 60130299 |
| 60087057 | 60115652 | 60124162 | 60126117 | 60127552 | 60129082 | 60130372 |
| 60087786 | 60115958 | 60124163 | 60126150 | 60127640 | 60129130 | 60130395 |
| 60090492 | 60116988 | 60124167 | 60126152 | 60127654 | 60129163 | 60130430 |
| 60090514 | 60117003 | 60124249 | 60126153 | 60127655 | 60129167 | 60130468 |
| 60093351 | 60117710 | 60124275 | 60126155 | 60127656 | 60129168 | 60130474 |
| 60093475 | 60117791 | 60124312 | 60126288 | 60127707 | 60129183 | 60130488 |
| 60093766 | 60117922 | 60124315 | 60126367 | 60127758 | 60129221 | 60130489 |
| 60093884 | 60118388 | 60124371 | 60126383 | 60127779 | 60129232 | 60130784 |
| 60094444 | 60118506 | 60124404 | 60126416 | 60127822 | 60129249 | 60130815 |
| 60094737 | 60118513 | 60124415 | 60126437 | 60127937 | 60129300 | 60130816 |
| 60094903 | 60118631 | 60124532 | 60126492 | 60127951 | 60129340 | 60130848 |
| 60095067 | 60118792 | 60124653 | 60126588 | 60127965 | 60129366 | 60130876 |
| 60095477 | 60118793 | 60124700 | 60126600 | 60127967 | 60129415 | 60130908 |
| 60095575 | 60119792 | 60124725 | 60126608 | 60128003 | 60129473 | 60130969 |
| 60096832 | 60120052 | 60124746 | 60126701 | 60128089 | 60129495 | 60130970 |
| 60096834 | 60120389 | 60124756 | 60126725 | 60128125 | 60129531 | 60130972 |
| 60097599 | 60121448 | 60124779 | 60126747 | 60128141 | 60129572 | 60131028 |
| 60097602 | 60121639 | 60125080 | 60126751 | 60128165 | 60129684 | 60131044 |
| 60097603 | 60121688 | 60125160 | 60126772 | 60128166 | 60129685 | 60131046 |
| 60097604 | 60121817 | 60125299 | 60126829 | 60128167 | 60129734 | 60131048 |
| 60098214 | 60122309 | 60125302 | 60126866 | 60128242 | 60129747 | 60131055 |
| 60098590 | 60122310 | 60125304 | 60126869 | 60128253 | 60129750 | 60131063 |
| 60101574 | 60122578 | 60125358 | 60126870 | 60128288 | 60129755 | 60131079 |
| 60102871 | 60122640 | 60125362 | 60126871 | 60128289 | 60129777 | 60131080 |
| 60103374 | 60122738 | 60125369 | 60126872 | 60128305 | 60129838 | 60131112 |
| 60103683 | 60122877 | 60125401 | 60126873 | 60128408 | 60129839 | 60131113 |
| 60104845 | 60123033 | 60125404 | 60126874 | 60128423 | 60129954 | 60131114 |

# POLICY NUMBERS

| | | | | | |
|---|---|---|---|---|---|
| 60131117 | 60133373 | 92091908 | 92369272 | 92472836 | 92521216 |
| 60131120 | 60133453 | 92102449 | 92369280 | 92474163 | 92526263 |
| 60131127 | 60133476 | 92188662 | 92370077 | 92481153 | 92527254 |
| 60131144 | 60133477 | 92195574 | 92376261 | 92481230 | 92528027 |
| 60131148 | 60133478 | 92204503 | 92377002 | 92481579 | 92528887 |
| 60131189 | 60133479 | 92205967 | 92377794 | 92483674 | 92530694 |
| 60131439 | 60133535 | 92211785 | 92391779 | 92484265 | 92534675 |
| 60131501 | 60133539 | 92211786 | 92393472 | 92484266 | 92536065 |
| 60131503 | 60133823 | 92213981 | 92395833 | 92484267 | 92536584 |
| 60131507 | 60133833 | 92219712 | 92396208 | 92484268 | 92536707 |
| 60131508 | 60133834 | 92225012 | 92396930 | 92484269 | 92536990 |
| 60131509 | 60133838 | 92226685 | 92402101 | 92484270 | 92538399 |
| 60131510 | 60133853 | 92231061 | 92405711 | 92488920 | 92538478 |
| 60131512 | 60133860 | 92250232 | 92409784 | 92488945 | 92538791 |
| 60131858 | 60133878 | 92252099 | 92411016 | 92488987 | 92538897 |
| 60131859 | 60133924 | 92252901 | 92415764 | 92489832 | 92539402 |
| 60131860 | 60133966 | 92258004 | 92416082 | 92490282 | 92539797 |
| 60132067 | 60133967 | 92262224 | 92420224 | 92490488 | 92540344 |
| 60132072 | 60134007 | 92276495 | 92421973 | 92491683 | 92540438 |
| 60132107 | 60134061 | 92279531 | 92423945 | 92493506 | 92541227 |
| 60132110 | 60134068 | 92303097 | 92428064 | 92493713 | 92543182 |
| 60132111 | 60134204 | 92304579 | 92433585 | 92494147 | 92543351 |
| 60132168 | 60134277 | 92304670 | 92433823 | 92494774 | 92544408 |
| 60132297 | 60134351 | 92309935 | 92440110 | 92495210 | 92546110 |
| 60132308 | 60134360 | 92326197 | 92442290 | 92495583 | 92548365 |
| 60132316 | 60134391 | 92326726 | 92449544 | 92496458 | 92548366 |
| 60132328 | 60134401 | 92326727 | 92450101 | 92496594 | 92549822 |
| 60132370 | 60134535 | 92329260 | 92450102 | 92496596 | 92549823 |
| 60132383 | 60134536 | 92330869 | 92451401 | 92497320 | 92550834 |
| 60132431 | 60135516 | 92331747 | 92453636 | 92499614 | 92551086 |
| 60132635 | 60135517 | 92332400 | 92456026 | 92501733 | 92551107 |
| 60132639 | 60135698 | 92333073 | 92458104 | 92502664 | 92551110 |
| 60132640 | 60136206 | 92333239 | 92458916 | 92502870 | 92551153 |
| 60132662 | 60136313 | 92336626 | 92459131 | 92503050 | 92996275 |
| 60132676 | 60136584 | 92339488 | 92460573 | 92503858 | 93076274 |
| 60132801 | 60136585 | 92340436 | 92461568 | 92504053 | |
| 60132843 | 60137280 | 92341384 | 92462355 | 92505370 | |
| 60132880 | 60137282 | 92341566 | 92463425 | 92505766 | |
| 60132914 | 60138720 | 92343142 | 92464046 | 92509099 | |
| 60132915 | 60139667 | 92343459 | 92464583 | 92510652 | |
| 60132976 | 60147441 | 92346146 | 92467343 | 92510871 | |
| 60133014 | 60147442 | 92359370 | 92468167 | 92514553 | |
| 60133016 | 60147862 | 92360297 | 92469067 | 92517425 | |
| 60133229 | 60147863 | 92361341 | 92469875 | 92519558 | |
| 60133293 | 65016500 | 92363490 | 92471286 | 92520352 | |